**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| **DEBORAH RASBY and DOUGLAS RASBY, husband and wife,** | ) | **CASE NO:** |
| **Plaintiff,** | ) | |
| **vs.** | ) | **COMPLAINT and DEMAND FOR JURY TRIAL** |
| **JAMES D. PILLEN, an individual,** | ) | |
| **Defendant.** | ) | |

COME NOW the Plaintiffs, Deborah Rasby and Douglas Rasby, to allege and state their cause of action as follows:

**PARTIES**

1. Plaintiff Deborah Rasby (hereafter "Deborah") is an individual residing in Pinellas County, Florida.

2. Plaintiff Douglas Rasby (hereafter "Douglas") is an individual residing in Pinellas County, Florida.

3. Defendant James D. Pillen (hereinafter "James") is an individual residing in Columbus, Platte County, Nebraska.

**JURISDICTION AND VENUE**

4. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 as the amount in controversy exceeds $75,000.00, excluding interests and costs, and is between citizens of different States. Plaintiffs Deborah and Douglas are residents of the State of Florida and Defendant James is a resident of the State of Nebraska.

5. This Court has personal jurisdiction over James as he is a resident of the State of Nebraska.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1)-(2) as Defendant is a resident of the State of Nebraska and a substantial part of the events giving rise to the claims occurred in the State of Nebraska.

## FACTUAL BACKGROUND

7. Progressive Swine Technologies, Inc. ("PST") was originally formed on or about June 22, 1992. PST's function was to serve as a management company for various entities associated with pork production, including but not limited to pork production farms, feed mills, and a swine genetics company. PST eventually managed the following entities:

a. Bartlett Foods;

b. Bartlett Food Feed Mill;

c. GGP, LLC ("GGP");

d. Danbred Production, LLC ("Danbred Production");

e. Danbred PMG, Inc. ("Danbred PMG");

f. Double D Family Farms, LLC ("Double D");

g. Imperial Foods, LLC ("Imperial Foods");

h. Inland Foods Partnership ("Inland Foods");

i. Northern Nance, LLC ("Northern Nance");

j. Northern Plains, LLC ("Northern Plains");

k. Platte Center West, LLC ("Platte Center")

l. JDP, LLC ("JDP");

m. Inland Feed Mill;

n. PST Milling, Inc. ("PST Milling");

o. Humphrey Equipment, LLC ("Humphrey Equipment");

p. O'Neill Finishers, LLC ("O'Neill");

q. PST Gene Center, LLC ("PST Gene"); and

r. PST Vet Services ("PST Vet").

8. The official start of operations for PST was on January 1, 1994. At its inception, PST was owned 90% by James and 10% by Deborah.

9. James received a salary of $110,000.00 per year while Deborah received $85,000.00. On information and belief, this amount did not fluctuate from at least 2001 to 2011.

10. Since 1994, PST paid distributions to its owners, James and Deborah, each month with a pro-rata distribution of profits based on James and Deborah's ownership interest. These distributions were Deborah's primary source of income. Deborah received approximately $2,250,471 in distributions from 2000 through 2011 from PST.

11. In addition to her ownership interest in PST, Deborah also had a 10% ownership interest in Northern Nance, Northern Plains, PST Milling, and PST Gene. Deborah had a 5% ownership interest in Double D. James held the majority interest in each of these entities. These entities shall collectively be referred to as "the Companies."

12. After PST was formed, James opened or purchased a series of businesses in the same industry as PST without providing PST or Deborah the opportunity to purchase an interest in these companies. These entities include but are not limited to:

a. Bartlett Foods;

b. Bartlett Feed Mill;

c. GGP;

d. Danbred Production;

e. Danbred PMG;

f. Imperial Foods;

g. Inland Foods;

h. Inland Feed Mill;

i. Platte Center;

j. JDP;

k. O'Neill Finishers; and

l. Humphrey Equipment.

13. One of these entities James formed, Imperial Foods, is a farm that purchases weanling pigs to grow them to market weight. Similarly, Deborah was not presented with an opportunity to invest in this entity. This is a business entity engaged in a business of the same type in the same industry as the Companies were engaged in and an opportunity that should have been offered to one of the Companies or an interest that should have been offered to Deborah.

14. On or about August 3, 2010, Deborah received a report stating that her interest in Northern Nance and Northern Plains alone was worth $3,550,000.00.

15. Deborah discovered that James was using company assets from PST to pay for personal expenses. James was also using assets from PST to pay company expenses for other entities in which James was the sole owner. These expenses decreased the profits of PST, thus decreasing the distributions to Deborah.

16. Deborah discovered that a company owned 100% by James, Imperial Foods, was receiving weanling pigs from Double D for below market price. James' company was receiving excess profits at the expense of entities Deborah held an ownership interest in. When Deborah approached James about this, he was extremely hostile and refused to discuss it.

17. In May of 2011, Deborah decided to retire from PST with the understanding that she would still receive the monthly distributions she was entitled to from PST.

18. James concedes that Deborah helped build and grow PST from the beginning.

19. James knew that the distributions from PST were Deborah's primary source of income. Shortly after Deborah retired, James increased his salary at PST from $110,000.00 to $1,000,000.00. This directly caused a decrease in the PST profits and decreased the overall distributions to Deborah by 30%.

20. In August of 2011, James stopped making distributions from PST to Deborah, cutting off her only source of income. Despite the lack of actual distributions, Deborah would continue to have imputed taxable income.

21. In October of 2011, James temporarily resumed making distributions until April of 2012 when he stopped all distributions and stated he would not make any distributions going forward.

22. Deborah was aware that her ownership interest in the Companies exposed her to substantial tax liabilities each year. However, she relied on the distributions from PST to continue to pay for those tax obligations.

23. On or about April 13, 2012, James sent Deborah an offer to purchase her interest in the Companies for $1,881,029. In the same correspondence, James stated that he was going to liquidate PST since it "no longer meets our business objectives." James stated that Deborah would only receive approximately $50,000.00 as a final distribution from PST after it was liquidated.

24. James further stated that regular cash distributions from PST Milling, PST Gene, Double D, Northern Nance and Northern Plains would end. This would cut off all of Deborah's

distributions and income from these entities although her imputed income would incur substantial tax liabilities each year.

25. On or about April 30, 2012, James D. Pillen started two separate entities, Pillen Holdings, LLC ("Pillen Holdings") and Pillen Family Farms, Inc. ("Pillen Family Farms"). On information and belief, Pillen is currently operating PST only under the name Pillen Family Farms.

26. Following threats by James to move profits into the businesses owned solely by James, and because of growing concerns that James would continue to manipulate expenses, Deborah felt coerced and threatened by James and agreed to sell her shares in the Companies, even though she was paid substantially less than fair market value.

27. Deborah faced substantial tax obligations if she refused to enter into a purchase agreement for her interest in the Companies.

28. During the negotiations, an agent for James, John Meyer, told Deborah that James was going to "F" with her. James threatened Deborah that "he was going to blow up PST" and that she "would be looking for work again."

29. To try to avoid selling at below the fair market value, Deborah quickly searched for investors to purchase her interest in the Companies. However, even though she received interest from investors to purchase her interest at $5,346,226.00, the investors refused to close on any deal due to James' actions.

30. Deborah was given only two weeks by James to agree to sell her interest in PST and the Companies. Otherwise, James would close PST, would not continue the distributions, and Deborah would inevitably be bankrupted by the annual tax obligations that was imputed

against her. Deborah was not given the opportunity to find another buyer that would be willing to enter into the business with James.

31. On or about June 29, 2012, under significant economic duress, Deborah executed the Unit Purchase Agreement ("Purchase Agreement") with James. Deborah sold her interest in PST and the Companies for $2,000,000.00 plus the repayment of her loan to Northern Nance of $350,000.00. A true and correct copy of this agreement is attached hereto and incorporated by reference as Exhibit A.

32. Following the completion of this transaction, on information and belief, James transferred all rights, responsibilities, and ownership of PST to Pillen Family Farms.

**COUNT ONE**

**(Duress / Undue Influence)**

33. Plaintiffs incorporate by reference the preceding Paragraphs of this Complaint.

34. James, the majority shareholder in each of the Companies, had the power to dictate when distributions would be made from the Companies.

35. As a direct and proximate result of James' actions, Deborah was forced into a position where James destroyed her ability to make a voluntary choice in entering the Purchase Agreement.

36. James' actions affected Deborah's actions and state of mind when entering into the Purchase Agreement.

37. But for James' threats and actions, Deborah would not have entered into the Purchase Agreement.

38. The true and correct value of Deborah's shares at the time the Purchase Agreement was entered was not less than $5,346,226.00 plus an additional $350,000.00 loan to Northern Nance.

39. As a direct and proximate result of James' actions, Deborah entered into the Purchase Agreement under which she received at least $3,346,226.00 less than the value of her interest.

40. As a result of James' actions forcing Deborah to enter into the Purchase Agreement, he has received a benefit in excess of $3,346,226.00.

41. Plaintiffs seek restitution for the excess benefit received by James.

**COUNT TWO**

**(Fraudulent Misrepresentation)**

42. Plaintiffs incorporate by reference the preceding Paragraphs of this Complaint.

43. James alleged that there was no need to keep PST open and that he was dissolving the company.

44. James knew that Deborah relied on the distributions from PST as her primary source of income.

45. James stopped operating under the company PST and instead operated in a substantially similar capacity using the name of the new entity that he formed. On information and belief, that entity is Pillen Family Farms.

46. James' knew his representation that PST did not meet their "business objectives" were false, as he was maintaining a substantially similar business model, utilizing a new company that Deborah did not have an ownership interest in.

47. James' representation was made so Deborah would rely on his representation.

48. James made the representation with the intention that Deborah would rely on it and sell her shares in the Companies and PST at a substantially reduced price that was well below fair market value.

49. Deborah did rely on James' representation which was a substantial basis for why she entered into the Purchase Agreement.

50. Plaintiffs have suffered substantial damages as a result of James' representations.

**COUNT THREE**

**(Corporate Opportunities)**

51. Plaintiffs incorporate by reference the preceding Paragraphs of this Complaint.

52. James held a fiduciary relationship with PST and the Companies.

53. James formed and acquired various entities in the same or substantially similar field as the Companies without giving Deborah or the Companies an opportunity to acquire an interest in these entities. These entities include but are not limited to

a. Bartlett Foods;

b. GGP;

c. Danbred Production;

d. Danbred PMG;

e. Imperial Foods;

f. Inland Foods;

g. Platte Center;

h. JDP;

i. Humphrey Equipment; and

j. Pillen Family Farms

54. These entities would have supplied the Companies a practical advantage and fit into and furthered the established corporate policies and businesses.

55. As a direct and proximate result of James' failure to disclose these opportunities to Deborah and Douglas, they have lost out on substantial financial gain in an amount to be determined at trial.

**COUNT FOUR**

**(Breach of Fiduciary Duty)**

56. Plaintiffs incorporate by reference the preceding Paragraphs of this Complaint.

57. James was a director and majority owner of PST and the Companies. James owed a fiduciary duty to the minority shareholders.

58. James would authorize sales from entities in which Deborah was a partial owner to entities owned 100% by James. It is unknown at this time the full extent or the total amount lost as a result of these transactions.

59. Additionally, James paid for personal expenses, and expenses of businesses in which he was the sole owner, with profits from PST. This caused the distributions made to other shareholders, including Deborah, to be substantially reduced.

60. Deborah is entitled to an accounting and a determination of the full level of damages in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request the following relief:

A. A judgment in favor of Plaintiffs against James on the claims raised in the Complaint;

B. A judgment in favor of Plaintiffs against James in an amount not less than $3,346,226.00.

C. A judgment in favor of Plaintiffs against James for all general damages suffered by Plaintiffs.

D. A judgment for pre and post judgment interest and attorney's fees to the extent permitted by law.

E. Such other relief as the Court deems just and proper.

**Demand for Jury Trial**

Plaintiffs Deborah Rasby and Douglas Rasby hereby demand a jury trial pursuant to Fed. R. Civ. P. 38(b), on all issues of which a trial by jury is permitted.

Respectfully submitted,

DEBORAH RASBY and DOUGLAS RASBY
Plaintiffs,

By: /s/ James D. Sherrets

James D. Sherrets, NE #15756
Diana J. Vogt, NE #19387
Robert S. Sherrets, NE #24791
SHERRETS BRUNO & VOGT LLC
260 Regency Parkway Drive, Suite 200
Omaha, NE 68114
Tele: (402)390-1112
Fax: (402)390-1163
law@sherrets.com

ATTORNEYS FOR THE PLAINTIFF