IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

DEBORAH RASBY and DOUGLAS )
RASBY, husband and wife, )      Civil Action No. 8:15-cv-226
)
Plaintiffs, )
)               **ANSWER TO AMENDED**
v. )               **COMPLAINT, AFFIRMATIVE**
)               **DEFENSES, AND COUNTERCLAIM**
JAMES D. PILLEN, an individual, )
)
Defendant. )
)

Defendant James D. Pillen, by his attorneys Rembolt Ludtke LLP, for his Answer

and Affirmative Defenses to Plaintiff's Amended Complaint, states and alleges as follows:

1.      Defendant is without sufficient information to admit or deny the allegations

contained within Paragraph 1 on the Amended Complaint and therefore, denies them.

2.      By order of the Court (Doc. No. 11), Plaintiff Douglas Rasby has been

dismissed as a party to this Action and thus Defendant denies the allegations contained

within Paragraph 2 on the Amended Complaint.

3.      Defendant admits the allegations contained within Paragraph 3 of the

Amended Complaint.

4.      Defendant admits that this Court has subject matter jurisdiction over this

action and admits that Defendant is a resident of the State of Nebraska. Defendant is

without sufficient information to admit or deny the remaining allegations contained within

Paragraph 4 of the Amended Complaint and therefore, denies them.

5.      Defendant admits the allegations contained within Paragraph 5 of the

Amended Complaint.

6.      Defendant admits the allegations contained within Paragraph 6 of the

Amended Complaint.

1

7.     Defendant denies that Progressive Swine Technologies, Inc. ("PST") managed Humphrey Equipment, LLC and PST Vet Services, but admits the remaining allegations contained within Paragraph 7 of the Amended Complaint.

8.     Defendant admits the allegations contained within Paragraph 8 of the Amended Complaint.

9.     Defendant admits the allegations contained within Paragraph 9 of the Amended Complaint.

10.    Defendant is without sufficient information to admit or deny whether distributions from PST were Deborah's primary source of income and therefore, denies this allegation. Defendant denies the remaining allegations contained within Paragraph 10 of the Amended Complaint.

11.    Defendant admits the allegations contained within Paragraph 11 of the Amended Complaint.

12.    Defendant denies the allegations contained within Paragraph 12 of the Amended Complaint.

13.    Defendant admits that he formed Imperial Foods and that Imperial Foods is a farm that purchases weanling pigs to grow them to market weight. Defendant admits that Plaintiff was not asked to invest in this entity. Defendant denies the remaining allegations contained within Paragraph 13 of the Amended Complaint.

14.    Defendant is without sufficient information to admit or deny the allegations contained within Paragraph 14 of the Amended Complaint and therefore, denies them.

15.    Defendant denies the allegations contained within Paragraph 15 of the Amended Complaint.

16.    Defendant denies the allegations contained within Paragraph 16 of the Amended Complaint.

17.     Defendant admits that Deborah retired from PST in May of 2011. Defendant denies the remaining allegations contained within Paragraph 17 of the Amended Complaint.

18.     Defendant admits the allegations contained within Paragraph 18 of the Amended Complaint.

19.     Defendant admits that after Plaintiff retired, he increased his salary. Defendant denies the remaining allegations contained within Paragraph 19 of the Amended Complaint.

20.     Defendant admits that in August of 2011, PST stopped making distributions to Plaintiff. Defendant is without sufficient information to admit or deny the remaining allegations contained within Paragraph 20 of the Amended Complaint and therefore, denies them.

21.     Defendant admits the allegations contained within Paragraph 21 of the Amended Complaint.

22.     Defendant is without sufficient information to admit or deny the allegations contained within Paragraph 22 of the Amended Complaint and therefore, denies them.

23.     Defendant admits that on or about April 13, 2012, Defendant sent Plaintiff an offer to purchase her interest in the Companies. Defendant alleges that the offer referred to in Paragraph 23 of the Amended Complaint speaks for itself and denies Paragraph 23 to the extent that it varies from the terms of said document.

24.     Defendant admits that he indicated that cash distributions from PST Milling, PST Gene, Double D, Northern Nance, and Northern Plains would end. Defendant affirmatively alleges that such cash distributions were never a regular occurrence. Defendant is without sufficient information to admit or deny the remaining allegations contained within Paragraph 24 of the Amended Complaint and therefore, denies them.

3

25.     Defendant admits that on or about April 30, 2012, he established Pillen Holdings, LLC and Pillen Family Farms, Inc. Defendant denies the remaining allegations contained within Paragraph 25 of the Amended Complaint.

26.     Defendant denies the allegations contained within Paragraph 26 of the Amended Complaint.

27.     Defendant is without sufficient information to admit or deny the allegations contained within Paragraph 27 of the Amended Complaint and therefore, denies them.

28.     Defendant denies that John Meyer is an agent for Defendant. Defendant is without sufficient information to admit or deny what Mr. Meyer told Plaintiff and therefore, denies this allegation. Defendant denies all remaining allegations contained within Paragraph 28 of the Amended Complaint.

29.     Defendant denies that he took any wrongful actions. Defendant is without sufficient information to admit or deny the remaining allegations contained within Paragraph 29 of the Amended Complaint and therefore, denies them.

30.     Defendant denies the allegations contained within Paragraph 30 of the Amended Complaint.

31.     Defendant admits that on or about June 29, 2012, Plaintiff executed the Unit Purchase Agreement. Defendant denies that Plaintiff was under any duress, economic or otherwise, at the time she executed the agreement, and affirmatively alleges that Plaintiff was represented by independent legal counsel at the time she signed the agreement. Defendant further alleges that the Unit Purchase Agreement referred to in Paragraph 31 of the Amended Complaint speaks for itself and denies Paragraph 31 to the extent it varies from the terms of said document.

32.     Defendant denies the allegations contained within Paragraph 32 of the Amended Complaint.

## COUNT ONE—ALLEGED DURESS/UNDUE INFLUENCE

33.     Defendant incorporates herein by reference his answers set forth in Paragraphs 1 through 32 above.

34.     Defendant admits the allegations contained within Paragraph 34 of the Amended Complaint.

35.     Defendant denies the allegations contained within Paragraph 35 of the Amended Complaint.

36.     Defendant denies the allegations contained within Paragraph 36 of the Amended Complaint.

37.     Defendant denies the allegations contained within Paragraph 37 of the Amended Complaint.

38.     Defendant denies the allegations contained within Paragraph 38 of the Amended Complaint.

39.     Defendant denies the allegations contained within Paragraph 39 of the Amended Complaint.

40.     Defendant denies the allegations contained within Paragraph 40 of the Amended Complaint.

41.     Defendant denies that he received any excess benefit and denies that Plaintiff is entitled to restitution or other damages.

## COUNT TWO—ALLEGED FRAUDULENT MISREPRESENTATION

42.     Defendant incorporates herein by reference his answers set forth in Paragraphs 1 through 41 above.

43.     Defendant admits the allegations contained within Paragraph 43 of the Amended Complaint.

44.     Defendant denies the allegations contained within Paragraph 44 of the Amended Complaint.

45.     Defendant denies the allegations contained within Paragraph 45 of the Amended Complaint. Defendant affirmatively alleges that PST and Pillen Family Farms are distinct legal entities.

46.     Defendant denies the allegations contained within Paragraph 46 of the Amended Complaint.

47.     Defendant denies the allegations contained within Paragraph 47 of the Amended Complaint.

48.     Defendant denies the allegations contained within Paragraph 48 of the Amended Complaint.

49.     Defendant denies the allegations contained within Paragraph 49 of the Amended Complaint.

50.     Defendant denies the allegations contained within Paragraph 50 of the Amended Complaint.

## COUNT THREE—ALLEGED SECURITIES FRAUD

51.     Defendant incorporates herein by reference his answers set forth in Paragraphs 1 through 50 above.

52.     Defendant denies the allegations contained within Paragraph 52 of the Amended Complaint.

53.     Defendant denies the allegations contained within Paragraph 53 of the Amended Complaint.

54.     Defendant denies the allegations contained within Paragraph 54 of the Amended Complaint.

55.     Defendant denies the allegations contained within Paragraph 55 of the Amended Complaint.

## COUNT FOUR—ALLEGED CORPORATE OPPORTUNITIES

56.     Defendant incorporates herein by reference his answers set forth in Paragraphs 1 through 55 above.

57.     Defendant admits the allegations contained within Paragraph 57 of the Amended Complaint.

58.     Defendant denies the allegations contained within Paragraph 58 of the Amended Complaint.

59.     Defendant denies the allegations contained within Paragraph 59 of the Amended Complaint.

60.     Defendant denies the allegations contained within Paragraph 60 of the Amended Complaint.

## COUNT FIVE—ALLEGED BREACH OF FIDUCIARY DUTY

61.     Defendant incorporates herein by reference his answers set forth in Paragraphs 1 through 60 above.

62.     Defendant admits the allegations contained within Paragraph 62 of the Amended Complaint.

63.     Defendant admits that Defendant authorized the sales from entities as he was legally permitted to do, but denies all remaining allegations contained within Paragraph 63 of the Amended Complaint.

64.     Defendant denies the allegations contained within Paragraph 64 of the Amended Complaint.

65.     Defendant denies the allegations contained within Paragraph 65 of the Amended Complaint.

Defendant denies that Plaintiff is entitled to the relief requested in the "WHEREFORE" clause following Paragraph 65 of the Amended Complaint and further denies each and every allegation not expressly admitted or modified, except to the extent that such allegations constitute admissions against Plaintiff's interests.

## AFFIRMATIVE DEFENSES

Defendant asserts the following affirmative defenses to Plaintiff's Amended Complaint:

1. Plaintiff failed to state a claim upon which relief may be granted.

2. One or more of Plaintiff's claims are barred by the applicable statute of limitations.

3. Plaintiff lacks standing to assert claims for breach of fiduciary duty and corporate opportunities because such claims belong to the corporation alone.

4. Plaintiff's claims are barred by the release she executed contained within the Unit Purchase Agreement.

5. Plaintiff's claims are barred due to her failure to mitigate her damages.

6. Plaintiff's claims are barred by the doctrines of waiver, laches, estoppel, and/or unclean hands.

7. Plaintiff's claims are barred by the doctrines of ratification and/or accord and satisfaction.

WHEREFORE, Defendant prays for the following relief:

A. That Plaintiff take nothing by reason of her Amended Complaint and that the Amended Complaint be dismissed in its entirety with prejudice;

B. That the Defendant be awarded his costs incurred in the defense of this action, including reasonable attorneys' fees allowed by law; and

8

C.     That the Defendant be awarded such additional relief as the Court may deem just and equitable.

**COUNTERCLAIM**

Defendant, for his Counterclaim against Plaintiff, alleges as follows:

**Parties**

1.     Defendant James Pillen ("Pillen") was a majority shareholder of Progressive Swine Technologies, Inc. ("PST").

2.     Plaintiff Deborah Rasby ("Rasby") is a former employee and minority shareholder of PST.

3.     In 1994, PST hired Rasby as an accountant. In addition to her $85,000 per year salary, PST offered Rasby a 10% ownership interest in PST as a benefit to her employment. Rasby did not contribute any of her own funds to receive this interest in PST.

4.     Over time, Pillen started certain hog businesses, including Northern Plains, LLC ("Northern Plains"), Northern Nance, LLC ("Northern Nance"), Double D Family Farms, LLC ("Double D"), PST Milling, Inc. ("PST Milling"), and PST Gene Center LLC ("PST Gene"). As an employee incentive, Pillen gave Rasby a 10% ownership interest in Northern Plains, Northern Nance, PST Milling, and PST Gene and a 5% ownership interest in Double D. Rasby did not contribute any of her own funds to receive interest in these companies.

5.     PST's sole purpose was to serve as a swine consulting business to hog businesses with inactive investors. PST's profits consisted of the management fees it received from the entities to whom it provided consulting services. Thus, the more companies PST managed, the more fees it received.

9

6.     PST entered into a General Assignment and Bill of Sale effective November 6, 2015 (the "Assignment") with Pillen wherein PST assigned to Pillen all of its rights and interests in the claims described herein.

## Rasby's Employment

7.     As accountant for PST, Rasby's job duties included oversight of the financial affairs of PST and other companies and maintenance of PST and other companies' books and records.

8.     On or about July 19, 2011, Rasby ceased her employment with PST.

9.     After Rasby's retirement, PST and Pillen discovered a number of wrongdoings in how Rasby accounted for PST expenses.

10.    As PST became more successful and managed an increasing number of companies, PST's cash flow increased. As a result, Rasby began to seek out opportunities to minimize expenses to PST and push those expenses out to other companies, so that she could increase her distributions from PST.

11.    Rasby's wrongful actions included but are not limited to the following:

a.     Rasby, without authorization, improperly placed certain PST employees on the payroll of companies in which Pillen owned a 100% share rather than on the payroll of PST so her PST distributions would not decrease;

b.     Rasby refused to allocate certain PST expenses, such as Brett Bonwell's compensation and certain charitable contributions, in accordance with the ownership percentage of PST – 90% (Pillen) and 10% (Rasby). Rather, Rasby would allocate such expenses 100% to Pillen;

c.     As a result of Rasby's illicit allocations, she received more in distributions than were reported on her income tax returns. Rasby refused the direction of

10

PST's external tax advisors to reflect that difference as a note receivable on her financial statements.

      d.    Rasby, without authorization, improperly allocated and recorded select expenses and asset purchases of PST on the books and records of other companies. The result was to increase the income of PST, thereby increasing her distributions.

      e.    Rasby, without authorization, improperly charged her personal vehicle expenses to PST.

### Rasby's Buyout

12.    In or about March 2012, Pillen determined that PST no longer met its business objectives and that the company should be dissolved.

13.    In or about April 2012, Pillen extended an offer to Rasby to purchase her interest in PST, Double D, Northern Nance, Northern Plains, PST Milling, and PST Gene for $1,881,029.00 plus a final PST distribution. Pillen based the formula for the purchase price in his offer off of recent third party transactions and valuations.

14.    On or about April 19, 2012, Pillen received a letter from Rasby's legal counsel, Roger Wells of McGrath North ("Rasby's Counsel").  Rasby's Counsel indicated a general willingness to be bought out but requested a valuation expert be retained to assist in determining value.

15.    On or about April 20, 2012, Pillen responded to Rasby's Counsel indicating a willingness to allow Rabsy to retain an expert and providing a deadline of May 18, 2012 to provide valuation information.

16.    Rasby, by and through Rasby's Counsel, subsequently indicated Rasby would not be able to meet a deadline of May 18, 2012, to provide valuation information. However, on June 1, 2012, Rasby made a counter offer to be bought out for the aggregate price of $1,881,029 plus the refund of a $350,000 capital contribution Rasby made to Northern

Nance and a tax distribution to be made to Rasby in an amount equal to Rasby's share of all taxes through the buyout date.

17.    On or about June 5, 2012, Pillen extended a counteroffer to Rasby in which Pillen would agree to pay Rasby $1,881,029 as the $350,000 demanded by Rasby was already accounted for in that purchase price and requesting additional information on the tax distributions demanded by Rasby.

18.    Rasby rejected Pillen's June 5, 2015 offer.

19.    On or about June 15, 2015, Pillen and Rasby agreed to a final purchase price of $2,350,000.00.

20.    On or about June 22, 2012, Pillen's counsel forwarded a purchase agreement encompassing the agreed-upon terms and conditions ("Unit Purchase Agreement") to Rasby's Counsel.

21.    On or about June 29, 2012, Pillen and Rasby, without attorneys, met to execute the Unit Purchase Agreement.  However, the version of the agreement brought by Rasby to be executed contained a different first page in which Rasby intentionally altered the purchase price to be $3,975,000. Rasby did not tell Pillen about this change in purchase price, and Pillen mistakenly signed the agreement. Pillen's counsel informed Rasby's counsel of Rasby's unilateral purchase price change after it was discovered. Subsequently, the correct and original Unit Purchase Agreement was signed and payment of the agreed-upon amount was made to Rasby on June 29, 2012, and cashed by Rasby on or about July 2, 2012.

22.    Rasby was represented by independent legal counsel throughout all stages of the negotiation of the Unit Purchase Agreement.

23.    From June 30, 2015 through July 30, 2015, Pillen and Rasby had no contact.

12

24.    On July 31, 2015, Rasby contacted Pillen threatening to retract her support for and publicly attack Pillen as a candidate for Board of Regents unless he agreed to pay her an additional $1.75 million.   When Pillen declined to accede to Rasby's demands, Rasby carried out her threats on countless occasions during the following months through emails and written letters to the public.

## FIRST CLAIM FOR RELIEF—BREACH OF CONTRACT

25.    Pillen and Rasby entered into the Unit Purchase Agreement for the purchase by Pillen and sale by Rasby of her interest in Double D, Northern Nance, Northern Plains, PST Milling, PST Gene, and PST.

26.    Pursuant to the Unit Purchase Agreement, Rasby agreed to "unconditionally and fully release and discharge the Pillen Parties from any and all obligations, claims, actions, liability, past, present, and future, of every kind or character, known or unknown, and unforeseen injuries and damages, and the consequences which the Rasby Parties have or may have in the future, by reason of, growing out of, arising out of or existing in connection with the business dealings between the parties, including but not limited to, Rasby's employment by, or ownership of any interest in, the Subject Entities.

27.    Rasby breached the Unit Purchase Agreement by filing this lawsuit against Pillen.

28.    Rasby's breach of the Unit Purchase Agreement was a direct and proximate cause of damages to Pillen in an amount to be proven at trial.

WHEREFORE, Defendant prays for relief as set forth more fully below.

## ALTERNATIVE CLAIMS FOR RELIEF

29.    In her Amended Complaint, Rasby seeks to void the Unit Purchase Agreement. Should this Court void the Unit Purchase Agreement, Pillen is entitled to pursue the following claims for relief:

13

## SECOND CLAIM FOR RELIEF—BREACH OF FIDUCIARY DUTY

30.     Defendant incorporates Paragraphs 1 through 29 above as if fully set forth herein.

31.     As a shareholder in a closely held corporation, Rasby owed fiduciary duties to her fellow shareholders and to PST.

32.     By virtue of the actions described more fully above, Rasby breached the duties she owed to Pillen and PST.

33.     Rasby's breach of fiduciary duties proximately caused damage to PST all of which has been assigned to Pillen pursuant to the Assignment.

34.     PST and Pillen have been damaged in an amount to be proven at trial.

WHEREFORE, Defendant prays for relief as set forth more fully below.

## THIRD CLAIM FOR RELIEF—BREACH OF DUTY OF LOYALTY

35.     Defendant incorporates Paragraphs 1 through 34 above as if fully set forth herein.

36.     While employed by and a shareholder in PST, Rasby owed a duty to PST to act solely for the benefit of PST in all matters connected with or within the scope of Rasby's employment or shareholder status.

37.     Rasby's actions as described herein constitute breaches of the duty of loyalty she owed to PST.

38.     Rasby's breaches of the duty of loyalty she owed to PST were a direct and proximate cause of damages to PST in an amount to be proven at trial all of which has been assigned to Pillen pursuant to the Assignment.

WHEREFORE, Defendant prays for relief as set forth more fully below.

**FOURTH CLAIM FOR RELIEF—UNJUST ENRICHMENT**

39.     Defendant incorporates Paragraphs 1 through 38 above as if fully set forth herein.

40.     Rasby, by virtue of her actions as more fully set forth above, has been unjustly enriched.

41.     The circumstances make it inequitable and unconscionable to permit Rasby to retain the funds she misappropriated from PST and enjoy the benefit of the monetary value.

42.     PST has been damaged in an amount to be proven at trial all of which has been assigned to Pillen pursuant to the Assignment, and Rasby has been unjustly enriched in an amount to be proven at trial.

WHEREFORE, Defendant prays for relief as set forth more fully below.

**FIFTH CLAIM FOR RELIEF—FRAUD**

43.     Defendant incorporates Paragraphs 1 through 42 above as if fully set forth herein.

44.     By virtue of Rasby's position as an employee and shareholder of PST, Rasby had a legal and/or equitable obligation to maintain the books and records of PST in accordance with generally accepted accounting principles.

45.     Rasby intentionally did not reveal her mismanagement of PST's books and records to Pillen and PST so as to defraud Pillen and PST.

46.     Rasby's acts as more fully set forth above constitute fraud.

47.     PST has been proximately damaged as a result of Rasby's fraudulent conduct in an amount to be proven at trial all of which has been assigned to Pillen pursuant to the Assignment.

WHEREFORE, Defendant prays for relief as set forth more fully below.

## SIXTH CLAIM FOR RELIEF—CONVERSION

48.     Defendant incorporates Paragraphs 1 through 47 above as if fully set forth herein.

49.     Rasby, without Pillen or PST's knowledge or consent, converted and wrongfully appropriated and used PST's funds for her own personal use and financial gain.

50.     By virtue of Rasby's conduct as alleged herein, Rasby wrongfully exercised dominion of PST's funds.

51.     Rasby's wrongful exercise of dominion and control over PST's funds substantially interfered with PST's use and enjoyment thereof.

52.     As a direct and proximate result of Rasby's actions, PST has sustained damages in an amount to be proven at trial all of which has been assigned to Pillen pursuant to the Assignment.

WHEREFORE, Defendant prays for relief as set forth more fully below.

## SEVENTH CLAIM FOR RELIEF—CIVIL EXTORTION

53.     Defendant incorporates Paragraphs 1 through 52 above as if fully set forth herein.

54.     After the Unit Purchase Agreement was executed and the deal finalized, Rasby made numerous demands on Pillen to pay her an additional $1.75 million.

55.     Rasby repeatedly threatened Pillen that if he did not pay her $1.75 million, she would publicly retract her support for Pillen as Regent, accuse Pillen of potentially illegal activity, and accuse Pillen of acts that would damage his personal and business reputation.

16

56.     When Pillen refused to cede to Rasby's demands, Rasby carried out her threats and widely circulated false and misleading accusations about Pillen throughout the Columbus community and surrounding area.

57.     Rasby's threats coupled with her demand for payment constitute civil extortion.

58.     As a direct and proximate result of Rasby's actions, Pillen has sustained damage in an amount to be proven at trial.


WHEREFORE, Defendant prays for the following relief:

A.      For judgment in Defendant's favor and against Plaintiff in an amount to be proven at trial.

B.      An award of pre-judgment and post-judgment interest to Defendant at the highest rate allowed by law.

C.      An award of Defendant's costs and expenses incurred in pursing this action, including an award of attorneys' fees; and

D.      For such other and further relief as the Court deems just and equitable.

DATED:  November 9, 2015

JAMES D. PILLEN, Defendant.

By:     REMBOLT LUDTKE LLP
        3 Landmark Centre
        1128 Lincoln Mall, Ste. 300
        Lincoln, NE 68508
        (402) 475-5100

By:     /s/ Mark A. Fahleson
        Tim Engler (#15940)
        tengler@remboltlawfirm.com
        Mark A. Fahleson (#19807)
        mfahleson@remboltlawfirm.com
        Sheila A. Bentzen (#25020)
        sbentzen@remboltlawfirm.com

17

## **CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on November 9, 2015. Any other counsel of record will be served by facsimile transmission and/or first class mail.


/s/ Mark A. Fahleson
Mark A. Fahleson (19807)


4813-3504-4649, v. 1

18