IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DEBORAH RASBY and DOUGLAS RASBY, husband and wife,<br><br>　　　　Plaintiff,<br><br>v.<br><br>JAMES D. PILLEN,<br><br>　　　　Defendant. | Civil Action No. 8:15-cv-226<br><br>**DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS** |

Defendant, James D. Pillen ("Pillen"), by his attorneys, Rembolt Ludtke LLP, respectfully submits the following Brief in Support of Motion to Compel Production of Documents.

**INTRODUCTION**

This motion to compel arises out of a dispute between the parties as to whether communications between Plaintiff Deborah Rasby ("Rasby") and her former legal counsel, McGrath North Mullin & Kratz PC LLO ("McGrath") are protected by the attorney-client privilege. McGrath represented Rasby in connection with the negotiation and execution of the transaction at the basis of the Amended Complaint. In her Amended Complaint, Rasby asserts claims of duress and fraud in connection with this transaction. Therefore, because Rasby has squarely put the transaction and by extension her attorney-client communications in issue, she has waived the right to assert the attorney-client privilege. Additionally, Rasby further waived the privilege through her partial disclosure of McGrath communications.

**BACKGROUND**

1.　On or about December 22, 2015, Pillen served upon Rasby Defendant's Requests for Production (First Set). (Doc. 23). Defendant's Requests for Production Nos. 15, 16, and 17 seek production of documents related to Rasby's representation by McGrath in

1

connection with the negotiation and execution of the transaction at the basis of the Amended Complaint. (Engler Aff. ¶ 5).

2. On or about December 23, 2015, Pillen filed and served a Notice of Intent to Serve Rule 45 Subpoena upon McGrath seeking the production of all documents relative to McGrath's representation of Rasby with respect to the negotiation, drafting, and execution of the transaction at the basis of the Amended Complaint. (Doc. 24; Engler Aff. ¶ 6).

3. On or about December 31, 2015, Rasby filed an Objection to Subpoena and Motion to Quash on the basis that the "materials contained in the requested file are subject to the attorney-client privilege and/or are protected work product." (Doc. 25; Engler Aff. ¶7).

4. On or about January 12, 2016, Plaintiff and Defendant entered into a Joint Stipulation for Resolution of Plaintiff's Objection to Subpoena and Motion to Quash ("Joint Stipulation") in which the parties agreed that McGrath would produce all documents responsive to the subpoena to Rasby, who would then produce all non-privileged documents to Pillen and provide a detailed privilege log for any documents withheld on the basis of privilege. (Doc. 28; Engler Aff. ¶ 8).

5. On or about January 22, 2016, Plaintiff served upon Defendant her Responses to Defendant's Requests for Production (First Set), objecting to Request Nos. 15, 16, and 17 on the alleged basis that the requests are "subject to a stipulation entered between the parties. Any response or production will be provided through the stipulation regarding the subpoena to McGrath North." (Engler Aff. ¶ 9).

6. On or about February 19, 2016, McGrath produced documents Bates-stamped MNMK000001-000200 ("McGrath Production") to Rasby. On or about March 7, 2016, Rasby produced all of the McGrath Production to Pillen. (Engler Aff. ¶ 10).

7. On or about May 2, 2016, Rasby produced additional documents to Defendant Bates-stamped DR001042.2-DR002007.2 ("Second Production"). The Second Production

contains multiple emails between Rasby and attorneys at McGrath North. However, Rasby redacted portions of these emails prior to production. Rasby did not submit a privilege log with the Second Production. (Engler Aff. ¶ 11).

8.   Upon review of the Second Production, Defendant requested that Rasby produced unredacted copies of the emails; however Rasby refused and asserted that the redactions are justified by the attorney-client privilege. (Engler Aff. ¶¶ 12-14).

## ARGUMENT

In this federal court diversity action, Nebraska law governs Rasby's claim of attorney-client privilege. *See* Fed. R. Evid. 501. In general, Neb. Rev. Stat. § 27-503 creates a privilege that protects against the disclosure of attorney-client communications. However, this privilege is not absolute, and under certain circumstances, a party may waive the privilege. Under Nebraska law, "[f]airness is an important and fundamental consideration in assessing the issue of whether there has been a waiver of the lawyer-client privilege." *League v. Vanice*, 374 N.W.2d 849, 856 (Neb. 1985). "The lawyer-client privilege exists only to aid in the administration of justice, and when it is shown that the interests of the administration of justice can only be frustrated by the exercise of the privilege, the trial judge may require that the communication be disclosed." *Id.* (quoting *Cohen, et vir v. Jenkintown Cab Co. et al.*, 357 A.2d 689, 693-94 (Pa. 1976)). In this case, fairness dictates that this Court should find that Rasby waived the attorney-client privilege with respect to her communications with McGrath.

### I.   RASBY WAIVED THE ATTORNEY-CLIENT PRIVILEGE BY PLACING HER ATTORNEY COMMUNICATIONS IN ISSUE

The Nebraska Supreme Court has held that a client waives the attorney-client privilege by placing into issue communications she had with her counsel. *State v. Roeder*, 636 N.W.2d 870, 875-76 (Neb. 2001). More specifically, the Court has held that where the

3

following "three conditions exist, a court should find that the party asserting a privilege has impliedly waived it through his own affirmative conduct:"

> (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through his affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.

*League*, 374 N.W.2d at 856; *see also Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 731 (8th Cir. 2002). For instance, in *League v. Vanice*, a minority shareholder brought suit against the corporation's president and alleged that the president breached a duty to the minority shareholder by engaging in certain corporate transactions. *Id.* at 852. To avoid the bar of the statute of limitations, the plaintiff alleged that the president had concealed certain events or transactions. *Id.* at 856. The defendant then successfully sought discovery of the plaintiff's communications with his attorney to show whether or not the plaintiff in fact had knowledge of the transactions. *Id.* The plaintiff challenged this ruling on appeal. The Nebraska Supreme Court soundly rejected the plaintiff's argument holding that:

> When he alleged concealment, League injected his knowledge, or lack of knowledge, into the litigation as a crucial issue relevant to disposition of the claims based on an alleged breach of fiduciary duty by Vanice. League is not permitted to thrust his lack of knowledge into the litigation as a foundation or condition necessary to sustain his claim against Vanice while simultaneously retaining the lawyer-client privilege to frustrate proof of knowledge negating the very foundation or condition necessary to prevail on the claim asserted against Vanice.

*Id.* Thus, the court concluded that:

> League by pleading facts necessary to sustain his causes of action against Vanice, waived the lawyer-client privilege concerning those communications bearing upon League's knowledge of events or transactions relevant to his claims against Vanice. Any other holding would be a triumph of form over substance and would lead down a legal cul-de-sac during a quest for truth through judicial proceedings

*Id.*

4

In this case, as in *League*, by asserting claims for fraud and duress, Rasby thrust her state of mind in issue as a condition necessary to sustain these claims against Pillen while simultaneously attempting to retain the lawyer-client privilege to frustrate Pillen's ability to prove that she was not acting under duress or relying on purportedly fraudulent representations when she executed the purchase agreement. For instance, in her Amended Complaint, Rasby plead the following facts:

> 35. As a direct and proximate result of James' actions, Deborah was forced into a position where James destroyed her ability to make a voluntary choice in entering the Purchase Agreement.
>
> 36. James' actions affected Deborah's actions and state of mind when entering into the Purchase Agreement.
>
> 37. But for James' threats and actions, Deborah would not have entered into the Purchase Agreement.
>
> 49. Deborah did rely on James' representation which was a substantial basis for why she entered into the Purchase Agreement.

([Doc.5](Doc.5)). Because Rasby was represented by McGrath throughout the negotiation and execution of the purchase agreement, her communications with McGrath are necessary to establish her state of mind when entering into the agreement and whether or not she did in fact rely on purported representations made by Pillen when she entered into the agreement. For instance, these communications may reveal whether and to what extent Pillens' actions motivated Rasby to execute the purchase agreement as opposed to Rasby making her decision based on the legal analysis and advice provided by her experienced and capable lawyers. Unless Rasby produces complete and unredacted copies of all communications with McGrath, Defendant cannot properly defend against Rasby's claims. Fairness requires that Pillen be allowed to explore the analysis and advice she received in order to refute Rasby's claims that her decision was the result of a compromised free will rather than an informed choice made after considering careful legal analysis and counsel.

5

As a result, this Court should find that Rasby waived the attorney-client privilege with respect to her communications with McGrath.

## II.   RASBY WAIVED THE ATTORNEY-CLIENT PRIVILEGE BY PARTIALLY DISCLOSING ATTORNEY-CLIENT COMMUNICATIONS

In addition to waiving the attorney-client privilege by placing the McGrath communications in issue, Rasby also waived the privilege through her partial disclosure of the communications. Neb. Rev. Stat. § 27-511, provides that a person waives the attorney-client privilege if she "voluntarily discloses or consents to the disclosure of any significant part of the matter or communication." Indeed, "[d]isclosure of privileged information 'is inconsistent with the confidential attorney-client relationship and waives the privilege.'" *Lutheran Medical Center of Omaha, Neb. v. Contractors, et. al.*, 25 F.3d 616, 622 (8th Cir. 1994) (quoting *In re Grand Jury Proceedings*, 841 F.2d 230, 234 (8th Cir. 1988)) (applying Nebraska law). Additionally:

> Absent an express agreement that disclosure of certain matters will not constitute a waiver of the privilege as to all, it is a universally applied principle that a client cannot partially disclose a portion of a privileged communication and at the same time maintain the privilege as to the remainder.

Edna Selan Epstein, The Attorney-Client Privilege and the Work-Product Doctrine 296 (4th ed. 2001). "The principle operating against partial disclosures is grounded on the unfairness 'for a client to disclose those instances which please him and withhold all other occasions.'" 3 R. Collin Mangrum, Mangrum on Nebraska Evidence 432 (2015 ed.) )quoting *Lee Nat. Corp. v. Deramus*, 313 F. Supp. 224, 227 (D. De. 1970).

In this case, Rasby waived the attorney-client privilege with respect to all McGrath communications by voluntarily disclosing some of those communications. Rasby produced complete copies of all emails initially produced by McGrath and produced redacted versions of various other emails with McGrath. (Engler Aff. ¶¶ 10-11). By disclosing a significant

6

number of the McGrath communications, Rasby waived her right to claim a privilege as to the remaining communications. Additionally, the rule of completeness requires that Defendant be given access to complete and unredacted copies of the McGrath emails. In the case of the redacted emails, Rasby has selectively disclosed those communications that please her but has withheld all other communications, including, one may surmise, those that do not support Rasby's contentions. To allow Defendant to fairly defend this case, this Court should require Rasby to disclose all of the McGrath communications.

## CONCLUSION

For the foregoing reasons, Defendant James Pillen respectfully requests that this Court enter an order finding that Plaintiff Deborah Rasby has waived the attorney-client privilege with respect to the McGrath communications and an order compelling Rasby to produce unredacted copies of all emails detailed in the affidavit submitted in support of this motion. In the alternative, Defendant requests that this Court conduct an *in camera* inspection of the emails to determine whether privilege has been waived. Finally, Defendant requests that the Court award him the attorneys' fees he incurred in bringing this Motion.

DATED:  June 24, 2016

JAMES D. PILLEN, Defendant.

By:  REMBOLT LUDTKE LLP
3 Landmark Centre
1128 Lincoln Mall, Ste. 300
Lincoln, NE 68508
(402) 475-5100

By:  /s/ Timothy R. Engler
Timothy R. Engler (#15940)
Mark A. Fahleson (#19807)
mfahleson@remboltlawfirm.com
Sheila A. Bentzen (#25020)
sbentzen@remboltlawfirm.com

7

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on June 24, 2016. Any other counsel of record will be served by facsimile transmission and/or first class mail.

/s/ Timothy R. Engler
Timothy R. Engler (#15940)

4823-9435-8579, v. 1