EXHIBIT

1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DEBORAH RASBY and DOUGLAS RASBY, husband and wife, ) | Civil Action No. 8:15-cv-226 |
| ) | |
| Plaintiff, ) | |
| ) | **AFFIDAVIT OF TIMOTHY R.** |
| v. ) | **ENGLER IN SUPPORT OF** |
| ) | **DEFENDANT'S MOTION TO** |
| JAMES D. PILLEN, an individual, ) | **COMPEL** |
| ) | |
| Defendant. ) | |

STATE OF NEBRASKA     )
                     )ss.
COUNTY OF LANCASTER )

I, Timothy R. Engler, being first duly sworn under oath, state and affirm as follows:

1.     My name is Timothy R. Engler and I am an attorney in the law firm of Rembolt Ludtke LLP, 3 Landmark Centre, 1128 Lincoln Mall, Suite 300, Lincoln, NE 68508.

2.     I am over the age of 18 and have personal knowledge of the facts contained in this affidavit.

3.     Rembolt Ludtke represents Defendant, James D. Pillen, in the above-captioned case.

4.     This Affidavit is submitted in connection with the introduction of evidence in support of Defendant's Motion to Compel and to recite the efforts by counsel to meet and confer in a sincere effort to resolve this discovery dispute prior to filing the Motion to Compel.

5.     On or about December 22, 2015, Defendant served upon Plaintiff Deborah Rasby ("Rasby") Defendant's Requests for Production (First Set). A true and correct copy of which is attached hereto as "Attachment A." Defendant's Requests for Production Nos. 15, 16, and 17 seek production of documents related to Plaintiff's representation by McGrath

North Mullin & Kratz PC LLO ("McGrath") in connection with the negotiation and execution of the transaction at the basis of the Amended Complaint.

6.      On or about December 23, 2015, Defendant filed and served a Notice of Intent to Serve Rule 45 Subpoena upon McGrath seeking the production of all documents relative to McGrath's representation of Plaintiff with respect to the negotiation, drafting, and execution of the transaction at the basis of the Amended Complaint. (Doc. 24).

7.      On or about December 31, 2015, Plaintiff filed an Objection to Subpoena and Motion to Quash on the basis that the "materials contained in the requested file are subject to the attorney-client privilege and/or are protected work product." (Doc. 25).

8.      On or about January 12, 2016, Plaintiff and Defendant entered into a Joint Stipulation for Resolution of Plaintiff's Objection to Subpoena and Motion to Quash ("Joint Stipulation") in which the parties agreed that McGrath would produce all documents responsive to the subpoena to Plaintiff, who would then produce all non-privileged documents to Pillen and provide a detailed privilege log for any documents withheld on the basis of privilege. (Doc. 28).

9.      On or about January 22, 2016, Plaintiff served upon Defendant her Responses to Defendant's Requests for Production (First Set), objecting to Request Nos. 15, 16, and 17 on the alleged basis that the requests are "subject to a stipulation entered between the parties. Any response or production will be provided through the stipulation regarding the subpoena to McGrath North." A true and correct copy of the responses are attached hereto as "Attachment B."

10.     On or about February 19, 2016, McGrath produced documents Bates-stamped MNMK000001-000200 ("McGrath Production") to Plaintiff. On or about March 7, 2016, Plaintiff produced all of the McGrath Production to Defendant.

11.    On or about May 2, 2016, Plaintiff produced additional documents to Defendant Bates-stamped DR001042.2-DR002007.2 ("Second Production"). The Second Production contains multiple emails between Plaintiff Rasby and attorneys at McGrath North. However, Rasby redacted portions of these emails prior to production. Rasby did not submit a privilege log with the Second Production.

12.    On Wednesday morning, June 15, 2016 at approximately 9:30, I spoke at length by telephone with Diana Vogt regarding the emails between Rasby and Roger Wells produced by Rasby that had been redacted. We discussed at length the issue of whether Rasby could claim attorney/client privilege as to those redacted emails. At that time, I agreed to send her the emails that we were requesting be produced with no redaction. I also asked Vogt to confirm that the sole basis for redaction was the attorney/client privilege.

13.    On June 16, 2016 at 1:44 p.m., I emailed Vogt the list of emails with Bates numbers as well as the redacted emails, a copy of the emails and attachments are identified and attached to my affidavit as "Attachment C."

14.    Later that day, Vogt emailed back and confirmed that the sole basis for the redactions was the attorney/client privilege. At that point, counsel again spoke on the telephone and agreed that the parties would "agree to disagree" as to the scope and applicability of the attorney/ client privilege in the context of the claims made by Rasby in her Amended Complaint. Counsel agree the most efficient way to resolve the dispute was for the Defendant to file a Motion to Compel asking the Court to decide the scope and applicability of the attorney/client privilege as it relates to communications between Rasby and Roger Wells relating to the transaction which serves as the basis of the Amended Complaint. A ruling on this issue will also assist the parties in addressing the scope and

applicability of the privilege as it pertains to the deposition of Roger Wells which will be scheduled promptly after the Court's ruling.

DATED: June 24, 2016



Timothy R. Engler #15940

SUBSCRIBED AND SWORN to before me, a Notary Public, on this  24ᵗʰ  day of

June, 2016, by Timothy R. Engler

GENERAL NOTARY - State of Nebraska
BARB LEVOS
My Comm. Exp. July 30, 2018

Notary Public

4847-1242-8595, v.  1
4847-1242-8595, v. 1

4



ATTACHMENT A

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DEBORAH RASBY and DOUGLAS RASBY, husband and wife,<br><br>    Plaintiffs,<br><br>v.<br><br>JAMES D. PILLEN, and individual.,<br><br>    Defendant. | Case No. 8:15-cv-226<br><br>**DEFENDANT'S REQUEST FOR PRODUCTION (FIRST SET)** |

TO:   Plaintiff Deborah Rasby and her counsel of record.

James D. Pillen ("Defendant"), by and through his counsel, pursuant to FED. R. CIV. P. 34, requests that Plaintiff Deborah Rasby ("Plaintiffs") submit documents and things responsive to the request for production set forth herein and produce such documents and things at the office of Defendant's counsel, Rembolt Ludtke LLP, 1128 Lincoln Mall, Suite 300, Lincoln, Nebraska, or at such other place as is mutually agreed upon 30 days after service.

### Definitions

A.      The term "Plaintiff" means and includes Plaintiff Deborah Rasby, and agents acting on Plaintiff's behalf.

B.      The term "Defendant" means James D. Pillen.

C.      "You" or "your" refers to the Plaintiff, and all other present and former persons acting or purporting to act on behalf of the Plaintiff, including her attorneys.

D.      "Person" means any natural person, firm, corporation, limited liability company, partnership, proprietorship, joint venture, organization, group of natural persons or other associations separately identifiable whether or not such association

has a separate legal existence in its own right.

E.     "Relating to" or "pertaining to" means comprising, addressing, referring to (whether by name or not), discussing, mentioning, supporting, applying to, evidencing, containing, contradicting and reproducing, paraphrasing or quoting any language of.

F.     In case of doubt as to the scope of a clause including "and," "or," "any," "all," "each" or "every" the intended meaning is inclusive rather than exclusive.

G.     When used with respect to a natural person, the words "identify" and "describe" mean to state the full name and present or last known address of that person, and the present or last known position and business affiliation of that person, during all times relevant to the period covered by these requests.

H.     When used with respect to a business or organization, the words "identify" and "describe" mean to state its full business name, principal place of business, and, if known, the nature of the organization (*e.g.*, corporation, partnership, limited liability company, joint venture, etc.).

I.     When used with respect to a transaction or event, the words "identify" and "describe" mean to state its place, date, the individuals involved, including business affiliations and positions, all terms of the transaction or event, whether any documents describing, reflecting or referring to such a transaction or event exist, and the identifying data relative to those documents, including the following:

1.     the subject of the document;

2.     the title of the document;

2

3.    the type of document (*e.g.*, letter, memoranda, telegram, chart);

4.    the date of the document, or if the specific date is unknown, the month and year or other best approximation of such date;

5.    the identity of the person or persons who wrote, contributed to, prepared or originated such document;

6.    the identity of the person or persons to whom the document was directed or who received the documents or copies of the document, or any portion thereof;

7.    the present or last known location and custodian of the document.

J.    The term "document" is used in its customary broad sense and includes, without limitation, all written, printed, typed, recorded or graphic matter, however produced or reproduced, in the actual or constructive possession, custody or control of the Plaintiff or those acting on her behalf, including, without limitation, all writings, drawings, graphs, charts, photographs, photographic records, sound reproduction tapes, electronic mail, data compilations (whether tangible or intangible) from which information can be obtained or can be translated through detection devices into tangible form, all correspondence, memoranda, data, notes, diaries, papers, letters, communications, telegrams, messages of any kind, minutes of meetings, stenographic or handwritten notes, studies, estimates, reports, instructions, requests, pamphlets, brochures, applications, returns, pictures, books, journals, ledgers, corporate records, account contracts, leaflets, administrative or governmental reports or returns, exhibits, maps, surveys, sketches, schematics,

3

microfilm, xerox and every other tangible thing.  If said document is not in the possession or control of the Plaintiff or those acting on her behalf, please identify the person or persons who are in possession or control of said documents.

      K.    If you object to any request propounded below on the grounds that it requests information falling within the attorney/client privilege, is protected by the work product doctrine, or is subject to any other limitation upon discovery, please provide the following information as to each objection:

        1.    the nature of the privilege or doctrine you claim is applicable and the reason you invoke it;

        2.    if a document is involved, identify the document and identify each and every person known to you to have seen that document; and

        3.    if an oral communication is involved, identify the communication as described above and identify each and every person known to you to whom the substance of the communication has been disclosed.

      L.    If you interpose any objection to a request and the objection applies to only part of the information requested therein, demand is hereby made that you proceed to provide the unobjectionable part of the requested information.

      M.    These requests shall be deemed to be continuing in nature, and you are under a duty to supplement any and all responses to these requests if additional information becomes available to you subsequent to the service of your answers on the Defendant.

      N.    In the event that any document you identify has been lost or destroyed,

4

that document should be identified by author, address, date, subject matter, number of pages, attachments or appendices, all persons to whom distributed, shown or explained, all persons who had custody of the document, the date of loss or destruction, and the name and the title of the person responsible for the loss or destruction of the document.

O.    "Income" means all income, from all sources, such as compensation for services, business income, interest, rents, dividends, gains from the sale of property, commissions, taxable fringe benefits, insurance benefits, disability payments, payments from any governmental body or program, social security, and amounts obtained in settlement of any threatened or actual claim or litigation.

P.    If Plaintiff finds the meaning of any term in these requests to be unclear, then Plaintiff should assume a reasonable meaning, state what that assumed meaning is, and respond to the request on the basis of that assumed meaning.

Q.    Preceding your response to each of these requests for production, please restate the text of the discovery request to which you are responding.

## REQUEST FOR THE PRODUCTION OF DOCUMENTS AND THINGS

**REQUEST NO. 1:** Please produce each and every document and thing which in any way reflects, supports, contradicts, or relates to the allegations contained in the Amended Complaint.

**RESPONSE:**

**REQUEST NO. 2:**  Please produce each and every document and thing which in any way reflects, supports, contradicts, or relates to the allegations contained in the Amended Complaint that you are entitled to damages, including, but not limited to, the computation of such damages.

**RESPONSE:**

**REQUEST NO. 3:**  Please produce all correspondence, including but not limited to letters, notes, memoranda, video recordings, voice recordings, transcriptions and e-mails between you and any individual regarding the matter at issue in the Amended Complaint

**RESPONSE:**

**REQUEST NO. 4:** Please produce all correspondence, including but not limited to letters, notes, memoranda, video recordings, voice recordings, transcriptions and e-mails between you and any individual regarding Defendant.

**RESPONSE:**

**REQUEST NO. 5:**  Please produce all correspondence, including but not limited to letters, notes, memoranda, video recordings, voice recordings, transcriptions and e-mails sent by you to or received from any current or former employee of the PST or any entity referenced in Paragraph 7 of the Complaint.

**RESPONSE:**

**REQUEST NO. 6:**  Please produce every statement, regardless of form, that you obtained or received from any person regarding any of the events or matters at issue in the Amended Complaint.

**RESPONSE:**

6

**REQUEST NO. 7:** Please produce all documents provided to your experts or individuals you contemplated retaining as an expert.

**RESPONSE:**

**REQUEST NO. 8:** Please produce copies of any documents, including, but not limited to, any correspondence, reports or drafts, provided or sent by your experts or individuals you contemplated retaining as an expert.

**RESPONSE:**

**REQUEST NO. 9:** Please produce any diaries, journals, logs, calendars, daytimers, dayplanners, Outlook, or similar recording maintained by you for the period since June 1, 1992, through the present.

**RESPONSE:**

**REQUEST NO. 10:** Please produce each and every document and thing identified or referenced in Plaintiff's Initial Disclosures, and any supplemental disclosures made hereafter.

**RESPONSE:**

**REQUEST NO. 11:** Please produce all documents and things reviewed or relied upon in preparing Plaintiff's Initial Disclosures, and any supplemental disclosures made hereafter.

**RESPONSE:**

7

**REQUEST NO. 12:** Please produce each and every exhibit that you may or will introduce at the trial in this matter.

**RESPONSE:**

**REQUEST NO. 13:** Please produce all of Plaintiff's financial statements, including tax returns, W-2s, and bank statements from 1992 through the present.

**RESPONSE:**

**REQUEST NO. 14:** Please produce all documents that support your claim that you were under economic duress at the time you executed the unit purchase agreement.

**RESPONSE:**

**REQUEST NO. 15:** Please produce all correspondence, including, but not limited to, e-mails between you and McGrath North and any of its officers, agents, or employees related to Defendant's purchase of your interest in PST and related entities and negotiation thereof.

**RESPONSE:**

**REQUEST NO. 16:** Please produce all agreements between you and McGrath North and any of its officers, agents, or employees related to legal representation of you in any matter relating to or involving Defendant and/or the unit purchase agreement.

**RESPONSE:**

8

**REQUEST NO. 17**:  Please produce all billing statements/invoices provided by McGrath North and any of its officers, agents, or employees related to legal representation of you in any matter relating to or involving Defendant and/or the unit purchase agreement.

**RESPONSE**:

**REQUEST NO. 18**:  Please produce the report referenced in Paragraph 14 of the Complaint and any correspondence relating thereto.

**RESPONSE**:

**REQUEST NO. 19**:  Please produce all documents evidencing or supporting your allegation in Paragraph 29 of the Complaint that you had received interest from investors to purchase your interest at $5,346,226.00 and/or that the investors refused to close on any deal due to Defendant's actions.

**RESPONSE**:

        DATED: December 22, 2015

                      JAMES D. PILLEN, Defendant

            By:    REMBOLT LUDTKE, LLP
                   3 Landmark Centre
                   1128 Lincoln Mall, Ste. 300
                   Lincoln, NE 68508
                   (402) 475-5100

            By:    _____
                   Mark A. Fahleson (#19807)
                   Sheila A. Bentzen (#25020)
                   Tim Engler (#15940)

## CERTIFICATE OF SERVICE

The undersigned attorney for Defendant certifies that he caused a true and correct copy of the foregoing to be sent by electronic and ordinary United States mail, first class postage prepaid, on December 22, 2015, addressed to the following:

James D. Sherrets
Diana J. Vogt
Robert S. Sherrets
SHERRETS BRUNO &VOGT LLC
260 Regency Parkway Drive, Suite 200
Omaha, NE 68114

Mark A. Fahleson (#19807)

4811-0762-7050, v. 1

10

ATTACHMENT
B

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEBRASKA

DEBORAH   RASBY   and   DOUGLAS )          Case No. 8:15-cv-226
RASBY, husband and wife, )
                                          )
                    Plaintiffs, )          **PLAINTIFF'S RESPONSES TO**
                                          )          **DEFENDANT'S REQUEST FOR**
v.                                        )          **PRODUCTION (FIRST SET)**
                                          )
JAMES D. PILLEN, and individual., )
                                          )
                    Defendant. )

## REQUEST FOR THE PRODUCTION OF DOCUMENTS AND THINGS

Plaintiff objects to the Defendant's "definitions" which precede the request for production of documents "and things" as these requests and instructions are beyond the scope of discovery and exceed Plaintiff's obligations in responding to Defendant's requests.

**REQUEST NO. 1:** Please produce each and every document and thing which in any way reflects, supports, contradicts, or relates to the allegations contained in the Amended Complaint.

**RESPONSE:** Objection, this request is overly broad as it seeks information that is neither relevant nor likely to lead to the discovery of relevant information. Additionally, this request would impose an undue burden on Deborah to search out and discover any document which might have a causal relationship to anything included in the Amended Complaint. This request is vague and it is not readily apparent what information, or what limitations, the Defendant is seeking. Further, this request includes information which is protected by attorney/client privilege and attorney work product.

<u>REQUEST NO. 2</u>:  Please produce each and every document and thing which in any way reflects, supports, contradicts, or relates to the allegations contained in the Amended Complaint that you are entitled to damages, including, but not limited to, the computation of such damages.

<u>RESPONSE</u>:  Objection, this request is overly broad as it seeks information that is neither relevant nor likely to lead to the discovery of relevant information. Additionally, this request would impose an undue burden on Deborah to search out and discover any document which might have a causal relationship to anything included in the Amended Complaint.  This request is vague and it is not readily apparent what information, or what limitations, the Defendant is seeking. Further, this request includes information which is protected by attorney/client privilege and attorney work product.

Subject to and without waiving this objection, all relevant documents currently in Plaintiff's possession relating to Plaintiff's measure of damages have been produced.  A majority of these documents are still in the possession of the Defendant and have not been provided as Defendant has not produced any documents with his initial disclosures.  It is expected that there will be documents responsive to this request within Defendant's disclosures.

<u>REQUEST NO. 3</u>: Please produce all correspondence, including but not limited to letters, notes, memoranda, video recordings, voice recordings, transcriptions and e-mails between you and any individual regarding the matter at issue in the Amended Complaint

2

RESPONSE: Objection, this request is overly broad as it seeks information that is neither relevant nor likely to lead to the discovery of relevant information. Additionally, this request would impose an undue burden on Deborah to search out and discover any document which might have a causal relationship to anything included in the Amended Complaint. This request is vague and it is not readily apparent what information, or what limitations, the Defendant is seeking. Further, this request includes information which is protected by attorney/client privilege and attorney work product.

REQUEST NO. 4: Please produce all correspondence, including but not limited to letters, notes, memoranda, video recordings, voice recordings, transcriptions and e-mails between you and any individual regarding Defendant.

RESPONSE: Objection, this request is overly broad as it seeks information that is neither relevant nor likely to lead to the discovery of relevant information. Plaintiff worked with Defendant for over 20 years. It is absurd to think Plaintiff should (or could) uncover each and every correspondence or communication which makes any reference or mention of the Defendant. Additionally, this request would impose an undue burden on Deborah to search out and discover any document or correspondence which has ever referenced the Defendant. This request is vague and it is not readily apparent what information, or what limitations, the Defendant is seeking. Further, this request includes information which is protected by attorney/client privilege and attorney work product.

REQUEST NO. 5: Please produce all correspondence, including but not limited to letters, notes, memoranda, video recordings, voice recordings, transcriptions and

3

e-mails sent by you to or received from any current or former employee of the PST or any entity referenced in Paragraph 7 of the Complaint.

**RESPONSE:** Objection, this request is overly broad as it seeks information that is neither relevant nor likely to lead to the discovery of relevant information. Additionally, this request would impose an undue burden on Deborah to search out and discover communication with or from any employee, current or former, from any of the 19 different entities listed in Paragraph 7 of the Amended Complaint. The list was so voluminous that Defendant had to incorporate the names of the entities by reference. This request is also vague and it is not readily apparent what information, or what limitations, the Defendant is seeking.

**REQUEST NO. 6:** Please produce every statement, regardless of form, that you obtained or received from any person regarding any of the events or matters at issue in the Amended Complaint.

**RESPONSE:** Plaintiff objects to this request as it is overly broad and vague. It is uncertain what Defendant means by "statement" as it is not defined in Defendant's five pages of definitions that precede these requests. To the extent statement means an affidavit or otherwise recorded statement by any third party, to date, Plaintiff has not received any. To the extent a "statement" means an appraisal or valuation, this information has previously been supplied with Plaintiff's initial disclosures.

**REQUEST NO. 7:** Please produce all documents provided to your experts or individuals you contemplated retaining as an expert.

**RESPONSE:** See Plaintiff's initial disclosures. This request will be supplemented

4

after Defendant produces his initial disclosures.

**REQUEST NO. 8:** Please produce copies of any documents, including, but not limited to, any correspondence, reports or drafts, provided or sent by your experts or individuals you contemplated retaining as an expert.

**RESPONSE:** Plaintiff objects to this request to the extent it requests attorney work product.

**REQUEST NO. 9:** Please produce any diaries, journals, logs, calendars, daytimers, dayplanners, Outlook, or similar recording maintained by you for the period since June 1, 1992, through the present.

**RESPONSE:** Objection. This request is outrageously overly broad as it is requesting records which are not maintained in the ordinary course of business which date back to 1992. There is no basis for why a "day planner" dating back to 1992 would be relevant to this matter. Further, there is no definition for "Outlook" or what information Defendant actually hopes to gain.

**REQUEST NO. 10:** Please produce each and every document and thing identified or referenced in Plaintiff's Initial Disclosures, and any supplemental disclosures made hereafter.

**RESPONSE:** See Plaintiff's initial disclosures.

**REQUEST NO. 11:** Please produce all documents and things reviewed or relied upon in preparing Plaintiff's Initial Disclosures, and any supplemental disclosures made hereafter.

**RESPONSE:** See Plaintiff's initial disclosures.

5

**REQUEST NO. 12:** Please produce each and every exhibit that you may or will introduce at the trial in this matter.

**RESPONSE:** Objection. Plaintiff has not made designations for which exhibits that she intends to introduce at trial in this matter. Plaintiff's exhibits will be provided as required by the Court.

**REQUEST NO. 13:** Please produce all of Plaintiff's financial statements, including tax returns, W-2s, and bank statements from 1992 through the present.

**RESPONSE:** Objection as this seeks information that is irrelevant to this matter. Further, this request would be unduly burdensome for Plaintiff to attempt to track down and recover all bank statements, W-2, and tax returns dating back to 1992. It is also vague as to what exactly Defendant means by "financial statements." There is no basis for why Plaintiff's personal financial condition at any time prior to 2011 would be relevant to this case. Certainly Plaintiff's financial condition dating back to 1992 is wholly irrelevant and not likely to lead to any discoverable information. Additionally, Plaintiff was employed by the Defendant from 1992 through 2011. Any W-2s would already be in Defendant's possession. This request is merely a means for Defendant to coerce Plaintiff into spending unnecessary time and energy on lengthy and arduous discovery requests which detract from the actual issues in this case.

**REQUEST NO. 14:** Please produce all documents that support your claim that you were under economic duress at the time you executed the unit purchase agreement.

**RESPONSE:** See Plaintiff's responses to initial disclosures. Discovery is ongoing. Plaintiff may supplement.

6

**REQUEST NO. 15:** Please produce all correspondence, including, but not limited to, e-mails between you and McGrath North and any of its officers, agents, or employees related to Defendant's purchase of your interest in PST and related entities and negotiation thereof.

**RESPONSE:** Objection. This request is subject to a stipulation entered between the parties. Any response or production will be provided through the stipulation regarding the subpoena to McGrath North.

**REQUEST NO. 16:** Please produce all agreements between you and McGrath North and any of its officers, agents, or employees related to legal representation of you in any matter relating to or involving Defendant and/or the unit purchase agreement.

**RESPONSE:** Objection. This request is subject to a stipulation entered between the parties. Any response or production will be provided through the stipulation regarding the subpoena to McGrath North.

**REQUEST NO. 17:** Please produce all billing statements/invoices provided by McGrath North and any of its officers, agents, or employees related to legal representation of you in any matter relating to or involving Defendant and/or the unit purchase agreement.

**RESPONSE:** Objection. This request is subject to a stipulation entered between the parties. Any response or production will be provided through the stipulation regarding the subpoena to McGrath North.

**REQUEST NO. 18:** Please produce the report referenced in Paragraph 14 of the Complaint and any correspondence relating thereto.

**RESPONSE:** See the Plaintiff's initial disclosures.

7

**REQUEST NO. 19**: Please produce all documents evidencing or supporting your allegation in Paragraph 29 of the Complaint that you had received interest from investors to purchase your interest at $5,346,226.00 and/or that the investors refused to close on any deal due to Defendant's actions.

**RESPONSE**: All documents responsive to this request have been produced along with Plaintiff's initial disclosures.

DATED: January 22, 2016

> DEBORAH RASBY
> Plaintiffs,
>
> By:  _____ */s/ Robert S. Sherrets* _____
> James D. Sherrets, NE #15756
> Diana J. Vogt, NE #19387
> Robert S. Sherrets, NE#24791
> SHERRETS BRUNO & VOGT LLC
> 260 Regency Parkway Drive
> Suite 200
> Omaha, NE   68114
> Tele:  (402)390-1112
> Fax:   (402)390-1163
> law@sherrets.com
> ATTORNEYS FOR THE PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of January, 2016, I caused a true and correct copy of the foregoing to be served by United States mail, addressed as follows:

Mark A. Fahleson
Sheila A. Bentzen
Rembolt Ludtke LLP
3 Landmark Centre
1128 Lincoln Mall, Ste. 300
Lincoln, NE   68508

> _____ */s/ Robert S. Sherrets* _____
> Robert S. Sherrets

8

## Timothy R. Engler

| | | EXHIBIT |
|---|---|---|
| **From:** | Timothy R. Engler | **C** |
| **Sent:** | Thursday, June 16, 2016 1:44 PM | |
| **To:** | 'Vogt, Diana' | |
| **Cc:** | Mark A. Fahleson; Sheila A. Bentzen | |
| **Subject:** | FW: Pillen | |
| **Attachments:** | Rasby Redacted Document list.docx; Redacted Emails.pdf | |

Hi, Diana.

Thanks again for your cooperation in agreeing to postpone the deposition of Roger Wells.  Given the broader production request from McGrath North, the issue of the scope and applicability of the attorney/client privilege, and the issue of my back, it was the prudent thing to do.  On a go forward basis, attached is a list of the redacted documents we are requesting you produce unredacted.  For your convenience, the redacted emails are also attached.  Please confirm that the sole basis for the redaction is based on privilege and that you do not intend to produce unredacted copies.  After you have done so, we will confirm our decision to "agree to disagree" and proceed with a motion to compel.  I am assuming our discussion yesterday and our emails are sufficient to comply with our "meet and confer" obligations.  Thank you.

**Timothy R. Engler** · ATTORNEY
tengler@remboltlawfirm.com
**Rembolt  Ludtke**
Rembolt Ludtke LLP
3 Landmark Centre
1128 Lincoln Mall, Suite 300
Lincoln, NE 68508
P 402.475.5100 | F 402.475.5087
www.remboltlawfirm.com

**From:** Barbara L. Levos
**Sent:** Wednesday, June 15, 2016 5:11 PM
**To:** Timothy R. Engler
**Subject:** Pillen

Let me know if you are fine with this list.

**Barbara L. Levos** · PARALEGAL
blevos@remboltlawfirm.com
**Rembolt  Ludtke**
Rembolt Ludtke LLP
3 Landmark Centre
1128 Lincoln Mall, Suite 300
Lincoln, NE 68508
P 402.475.5100 | F 402.475.5087
www.remboltlawfirm.com

Download parking map for Lincoln Office.

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material.  Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is strictly prohibited.  If you received this in error, please immediately contact the sender (collect call or via reply email) and delete the material from any computer.

| Document | Bates Range |
|---|---|
| Email Deb Rasby to Roger Wells | DR001170.2 |
| Email Deb Rasby to Roger Wells | DR001191.2 |
| Email Deb Rasby to Roger Wells | DR001217.2 - 001218.2 |
| Email Roger Wells to Deb Rasby | DR001230.2 |
| Email Deb Rasby to Roger Wells | DR001234.2 |
| Email Deb Rasby to Roger Wells | DR001246.2 – 001247.2 |
| Email Deb Rasby to Roger Wells | DR001253.2 |
| Email Deb Rasby to Roger Wells | DR001254.2 |
| Email Deb Rasby to Roger Wells | DR001256.2 |
| Email Deb Rasby to Roger Wells | DR001267.2 |
| Email Deb Rasby to Roger Wells | DR001273.2 – 001274.2 |
| Email Deb Rasby to Roger Wells | DR001289.2 |
| Email Deb Rasby to Roger Wells | DR001294.2 |
| Email Deb Rasby to Roger Wells | DR001301.2 |
| Email Deb Rasby to Roger Wells | DR00130.2 – 001311.2 |
| Email Deb Rasby to Roger Wells | DR001329.2 |
| Email Deb Rasby to Roger Wells | DR001356.2 |
| Email Deb Rasby to Roger Wells | DR001386.2 |
| Email Deb Rasby to Roger Wells | DR001400.2 |
| Email Roger Wells to Deb Rasby | DR001408.2 |
| Email Deb Rasby to Roger Wells | DR001431.2 |
| Email Deb Rasby to Roger Wells | DR001432.2 |
| Email Deb Rasby to Roger Wells | DR001433.2 |
| Email Deb Rasby to Roger Wells | DR001435.2 |
| Email Deb Rasby to Roger Wells | DR001437.2 |
| Email Deb Rasby to Roger Wells | DR001441.2 |
| Email Noah Priluck to William Hargens | DR001467.2 |
| Email Noah Priluck to William Hargens | DR001551.2 |
| Email Roger Wells to Deb Rasby | DR001629.2 |
| Email Roger Wells to Deb Rasby | DR001637.2 – 001638.2 |
| Email Roger Wells  to Deb Rasby | DR001689.2 - 001690.2 |
| Email Roger Wells to Deb Rasby | DR001736.2 |
| Email Roger Wells to Deb Rasby | DR001739.2 |
| Email Roger Wells to Deb Rasby | DR001747.2 |
| Email Roger Wells to Deb Rasby | DR001792.2 |
| Email Roger Wells to Deb Rasby | DR001793.2 – 001794.2 |
| Email William Hargens to Deb Rasby | DR001886.2 – 001887.2 |
| Email William Hargens to Deb Rasby | DR001901.2 |
| Email Deb Rasby to Roger Wells | DR001903.2 |
| Email William Hargens to Deb Rasby | DR001904.2 |
| July 3, 2012 Letter to Pillen's | DR000466.1 |
| Email Roger Wells to Deb Rasby | DR001606.2 |

**Wells, Roger**

| | |
|---|---|
| **From:** | Deb Rasby <debrasby@gmail.com> |
| **Sent:** | Monday, February 06, 2012 11:25 AM |
| **To:** | Wells, Roger |
| **Subject:** | Communication to Jim Pillen |

This message is subject to client/attorney confidentiality.

Hi Roger,

Well, I have communicated to Jim Pillen in a way that differed - completely - from what I originally felt like saying.

A picture of how things **could** be, as they once were, materialized in my mind at about 2 a.m. on Feb 2nd.  What are positive attitudes worth to a business?  What are they worth to people day to day?  Our business used to reflect an emphasis on this. I have received notes and even Christmas cookies from some of my past employees.  I haven't asked but have perceived from a few comments that the atmosphere has changed significantly, as I was witnessing before I left. I thought "maybe the time for this emphasis on positive thinking has returned". The 2:00 a.m. picture was very clear.  It prompted me to email Jim later in the day.  His response was not unexpected.  But it did give me an opportunity to communicate again in a way that reflects my belief.  I hold out hope that love wins.

Last Tuesday he said: "Deb, I love you dearly but . . ." .  Along those lines I continue to pray for him and love the person he can be.

If good does not win, actions must be brought to light. I realize, too, that if wrong wins over right action for PST my other business interests will follow suit.  There will be no solid ground, only quicksand. ▮▮▮▮▮▮▮

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

My deepest hope is that Jim transforms into the person he is capable of being and I can keep my investment.  But if he doesn't, maybe the threat of punishment and exposure would be enough to prompt a purchase at something other than a yard sale price - perhaps somewhere halfway between my 10 year multiple and his balance sheet value.

The following are the communications from most recent to earliest:

---------- Forwarded message ----------
From: <debrasby@gmail.com>
Date: Fri, Feb 3, 2012 at 1:49 PM
Subject: Re: An idea that I can't claim
To: Jim Pillen <jimdp@pstdanbred.com>

Well, it was a bolt of a thought at 2:00 a.m. - but it was a future picture of goodness, not past. I appreciate your

DR001170.2

sentiments and all decisions are yours to make. I don't look back, only forward with prayer and quite a bit of reference to the Word to keep my thoughts & actions on the right path. I want to treat you, always, with love and respect. I know that how we treat each other is how we treat Jesus. I know that the guidance that you receive gives you the same message for actions toward me. I know that you realize that keeping my interests safe and intact - PST and otherwise - is to do right. If I could be involved I would. I depend on you, as a man of power and strength, to use that power and strength in good and right ways, not to harm me. I feel thankfulness and gratitude for all good actions that you take. I always looked to the future on all of the PST work as an investment of effort and commitment for a lifetime future of prosperity - for us all. I think, and hope, that you really do respect that, knowing why I am not currently involved, and that you will stay true to your word when I was leaving that "everything will be alright". Going forward with love in your heart for me, your actions will be in keeping with that. And it will bring good things to your life. I will continue to keep you in my prayers Jim - that the Spirit blesses you with all good gifts. I will also continue to pray that our relationship is a good one in God's eyes and that we reflect the Holy Spirit to each other, letting our true colors be good ones. Anymore it seems that every thought is a prayer - unceasing! But that is not a complaint - it is a wonderful thing. As young Tim says in Charles Dicken's "A Christmas Carol" - God bless us, everyone! God bless you Jim Pillen!

------Original Message------
From: Jim Pillen
To: debrasby@gmail.com
Sent: Feb 2, 2012 10:26 AM
Subject: RE: An idea that I can't claim

Deb
Happy you are having a nice trip.
What we have done together is in the past. Please put your thoughts to the future for yourself that does not include PST.
Jim

-----Original Message-----
From: debrasby@gmail.com [mailto:debrasby@gmail.com]
Sent: Thursday, February 02, 2012 8:45 AM
To: Jim D. Pillen
Subject: An idea that I can't claim

Good morning Jim,

We are on our way to stop by & see a 90 year old alumn who has remembered HC in her will. I hope if I reach that age that I get a visit from some HC friends (she really likes Doug). Well, the reason for this message is a thought that I had @ 2:00 this morning - I don't feel the thought came from me.

The idea of dissolving PST is one that will not bring good to either one of us. You ARE PST. Also, it is not ethical or legal. I do not want to go down the road where that leads. The thought would enhance PST and it would be completely your decision. Also, it would bring much appreciation for you by many - it would elevate you. It would be along the lines of Tom Osborne bringing in Jack Stark - just tuning up the atmosphere a notch. At your request I would serve as an ear for people to run ideas or situations by that they might not bring to you, give you feedback, hold Think Tanks & pot lucks, lead retreats & do those small things that give a feeling of commradary/unity that others just don't have the time to do. There would be no salary. I would only be in the office as necessary to hold meetings/functions - very limited - and would be available by phone when not in the office, coming in if needed. This function would make a small positive, personal difference - but a useful one. Also, this position would allow you to have an ear on which to unload frustration too - you could even yell if you were so inclined! I am on your side and on the team's. I love you Jim Pillen. I love the people

2

of PST.  I love our PST business.

God bless you ~

Deb
P.s. I can get the 2 pottery samples back if you would like me to and make something for you specifically.
Sent from my BlackBerry Smartphone provided by Alltel


Sent from my BlackBerry Smartphone provided by Alltel

DR001172.2

**Wells, Roger**

| | |
|---|---|
| **From:** | debrasby@gmail.com |
| **Sent:** | Tuesday, January 31, 2012 7:10 PM |
| **To:** | Wells, Roger |
| **Subject:** | Pillen's strategy |

The following communication is subject to client/attorney confidentiality.

On thinking through this here is what I think:
I believe that Jim is getting advice to force me to take legal action, have the case go to court, be "forced" to buy me out (which w/b @ a discounted future value, i.e., much cheaper than continued distributions).  He wants this forced buy out.  Then he is free to increase the management fees to the businesses in which I have an ownership interest.  He wins all the way around.  (BTW, 3 months ago he offered to buy my PST interest for $500,000 - much cheaper than ~$200,000 annual distribution for many years.) ▌▌▌▌▌▌▌▌▌▌

▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

-----Original Message-----
From: debrasby@gmail.com
Date: Tue, 31 Jan 2012 23:27:12
To: Roger Wells<rwells@mcgrathnorth.com>
Reply-To: debrasby@gmail.com
Subject: Draft of email to Jim Pillen

The following communication is subject to client/attorney confidentiality.
Sent from my BlackBerry Smartphone provided by Alltel

-----Original Message-----
From: debrasby@gmail.com
Date: Tue, 31 Jan 2012 23:18:10
To: <rwells@mcgrathnorth.com>
Reply-To: debrasby@gmail.com
Jim,
The action that you indicated today - dissolving PST - is wrong.  It is a hit below the belt.  Why would you do this to anyone?? The work is still being performed.  You have bought out the interests of other partners in the past.  PST still did the same amount of work. The purchase of the Gottsch's interests doesn't change the work being done.

You mentioned that you are dissolving PST because of your increased risk.  This doesn't make sense.  Risk has always been an aspect of ownership in these businesses.  Reward is the other part.  PST also has risk and reward that is directly tied to the managed businesses. This has been the nature of our business from the beginning.  The dynamics haven't changed.

Our agreement in 2008 to allow ownership to continue upon retirement was clear and documented.  Common sense dictates that the intent of a retirement agreement is that the income stream from the business/investment upon retirement would continue, barring economic disaster.

The salary of $1,000,000 to yourself was also wrong - it is out of line with our industry, taking into consideration your 85%-90% share of profits.  I let this one ride but it was not fair to me.

Perhaps a sale would be the way to go although I was hoping to continue these ownerships as I believe there is a strong future for our industry. However, as I mentioned when I stopped in I will consider a fair offer.

DR001191.2

My greatest hope is that you will reconsider your actions, correct the wrongs, and do right. I have done right by you, even though I was treated poorly the last several years.  I have done everything you have asked.  I left without incident when you asked me to, I have gone through you for all information requests, I have stayed away from the office when you asked me not to stop in, and I have changed tax accountants which hurt Rick. In addition, when asked why I retired I have kept up a positive front in the community.

Let's find a solution and fix this.  I will follow up legally at this point if I do not hear from you in a week.  I have been economically blindsided.  I hope this never happens to you.

Deb
Sent from my BlackBerry Smartphone provided by Alltel

DR001192.2

**Wells, Roger**

| | |
|---|---|
| **From:** | Doug Rasby <ddrasby@frontiernet.net> |
| **Sent:** | Saturday, April 14, 2012 8:53 AM |
| **To:** | Wells, Roger; Hargens, William F. |
| **Subject:** | Pillen offer |
| | |
| **Categories:** | Rasby |

The following is subject to attorney/client confidentiality:

I hope that you received my email containing Jim Pillen's offer which requires a response by Friday, April 20th. ███████████████████████████████████████████████████████████████████████████ no matter how profitable an enterprise happens to be. As in this case, Pillen uses unscrupulous tactics.

With regard to PST no longer meeting the business objectives, the work that is performed will still need to be done for all of the business entities.  This includes production reporting and analysis, decision making on production practices, marketing strategies, financing needs, and personnel requirements; handling human resource functions, accounts payable, accounts receivable, preparation of financial statements, and all of the administrative work that is needed to operate a 50,000 sow operation.  The same staff will handle the work.

The only change has been in the ownership of one of the business entities from 1/3 Jim Pillen to 100% Jim Pillen.  One of our other pork production business entities, PC West, is also owned entirely by Jim Pillen.  PC West was our first farm and the original ownership was 50% Pillen and 50% Mike Wilke.  Management fees have always been paid.  Pillen and Wilke split in the late 90's, I believe.  The management fee structure did not change.

I don't know if the law looks at reasonable business practices when holding onto cash to reinvest in the business when there is no debt - not distributing even a minimum amount of net profit to cover income taxes. We do know that Pillen could come up with schemes to use cash for the business, if only to squeeze me.  Two of the businesses named in the letter for which cash distributions of net profits will be discontinued, PST Gene Center and PST Milling, have no debt.  Net profits have been distributed for many years, as they have for PST.

From what I have learned a bottom line reasonable offer might have been 4 years EBITDA or even tangible net value.   As you know, this year we are experiencing the most profitable year in our business' history.  The balance sheet values Jim is using for N. Nance, N. Plains and PST Gene Center are old and low. Dr. Griess was beaten down by the time he left and did not question the balance sheet value he was paid for PST Gene Center (I was not included in any of these discussions but Jim said there was little discussion).  Like me, Dr. Griess simply wanted out. In negotiating with Bob Gottsch's widow and Brett Gottsch (who is in the midst of a nasty divorce) on the purchase of GGP, LLC I don't know all of the dynamics that would possess them to use such a low value.  I do know that Bob Gottsch's widow is not a business woman and the death of her husband was recent.  I have also heard that Brett Gottsch was doing whatever he could to minimize the amount he would have to give his ex-wife.

1

**DR001217.2**

Given the fact that Pillen will do whatever it takes, ethical or not, to get me out ██████████████████████████████████████████

I will need your help to respond by April 20th.

Thanks,

Deb Rasby

**DR001218.2**

**Wells, Roger**

| | |
|---|---|
| **From:** | Doug Rasby <ddrasby@frontiernet.net> |
| **Sent:** | Tuesday, October 18, 2011 10:09 AM |
| **To:** | Wells, Roger |
| **Subject:** | RE: An update and a question |

I will do so – thank you Roger.

**From:** Wells, Roger [mailto:rwells@mcgrathnorth.com]
**Sent:** Tuesday, October 18, 2011 9:01 AM
**To:** 'Doug Rasby'
**Subject:** RE: An update and a question

Deb, █████████████████████████████████████████

Jim, as I have pointed out to you before, the distribution check that you sent me is incorrect.  Further, I now noticed that on the check stub you marked through "August" and wrote "YTD through Aug 31".   That is not correct, and I do not accept this.  Although I have cashed the check, I will return the money to you if it is your position that, by cashing the check, I am accepting your incorrect assertion that this is a year to date distribution.  Please let me know.  If I don't hear from you by noon tomorrow, I will assume that you agree that your hand written change to the check stub is incorrect and that the distribution is for August only.

Roger W. Wells
McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska  68102
Phone (402) 341-3070
Fax (402) 952-1853
Cell (402) 681-5773
Home (402) 498-0941
rwells@mcgrathnorth.com
www.mcgrathnorth.com

**From:** Doug Rasby [mailto:ddrasby@frontiernet.net]
**Sent:** Monday, October 17, 2011 9:03 AM
**To:** Wells, Roger
**Subject:** RE: An update and a question

Doug just deposited the checks in our credit union but we have kept the stub with Jim's note as well as the envelope to show that, although the check was dated 9/30 it wasn't mailed until 10/14.  The deposit would back this up as well.  I have also emailed Jim a couple of times noting that the amount is incorrect and why.  I would definitely want to pay Eastwood – his service will be of great value, I am sure, given the knowledge that he showed of the industry in his note to you.  His offer certainly speaks volumes about his character – as well as yours.  I think that if he could commit to helping in a couple of weeks that would work very well.  BTW, the World Herald had an interesting article in Sunday's paper that cited the average salary for the CEO's of the top 10 Fortune 500 corporations.  The average was $1,503,945 and GE's CEO was $566,667.  Jim is paying himself $1MM.  Also, I asked Jim why his friend, John Meyer, is no longer involved in the negotiating process but he ignored the question.  I did sense in our last meeting with John that some things about his friend Jim were coming to light that might affect his opinion of him.  It is just an interesting turn of events.

1

**DR001230.2**

**From:** Wells, Roger [mailto:rwells@mcgrathnorth.com]
**Sent:** Monday, October 17, 2011 8:39 AM
**To:** 'Doug Rasby'
**Subject:** RE: An update and a question

Deb, pls do not cash that check until you hear from me…I want to check the impact of the check stub.  I have talked with Eastwood.  He wants to help, but probably can't do much for the next couple weeks due to his schedule.  I am going to package some financial information and send to him.  I talked to Bill about compensation and this is something you and I should discuss.  Bill said that he would do this for no compensation as a favor to me, but I don't think that is fair to Bill.  When we talk about this, we can also talk about alternatives.  There are many people that can do this.  Did Jim say who he intended to use?

Roger W. Wells
McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska  68102
Phone (402) 341-3070
Fax (402) 952-1853
Cell (402) 681-5773
Home (402) 498-0941
rwells@mcgrathnorth.com
www.mcgrathnorth.com

**From:** Doug Rasby [mailto:ddrasby@frontiernet.net]
**Sent:** Sunday, October 16, 2011 10:06 PM
**To:** Wells, Roger
**Subject:** An update and a question

Note: This information has been created for my attorney and is privileged client/attorney communication.

I received a distribution check yesterday for the month of August.  On the check stub Jim scratched through "August" and wrote "YTD through Aug 31".  The income statement that provided the calculation for the distribution clearly showed it to be for the month of August's profits, not YTD.  We still have ~ $275,000 to distribute for June and July of which I have notified Jim.  His response below didn't make much sense.  (FYI, I have told him that I have no problem with this method but that June and July distributions haven't been paid.) He also sent me a message that he was having someone come in to evaluate our business and provide a value since "there is no reality" to my calculations.  I would like to let him know that his person can visit with our negotiator – is there any way to hasten a reply from Eastwood?  Is there anyone else who might serve as a negotiator for us?  Do you know how their compensation is calculated?  I would think since we already have the potential buyer and the calculation of value – as well as an amount to which we would come down – that this would be a fairly enticing project.
Thank you Roger,
Deb

**From:** Deb Rasby [mailto:debrasby@gmail.com]
**Sent:** Sunday, October 16, 2011 9:51 PM
**To:** Doug Rasby
**Subject:** Fwd: Revised PST Distribution spreadsheet

---------- Forwarded message ----------
From: **Jim D. Pillen** <jimdp@pstdanbred.com>
Date: Sun, Oct 16, 2011 at 7:59 AM

2

DR001231.2

Subject: RE: Revised PST Distribution spreadsheet
To: Deb Rasby <debrasby@gmail.com>, "Cara M. Barnett" <caramb@pstdanbred.com>

Deb

We will distribute after financial statements are finished each month.

Jim

**From:** Deb Rasby [mailto:debrasby@gmail.com]
**Sent:** Friday, October 14, 2011 9:03 PM
**To:** Cara M. Barnett; Jim D. Pillen
**Subject:** Revised PST Distribution spreadsheet

Hi Cara,

Attached is a revision of the PST distribution spreadsheet that you sent today. This one is calculated in two different ways. I emailed it to Jim with a brief explanation. We should still have cash to distribute for 2011. If you have any questions, please let me know.

Thanks,

Deb

This message and any attachments are confidential, may contain privileged information, and are intended solely for the recipient named above. If you are not the intended recipient, or a person responsible for delivery to the named recipient, you are notified that any review, distribution, dissemination or copying is prohibited. If you have received this message in error, you should notify the sender by return email and delete the message from your computer system.

The following statement is provided pursuant to U.S. Treasury Department Regulations: Any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code, nor should such advice be used or referred to in the promoting, marketing or recommending of any entity, investment plan or arrangement.

This message and any attachments are confidential, may contain privileged information, and are intended solely for the recipient named above. If you are not the intended recipient, or a person responsible for delivery to the named recipient, you are notified that any review, distribution, dissemination or copying is prohibited. If you have received this message in error, you should notify the sender by return email and delete the message from your computer system.

The following statement is provided pursuant to U.S. Treasury Department Regulations: Any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code, nor should such advice be used or referred to in the promoting, marketing or recommending of any entity, investment plan or arrangement.

3

DR001232.2

## Wells, Roger

| | |
|---|---|
| **From:** | Doug Rasby <ddrasby@frontiernet.net> |
| **Sent:** | Tuesday, June 05, 2012 4:20 PM |
| **To:** | Wells, Roger |
| **Cc:** | Hargens, William F. |
| **Subject:** | Conference call with Gene Arnold tomorrow? |

The following communication is subject to attorney/client confidentiality.

Gene is looking at the tax picture and will be out of the office Thurs and Fri.  He is going to get back to us tomorrow morning.  Would a conference call work for you tomorrow?  Gene, also, thought that the $350,000 was outside the scope of the purchase price.

Thank you, Roger.

Deb

1

DR001234.2

**Wells, Roger**

| | |
|---|---|
| **From:** | Wells, Roger |
| **Sent:** | Friday, June 08, 2012 3:29 PM |
| **To:** | Doug and Deb Rasby |
| **Cc:** | Hargens, William F. |
| **Subject:** | FW: Rasby/Pillen |

My response to Moll will be that I have not received a response from you.

Roger W. Wells
McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska  68102
Phone (402) 341-3070
Fax (402) 952-1853
Cell (402) 681-5773
Home (402) 498-0941
rwells@mcgrathnorth.com
www.mcgrathnorth.com

**From:** Timothy L. Moll [mailto:TMoll@remboltlawfirm.com]
**Sent:** Friday, June 08, 2012 2:57 PM
**To:** Wells, Roger
**Subject:** Rasby/Pillen

Roger:

Any response yet from your client regarding my email of a few days ago?  Thanks.

**Timothy L. Moll, Attorney**
**tmoll@remboltlawfirm.com**

**Rembolt Ludtke LLP**
**1201 Lincoln Mall, Suite 102**
**Lincoln, Nebraska 68508**
**P: (402) 475-5100 ext 125**
**F: (402) 475-5087**
**Web:** www.remboltlawfirm.com

DISCLOSURE: In accordance with IRS Circular 230, please note the following with regard to any portion of the above message which involves federal tax issues: Unless expressly stated otherwise above, (1) nothing contained in this message is intended or written to be used or relied upon by any taxpayer for the purpose of avoiding penalties that may be imposed under the Internal Revenue Code; and (2) nothing contained in this message may be used to recommend, promote or market any federal tax transaction or matter.

WARNING/CAUTION: This e-mail and any files transmitted with it are strictly confidential and are intended solely for the use of the individual or entity to whom it is addressed. This communication may contain material protected by lawyer-client privilege. If you are not the intended recipient or the person responsible for delivering the e-mail to the intended recipient, be advised that you have received this e-mail in error and that any use, dissemination, forwarding, printing, or copying of this e-mail and any file attachments is strictly prohibited. If you have received this e-mail in error, please immediately notify us by a collect telephone call to (402) 475-5100 or by reply e-mail to the sender. You must destroy the original transmission and its contents.

DR001235.2

## Wells, Roger

| | |
|---|---|
| **From:** | Doug Rasby <ddrasby@frontiernet.net> |
| **Sent:** | Sunday, June 10, 2012 11:20 PM |
| **To:** | Wells, Roger |
| **Subject:** | Feeling that my direction was wrong and a new letter - Rasby/Pillen |
| **Attachments:** | Dear Jim letter for selling at a fair price.docx |

I don't know how many times I have changed direction but I am getting tired of myself. I can only imagine how you must feel. I woke up this morning and thought ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ My only defense is desperation. When I take stock of who I might become it is not a pretty site. Attached is yet another letter. I wrote it partly to the Jim with whom I am dealing right now and partly to the Jim I used to know – his highest self who originally came up with our business principals. I want to send it to the 2 kids who are involved in the business, Brock and Sarah, and to his wife – a social acquaintance of mine. The reasons for my inclusion of these three people is to 1) get him to read it and 2) get all of this out into the light of day. The people who thought that the $4.5MM price was a good one were found through my son Greg and through my brother-in-law, Scott (Scott was the one who actually communicated with his contacts). I think that I will mail the letter to Suzanne tomorrow and drop the other 3 copies off at the office on Tuesday when Jim is not there. If you see anything in there that looks harmful could you let me know? I am sure that I will look at it a couple of times again tomorrow before it goes out.

Thank you for your patience,

Deb

---

**From:** Doug Rasby [mailto:ddrasby@frontiernet.net]
**Sent:** Saturday, June 09, 2012 12:23 PM
**To:** Wells, Roger
**Subject:** A letter - Rasby/Pillen

The following communication is subject to attorney/client confidentiality.

Hello Roger,

Doug does not want to fight this. But I do want to make one final attempt to appeal to the Jim Pillen I once knew. In order to make the most impact, we still need a 3rd party offer and so, we do need to know that a 3rd party would not be liable. With the clause that states that the offer can be revoked by either side prior to closing, it would be truthful. The proposed letter to Jim is attached. It is heartfelt and allows me to honestly express my view of this. It also further removes the 3rd party.

We have already gotten feedback that the $4.5MM price would be an investment that several financially capable people would make if the majority owner was honest. In case Jim would still want to visit with the 3rd party regarding their review of the financial information and website, they would have all of the knowledge needed to respond. Jim knows that it is a good price though. Putting myself in Jim's shoes, and his knowing the real value, I am wondering why he would present himself in any kind of threatening way by doing anything more than calling them to check out their offer. I would prepare them to respond, if asked, that there was a fee offered if Jim matched their offer. (This 5% fee will still be paid if Jim does the upstanding thing and pays $4.5MM.) I am placing Jim in a god-like seat: complete control and me praying for mercy.

Thank you Roger,

Deb

1

DR001246.2

**From:** Doug Rasby [mailto:ddrasby@frontiernet.net]
**Sent:** Friday, June 08, 2012 7:31 PM
**To:** Wells, Roger
**Subject:** The written offer - Rasby/Pillen

The following communication is subject to attorney/client confidentiality.

I do not think that there is a signed Buy/Sell document anywhere to be found. None has materialized and the appraisal process has not followed its guidelines. (I think Sarah Pillen accidentally discarded all of these when the others were revised but were never signed.)  Does LLC law address rights or restrictions on transfers of ownership?  There is only one paragraph on page 8 of the LLC operating agreements that addresses this and it refers to a nonexistent Buy/Sell.  Is it not unconscionable to not allow a member to find another buyer, given a low ball offer and intentions to hold cash hostage?



I believe that we can find a party who would be interested in this.

Thank you, Roger.

Deb

**From:** Doug Rasby [mailto:ddrasby@frontiernet.net]
**Sent:** Friday, June 08, 2012 3:52 PM
**To:** 'Wells, Roger'
**Subject:** RE: Rasby/Pillen

The following is subject to attorney/client confidentiality.
We have not heard back from Frankel Zacharia so that is the correct response – it may take some time.

**From:** Wells, Roger [mailto:rwells@mcgrathnorth.com]
**Sent:** Friday, June 08, 2012 3:29 PM
**To:** Doug and Deb Rasby
**Cc:** Hargens, William F.
**Subject:** FW: Rasby/Pillen

My response to Moll will be that I have not received a response from you.

Roger W. Wells
McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska  68102

2

**DR001247.2**

Phone (402) 341-3070
Fax (402) 952-1853
Cell (402) 681-5773
Home (402) 498-0941
rwells@mcgrathnorth.com
www.mcgrathnorth.com

---

**From:** Timothy L. Moll [mailto:TMoll@remboltlawfirm.com]
**Sent:** Friday, June 08, 2012 2:57 PM
**To:** Wells, Roger
**Subject:** Rasby/Pillen

Roger:

Any response yet from your client regarding my email of a few days ago?  Thanks.

**Timothy L. Moll, Attorney**
**tmoll@remboltlawfirm.com**

**Rembolt Ludtke LLP**
**1201 Lincoln Mall, Suite 102**
**Lincoln, Nebraska 68508**
**P: (402) 475-5100 ext 125**
**F: (402) 475-5087**
**Web:** www.remboltlawfirm.com

DISCLOSURE: In accordance with IRS Circular 230, please note the following with regard to any portion of the above message which involves federal tax issues: Unless expressly stated otherwise above, (1) nothing contained in this message is intended or written to be used or relied upon by any taxpayer for the purpose of avoiding penalties that may be imposed under the Internal Revenue Code; and (2) nothing contained in this message may be used to recommend, promote or market any federal tax transaction or matter.

WARNING/CAUTION: This e-mail and any files transmitted with it are strictly confidential and are intended solely for the use of the individual or entity to whom it is addressed. This communication may contain material protected by lawyer-client privilege. If you are not the intended recipient or the person responsible for delivering the e-mail to the intended recipient, be advised that you have received this e-mail in error and that any use, dissemination, forwarding, printing, or copying of this e-mail and any file attachments is strictly prohibited. If you have received this e-mail in error, please immediately notify us by a collect telephone call to (402) 475-5100 or by reply e-mail to the sender. You must destroy the original transmission and its contents.

---

This message and any attachments are confidential, may contain privileged information, and are intended solely for the recipient named above. If you are not the intended recipient, or a person responsible for delivery to the named recipient, you are notified that any review, distribution, dissemination or copying is prohibited. If you have received this message in error, you should notify the sender by return email and delete the message from your computer system.

The following statement is provided pursuant to U.S. Treasury Department Regulations: Any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code, nor should such advice be used or referred to in the promoting, marketing or recommending of any entity, investment plan or arrangement.

**DR001248.2**

Dear Jim,

I am copying Brock and Sarah on this letter as I have heard they are aware of the situation and they are a part of this business. They, too, will have times in their careers in which they will have to make some important decisions that test their core values. That has been the good thing about this process – it has allowed a clarification of what is important and I have continued to have the sense that all will work out well.  If we, as Christians and leaders for whom good values are important can't resolve this in a good way, who can? I am also copying Suzanne as I respect her and don't want her to think that I have bad feelings toward her.  The aspect of this that makes me feel badly is that this is about money which smacks of greed.  At its heart however, it is about fairness – fair play and fair value.

Just to review, for the new eyes included in this communication, because you and I viewed situations differently the last few years, and because your reaction to these differences was so strong (although there were a couple of instances in which my reaction was strong also), I came to the realization that one of us had to go.  That person certainly couldn't be you so I retired much earlier than I had planned - and gave up a lot to do it.  You said later that you were going to have a conversation with me about it the same day that I gave you my letter of retirement.

My intent was to keep all actions positive and I did this.  I wanted to leave with everything in good shape so that you would be fine, our people would be fine, and the business would be fine and I did this.  I also wanted to get out of your way, let you run the show with no interference from me and keep my investment as we had agreed on years ago and I did this too.  I did not take anything away from you.

After 20 years of putting all that I owned at risk, as well as legal documentation and personal promises from you I took you as a man of your word: that everything would be alright.  You have always held up good character and values as integral to our business. I have admired you greatly for doing so, as have many others. Doing what's right and treating others as you want to be treated were values your parents instilled in you.  You believed so strongly in them that you put them on the walls of all of the businesses as well as your business cards.  It is the first thing that you see on the website. I always believed this to be who you *are* – a truly good man.  Bullying someone - especially someone who cares about you – seemed far beneath you.  It *is* far beneath you.  I still have a belief that you are the Jim Pillen I knew, a good man with whom I have been so thankful and proud over the years to be associated.

You said several things that saddened me when we last spoke in April.  When you said that I had an "entitlement" mentality I was speechless. I couldn't find the words at the time but I feel awful - I put everything I had at risk for 20 years, poured my heart into the business, and have a strong belief in it. If I could be involved, I would be.  *Fair treatment is the only thing to which I feel entitled.*  The second had to do with my emails to you – my intent was only to bring peace and reconciliation to our relationship. I still believe that this should be the goal.  So, with that in mind, I am sorry if I sounded preachy.  Please bear with me, though, because I will sound preachy again for a minute or two because you have said and done something that is *not* what you have ever wanted to be about:

You said that you were going to dissolve PST, thus eliminating profits to me, and were going to stop paying out the profits from all of the businesses that were debt free, knowing that taxes would need to

be paid. When I stated that your plans were unethical, you said that ethics have nothing to do with this. You said that as the majority owner you could do anything that you wanted.  Well, you can.  We are all given free will.  We can kill, steal, commit adultery, lie, etc.  Without a sense of right and wrong, without good values, we humans *can* do *anything*. When it comes down to dollars and cents, treating someone the way that you would want to be treated may not *monetarily* serve you best (in the short term) but it serves you best in more important ways.  Doing right applies in church, at social gatherings, and certainly at home but in business deals - it can cost you money up front.  But that money purchases something of the greatest value – self-respect.  John Wooden said that "ability may get you to the top, but character keeps you there."

Well Jim, you have always been about character.  You have been tough, but still you have been fair.  You haven't been one to bully someone – you have been there to help others.  I hope that this is still the real Jim Pillen.  I have not shared this situation with any of our friends as I want it to be resolved amicably.  There is still an ember of hope alive in me.

I would have liked to have stayed invested in the business - agriculture is the best business there is.  If, however, my selling is the only way to have peace then that is what we will do.  You have given me a price that is 35.4% of the lowest value calculated by a certified appraiser. He was quick to point out that it was an extremely low ball offer and the true value of what I have lost will be significantly greater. But by the effective elimination of all income (paying out no cash), while continuing to incur the expense to Uncle Sam, the act becomes one of oppression. Fair value no longer holds any meaning, negotiation cannot occur when one's head is held under water. Your price was set by an accountant who used a method that would result in the lowest possible value - old, historic, depreciated costs, with no value given to income flows and verified by an appraiser as acceptable for a dire situation with little or no marketability.  But I am forced to either take it, legally fight it - as it constitutes minority shareholder oppression, or live under oppression.  There was also a fourth option.

In the past few days I have visited with several parties who have the financial capability to purchase my interests and to wait for cash distributions until the farms are debt free.  I shared my 7 year financial history on all of the businesses except PST and the occurrences in our industry in 2008 and 2009. The value for my asking price of $4.5MM was seen immediately as a good one. As we used to say: it was a no brainer. I had also directed them to the website and they liked what they saw. I told a little about your history and expertise and they were impressed.  Then I explained that I left the business because we differed on our approaches to a few things but I was in a position to retire early.  I said that the cash distributions on the debt free businesses had been discontinued, which I relied on to pay taxes. Just as quickly as they had seen tremendous value, you became the one drawback.  No one wanted to associate with the person who would take this action. The person who used to be the most important and valuable asset of this business and its greatest selling point was now the opposite.

You had a personal encounter one weekend with the One who said these words: What good is it for a man to gain the whole world, and yet lose or forfeit his very self.  If you are His follower fairness is required.  As followers we understand that saying "no" to what is wrong and saying "yes" to what is right are the right choices.

The price you offered for the businesses, excluding PST, is 34% of the $4.5MM value seen by others as an exceptionally good price. It is 35.4% of a certified appraiser's lowest value.  Given its financial history and core values it would have a market. The after tax result of the purchase price you offered, due to the negative tax basis, will be very little. The largest part of my 20 year investment will be gone.  I have survived the risk of a lawsuit from angry neighbors, the watershed from sustained low prices due to a glut of Canadian pigs and the depressed market due to the misnomer of "swine flu".  I never dreamed that the business partner of whom I thought so highly might act against his principals and cause me harm.

But I am counting on you to be true to yourself. I am counting on you to live up to your core values of being honest and fair, "doing what's right" and "treating others as you want to be treated".  I am counting on you to be a man of your word, and that your word of a year ago that "everything will be alright" was the truth. I am at your mercy.

Although the $4.5MM price I am asking is low, at least it falls within what could be said is fair. If you were on the other side of this and you were offered this price for 10% of Nance/Plains, 5% of Double D, 10% of PST Milling and 10% of the PST Gene Center, would you agree with the people who thought this was a great price?

If you would like to meet, Brock and Sarah, and Suzanne if she would like, are welcome to join us.  An amicable resolution is the best for all of us. As I said at the beginning of this, if we as Christians and respected leaders can't resolve this in a good way, who can? I will give you a call.

Thank you Jim,

Deb

p.s. By the way, I will stand on my 20 year record.  I did keep copies of communications that reflect and document many of my contributions about which I feel very good, as well as those things on which we disagreed. They reflect, too, the fun that I had working with you – you could always make me laugh, and my admiration for you. You have been blessed with many gifts and I am thankful to have seen all of the great results from them. I think my communications also reflect my love for working through processes with our teams and seeing them improve on things that I did.  Continual improvements on these systems were exciting.  If you still have a Deb Rasby file I would be happy to give you copies to remind you of some of the good things.  I tried my best and stood by what I believed to be right.  I cared about treating people with respect. I enjoyed working in a friendly environment and did the best that I could to maintain one.  I loved the people, and still do.

DR001251.2

**Wells, Roger**

| | |
|---|---|
| **From:** | Doug Rasby <ddrasby@frontiernet.net> |
| **Sent:** | Saturday, April 14, 2012 4:31 PM |
| **To:** | Wells, Roger; Hargens, William F. |
| **Subject:** | Further thoughts on Pillen offer |
| | |
| **Categories:** | Rasby |

The following communication is subject to attorney/client confidentiality:

I have been thinking of two other possibilities that might give me some financial and relationship strength from which to negotiate. The first is to visit with Ken Morrison who gave Pillen his start. Mr. Morrison has a reputation of being tough but fair in his business dealings. I would give him the history over the last several years (which I emailed to you last week) and the strategy being used in the offer to me. I would ask if Mr. Morrison would consider loaning me the funds to pay future income taxes in order to negotiate a fair value or to enable me to stay in the businesses. The fair market value is obviously highly important to me, but also I want to take action to show Pillen that this is not the way to do business. It is not the way to teach his son and daughter, both future leaders, to do business. (I think Pillen's daughter wrote the letter to me.) The other possibility is to visit with some lenders on this type of loan. I wonder if the use of a financial backer would provide any leverage to establish at what point cash distributions would be made. I believe that this would be imperative and, if you could communicate on this issue to Pillen, this might be intimidating enough to force a commitment. My utmost hope, still, is to sell at a fair market value. I think Pillen wants me out badly enough to pay it. Having Ken Morrison involved would definitely make Pillen angry because he has courted Mr. Morrison throughout our history, but the intimidation factor might put pressure on him to act properly. Pillen thinks highly of him, in large part because Mr. Morrison is an industry giant. But yet Pillen still tried to purchase the Bartlett Foods farrow – finish business in the last year or two with a low ball offer. What do you think?

From: Wells, Roger [mailto:rwells@mcgrathnorth.com]
Sent: Saturday, April 14, 2012 10:00 AM
To: 'Doug Rasby'; Hargens, William F.
Subject: RE: Pillen offer

We did receive it, and will go through the material this weekend

Roger W. Wells
McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska  68102
Phone (402) 341-3070
Fax (402) 952-1853
Cell (402) 681-5773

Home (402) 498-0941
rwells@mcgrathnorth.com
www.mcgrathnorth.com <http://www.mcgrathnorth.com/>

DR001252.2

From: Doug Rasby [mailto:ddrasby@frontiernet.net]
Sent: Saturday, April 14, 2012 8:53 AM
To: Wells, Roger; Hargens, William F.
Subject: Pillen offer

The following is subject to attorney/client confidentiality:

I hope that you received my email containing Jim Pillen's offer which requires a response by Friday, April 20th.
█████████████████████████ Pillen will continue to operate in a way that will harm me, no matter how
profitable an enterprise happens to be. As in this case, Pillen uses unscrupulous tactics.

With regard to PST no longer meeting the business objectives, the work that is performed will still need to be
done for all of the business entities.  This includes production reporting and analysis, decision making on
production practices, marketing strategies, financing needs, and personnel requirements; handling human
resource functions, accounts payable, accounts receivable, preparation of financial statements, and all of the
administrative work that is needed to operate a 50,000 sow operation.  The same staff will handle the work.

The only change has been in the ownership of one of the business entities from 1/3 Jim Pillen to 100% Jim
Pillen.  One of our other pork production business entities, PC West, is also owned entirely by Jim Pillen.  PC
West was our first farm and the original ownership was 50% Pillen and 50% Mike Wilke.  Management fees
have always been paid.  Pillen and Wilke split in the late 90's, I believe.  The management fee structure did not
change.

I don't know if the law looks at reasonable business practices when holding onto cash to reinvest in the
business when there is no debt - not distributing even a minimum amount of net profit to cover income taxes.
We do know that Pillen could come up with schemes to use cash for the business, if only to squeeze me.  Two
of the businesses named in the letter for which cash distributions of net profits will be discontinued, PST Gene
Center and PST Milling, have no debt.  Net profits have been distributed for many years, as they have for PST.

From what I have learned a bottom line reasonable offer might have been 4 years EBITDA or even tangible net
value.   As you know, this year we are experiencing the most profitable year in our business' history. The
balance sheet values Jim is using for N. Nance, N. Plains and PST Gene Center are old and low. Dr. Griess
was beaten down by the time he left and did not question the balance sheet value he was paid for PST Gene
Center (I was not included in any of these discussions but Jim said there was little discussion).  Like me, Dr.
Griess simply wanted out. In negotiating with Bob Gottsch's widow and Brett Gottsch (who is in the midst of a
nasty divorce) on the purchase of GGP, LLC I don't know all of the dynamics that would possess them to use
such a low value.  I do know that Bob Gottsch's widow is not a business woman and the death of her husband
was recent.  I have also heard that Brett Gottsch was doing whatever he could to minimize the amount he
would have to give his ex-wife.

DR001253.2

I will need your help to respond by April 20th.


Thanks,


Deb Rasby

_____

This message and any attachments are confidential, may contain privileged information, and are intended solely for the recipient named above. If you are not the intended recipient, or a person responsible for delivery to the named recipient, you are notified that any review, distribution, dissemination or copying is prohibited. If you have received this message in error, you should notify the sender by return email and delete the message from your computer system.

The following statement is provided pursuant to U.S. Treasury Department Regulations: Any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code, nor should such advice be used or referred to in the promoting, marketing or recommending of any entity, investment plan or arrangement.

DR001254.2

**Wells, Roger**

| | |
|---|---|
| **From:** | Doug Rasby <ddrasby@frontiernet.net> |
| **Sent:** | Saturday, April 14, 2012 4:31 PM |
| **To:** | Wells, Roger; Hargens, William F. |
| **Subject:** | Further thoughts on Pillen offer |

The following communication is subject to attorney/client confidentiality:
I have been thinking of two other possibilities that might give me some financial and relationship strength from which to negotiate. The first is to visit with Ken Morrison who gave Pillen his start. Mr. Morrison has a reputation of being tough but fair in his business dealings. I would give him the history over the last several years (which I emailed to you last week) and the strategy being used in the offer to me. I would ask if Mr. Morrison would consider loaning me the funds to pay future income taxes in order to negotiate a fair value or to enable me to stay in the businesses. The fair market value is obviously highly important to me, but also I want to take action to show Pillen that this is not the way to do business. It is not the way to teach his son and daughter, both future leaders, to do business. (I think Pillen's daughter wrote the letter to me.) The other possibility is to visit with some lenders on this type of loan. I wonder if the use of a financial backer would provide any leverage to establish at what point cash distributions would be made. I believe that this would be imperative and, if you could communicate on this issue to Pillen, this might be intimidating enough to force a commitment. My utmost hope, still, is to sell at a fair market value. I think Pillen wants me out badly enough to pay it. Having Ken Morrison involved would definitely make Pillen angry because he has courted Mr. Morrison throughout our history, but the intimidation factor might put pressure on him to act properly. Pillen thinks highly of him, in large part because Mr. Morrison is an industry giant. But yet Pillen still tried to purchase the Bartlett Foods farrow – finish business in the last year or two with a low ball offer. What do you think?

**From:** Wells, Roger [mailto:rwells@mcgrathnorth.com]
**Sent:** Saturday, April 14, 2012 10:00 AM
**To:** 'Doug Rasby'; Hargens, William F.
**Subject:** RE: Pillen offer

We did receive it, and will go through the material this weekend

Roger W. Wells
McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska  68102
Phone (402) 341-3070
Fax (402) 952-1853
Cell (402) 681-5773
Home (402) 498-0941
rwells@mcgrathnorth.com
www.mcgrathnorth.com

**From:** Doug Rasby [mailto:ddrasby@frontiernet.net]
**Sent:** Saturday, April 14, 2012 8:53 AM
**To:** Wells, Roger; Hargens, William F.
**Subject:** Pillen offer

The following is subject to attorney/client confidentiality:

DR001255.2

I hope that you received my email containing Jim Pillen's offer which requires a response by Friday, April 20th. V███████████████████████Pillen will continue to operate in a way that will harm me, no matter how profitable an enterprise happens to be. As in this case, Pillen uses unscrupulous tactics.

With regard to PST no longer meeting the business objectives, the work that is performed will still need to be done for all of the business entities.  This includes production reporting and analysis, decision making on production practices, marketing strategies, financing needs, and personnel requirements; handling human resource functions, accounts payable, accounts receivable, preparation of financial statements, and all of the administrative work that is needed to operate a 50,000 sow operation.  The same staff will handle the work.

The only change has been in the ownership of one of the business entities from 1/3 Jim Pillen to 100% Jim Pillen.  One of our other pork production business entities, PC West, is also owned entirely by Jim Pillen.  PC West was our first farm and the original ownership was 50% Pillen and 50% Mike Wilke.  Management fees have always been paid.  Pillen and Wilke split in the late 90's, I believe.  The management fee structure did not change.

I don't know if the law looks at reasonable business practices when holding onto cash to reinvest in the business when there is no debt - not distributing even a minimum amount of net profit to cover income taxes.  We do know that Pillen could come up with schemes to use cash for the business, if only to squeeze me.  Two of the businesses named in the letter for which cash distributions of net profits will be discontinued, PST Gene Center and PST Milling, have no debt.  Net profits have been distributed for many years, as they have for PST.

From what I have learned a bottom line reasonable offer might have been 4 years EBITDA or even tangible net value.   As you know, this year we are experiencing the most profitable year in our business' history. The balance sheet values Jim is using for N. Nance, N. Plains and PST Gene Center are old and low. Dr. Griess was beaten down by the time he left and did not question the balance sheet value he was paid for PST Gene Center (I was not included in any of these discussions but Jim said there was little discussion).  Like me, Dr. Griess simply wanted out. In negotiating with Bob Gottsch's widow and Brett Gottsch (who is in the midst of a nasty divorce) on the purchase of GGP, LLC I don't know all of the dynamics that would possess them to use such a low value.  I do know that Bob Gottsch's widow is not a business woman and the death of her husband was recent.  I have also heard that Brett Gottsch was doing whatever he could to minimize the amount he would have to give his ex-wife.

Given the fact that Pillen will do whatever it takes, ethical or not, to get me out ███████████████
███████████████████████████████████████

I will need your help to respond by April 20th.

Thanks,

Deb Rasby

This message and any attachments are confidential, may contain privileged information, and are intended solely for the recipient named above. If you are not the intended recipient, or a person responsible for delivery to the named recipient, you are notified that any review, distribution, dissemination or copying is prohibited. If you have received this message in error, you should notify the sender by return email and delete the message from your computer system.

The following statement is provided pursuant to U.S. Treasury Department Regulations: Any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot

DR001256.2

be used, for the purpose of avoiding penalties under the Internal Revenue Code, nor should such advice be used or referred to in the promoting, marketing or recommending of any entity, investment plan or arrangement.

**DR001257.2**

**Wells, Roger**

| | |
|---|---|
| **From:** | Doug Rasby <ddrasby@frontiernet.net> |
| **Sent:** | Thursday, June 28, 2012 3:32 PM |
| **To:** | Wells, Roger |
| **Subject:** | RE: Rasby/Pillen |
| **Attachments:** | Letter to Jim, Suzanne, Sarah and Brock after closing.docx |

Attached are my thoughts. This sale quite simply feels wrong – in the method used to bring it about and in the value. It is sick. I did not do anything to deserve this treatment. Attached are the thoughts that I would like to convey to those involved. I would not involve myself in any business relationships or make false statements. I hope that someday they make it right.

**From:** Wells, Roger [mailto:rwells@mcgrathnorth.com]
**Sent:** Thursday, June 28, 2012 3:17 PM
**To:** 'Doug Rasby'
**Subject:** RE: Rasby/Pillen

███████████████████████████████████████████████████████████

Roger W. Wells
McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska 68102
Phone (402) 341-3070
Fax (402) 952-1853
Cell (402) 681-5773
Home (402) 498-0941
rwells@mcgrathnorth.com
www.mcgrathnorth.com

**From:** Doug Rasby [mailto:ddrasby@frontiernet.net]
**Sent:** Thursday, June 28, 2012 3:06 PM
**To:** Wells, Roger
**Subject:** RE: Rasby/Pillen

If you are ok with this I am. I do have a question though. After all of this is done, could I express to Jim, Suzanne, Sarah and Brock the pain caused to me by the unilateral decisions that were made? I don't think my soul can rest until I have the freedom from oppression to speak from my heart in a respectful way.

**From:** Wells, Roger [mailto:rwells@mcgrathnorth.com]
**Sent:** Thursday, June 28, 2012 2:50 PM
**To:** Doug and Deb Rasby
**Subject:** FW: Rasby/Pillen

Attached is a revised draft that I received from Moll. Note that he has revised your release of Pillen and the entities. ████████████████████████ Moll is right…I transposed the Northern numbers. I intend to tell Moll that the changes are fine and that he should correct the transposition…if you disagree, please let me know. Thanks.

1

**DR001267.2**

Roger W. Wells
McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska  68102
Phone (402) 341-3070
Fax (402) 952-1853
Cell (402) 681-5773
Home (402) 498-0941
rwells@mcgrathnorth.com
www.mcgrathnorth.com

---

**From:** Timothy L. Moll [mailto:TMoll@remboltlawfirm.com]
**Sent:** Thursday, June 28, 2012 1:44 PM
**To:** Wells, Roger
**Subject:** Rasby/Pillen

Roger:

Your proposed changes to the Unit Purchase Agreement are fine in substance.  Please note the following:

1.  I revised the release language to make it consistent for both parties.
2.  I changed the reference to Jim Pillen as President to be "Authorized Signer".  He is president of some and member/manager of others.
3.  The allocation is fine, except we believe the numbers for Northern Nance and Northern Plains are transposed.  I did not make any change pending your review.

A revised version of the agreement is attached for your review.  Please verify the allocation number and confirm that the attached form of the agreement is acceptable.  Once it is, we can make arrangements for signatures and transfer of funds.  Please provide wiring instructions for the account Ms. Rasby desires to receive the proceeds.  I am advised that Ms. Rasby is not holding any original certificates for her ownership interests.  Accordingly, I will forward an "Assignment Separate from Certificate" for the subject entities to be signed as part of the closing.   My hope is that we can have things finalized this afternoon and sign documents and transfer funds tomorrow.  Thank you.


**Timothy L. Moll, Attorney**
**tmoll@remboltlawfirm.com**

**Rembolt Ludtke LLP**
**1201 Lincoln Mall, Suite 102**
**Lincoln, Nebraska 68508**
**P: (402) 475-5100 ext 125**
**F: (402) 475-5087**
**Web:** www.remboltlawfirm.com

**DISCLOSURE: In accordance with IRS Circular 230, please note the following with regard to any portion of the above message which involves federal tax issues: Unless expressly stated otherwise above, (1) nothing contained in this message is intended or written to be used or relied upon by any taxpayer for the purpose of avoiding penalties that may be imposed under the Internal Revenue Code; and (2) nothing contained in this message may be used to recommend, promote or market any federal tax transaction or matter.**

**WARNING/CAUTION: This e-mail and any files transmitted with it are strictly confidential and are intended solely for the use of the individual or entity to whom it is addressed. This communication may contain material protected by lawyer-client privilege. If you are not the intended recipient or the person responsible for delivering the e-mail to the intended recipient, be advised that you have received this e-mail in error and that any use, dissemination, forwarding, printing, or copying of this e-mail and any file attachments is strictly prohibited. If you have received this e-mail in error, please immediately notify us by a collect telephone call to (402) 475-5100 or by reply e-mail to the sender. You must destroy the original transmission and its contents.**

DR001268.2

This message and any attachments are confidential, may contain privileged information, and are intended solely for the recipient named above. If you are not the intended recipient, or a person responsible for delivery to the named recipient, you are notified that any review, distribution, dissemination or copying is prohibited. If you have received this message in error, you should notify the sender by return email and delete the message from your computer system.

The following statement is provided pursuant to U.S. Treasury Department Regulations: Any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code, nor should such advice be used or referred to in the promoting, marketing or recommending of any entity, investment plan or arrangement.

This message and any attachments are confidential, may contain privileged information, and are intended solely for the recipient named above. If you are not the intended recipient, or a person responsible for delivery to the named recipient, you are notified that any review, distribution, dissemination or copying is prohibited. If you have received this message in error, you should notify the sender by return email and delete the message from your computer system.

The following statement is provided pursuant to U.S. Treasury Department Regulations: Any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code, nor should such advice be used or referred to in the promoting, marketing or recommending of any entity, investment plan or arrangement.

DR001269.2

Dear Jim, Suzanne, Sarah and Brock,

I have enjoyed time spent with all of you in this family business.  I feel gratitude for all of the good that I have experienced with you. I knew that I was being led to take a different path though, and I planned an exit that would not cause a ripple.  As I promised you Jim, I worked to leave the business in the most positive way possible.  But the sadness from what transpired after I left won't go away.  The passage of time takes care of many things but sometimes a situation needs to be addressed directly to bring resolution and reconciliation.

I had an option that I chose not to take – and I am glad that I didn't take it, as it would have been awful for everyone.  The path was a minority shareholder oppression lawsuit.  I was severely affected financially when the unilateral decision was made to withhold the payment of our business' profits while my expense to Uncle Sam continued to be incurred.  It can lead a person to financial ruin unless they have knowingly agreed to such action before being subject to it and have the ability to sustain the tax liability requirement. Our past policies and agreements were to pay out profits. Also the decision to dissolve PST, in which I still had a 10% interest according to our agreement from years ago, caused great financial harm to me.  My attorneys said that the facts would allow me to have my day in court and that the laws against this are going to be strengthened in 2013. From this it's not hard to see that the action was wrong.

I had no power to negotiate and I was forced to either sell my investment, the investment that required me to put everything that I owned at risk over the years and for which I had been willing to invest my own funds, or move toward personal financial disaster. Under duress I gave up PST, PST Gene Center and PST Milling for no value and sold N. Plains, N. Nance and Double D for 56% of the value determined by two independent certified appraisers – one who was hired by Jim in 2011 and one who I hired on my own after receiving your offer.  Both of the appraiser's values were in line with those currently accepted by Tyson Foods for the CFA.

I also visited with a few possible investors after receiving your offer but, although financially capable and believing it to be an exceptional value, each of these people wanted to associate only with owners who respected and watched out for a minority shareholder's interests along with their own. This is another strong indicator that actions didn't line up with the business principles.

You are under no legal obligation to do so, but I hope that you consider making right just the difference between the price paid for Northern Plains, Northern Nance and Double D and the professional opinion of the value. It would reflect what you stand for. A value placed on these businesses by an associated accountant who used old costs and disregarded a current income stream, with a nod from an appraiser who said that these values would work in distressed conditions, isn't as credible as that of two non-associated certified appraisers, arm's length investors and Tyson Foods. I thank each of you for this consideration and I wish you continued success.

Sincerely,

## Wells, Roger

**From:**        Doug Rasby <ddrasby@frontiernet.net>
**Sent:**        Wednesday, October 12, 2011 8:53 AM
**To:**          Wells, Roger
**Subject:**     RE: Meeting with investment banker and also with you and your colleague?

Thank you Roger, we hope that Eastwood will be able to take a look at our figures as soon as possible since Jim has mentioned moving ahead using an outside professional (I don't know what has happened to his negotiator, John Meyer).  I would like to move on this while he is in the mood and before he thinks up other squeeze strategies.  Jim is a highly aggressive person – people who know him well would place him at an extreme level.   He will definitely be emboldened to do more if he can get away with it.  If Eastwood thinks that we have solid numbers maybe he and Jim's person could resolve this.  As we have discussed, this would be the best strategy ███████████████████████████████████████████████████████████████ I just want to get away from the guy.

Jim's strategy, of course, is definitely to squeeze me by not paying the distributions – when I asked him directly after our Monday meeting if they would be paid the next day he said "maybe we'll pay them annually – the money is there, I DO have a fiduciary duty, don't I?" (said with a smirk).

Here are my greatest fears:

1)     Jim squeezing me in an even more potent way by not paying tax distributions on the N Nance/N Plains farm which would quickly drain all of our savings (it w/b ~ 10 yrs before this is out of debt)

2)     Further manipulation of PST's expenses and the drain of almost all of the profits

In a worst case scenario, if a selling price cannot be agreed upon, ███████████████████████████████ ████████████████████████████ (BTW, other increases have included PST building rent paid to Jim and expenses that have been moved to PST from other entities owned 100 % by Jim); and the requirement of tax distributions paid out for our mutual farms. (Could consistency be required if tax distributions are paid for other entities owned by Jim?  I would not know if he paid tax distributions on other entities or not.)

Eastwood might also have a feel for whether Jim's $1MM salary is reasonable in our industry rather than a smaller salary and a % of profits.  (In the past, Jim's 90% of profits gave him  ~ $2.7MM in distributions per year and our salaries were low – his was $110,000, mine was $85,000.)  I don't have a problem with Jim increasing his salary to a reasonable level, I just don't want to see Jim's aggression drain all of the profits away.

We hope Eastwood gets back to you soon.

Deb Rasby

1

DR001273.2

From: Wells, Roger [mailto:rwells@mcgrathnorth.com]
Sent: Tuesday, October 11, 2011 5:20 PM
To: 'Doug Rasby'
Subject: RE: Meeting with investment banker and also with you and your colleague?


I have not heard back yet from Eastwood, and Bill Hargens (one of our senior litigators) is looking at the
information…and I will brief him in detail before we meet.



Roger W. Wells
McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska  68102
Phone (402) 341-3070
Fax (402) 952-1853
Cell (402) 681-5773

Home (402) 498-0941
rwells@mcgrathnorth.com
www.mcgrathnorth.com <http://www.mcgrathnorth.com/>


From: Doug Rasby [mailto:ddrasby@frontiernet.net]
Sent: Tuesday, October 11, 2011 8:53 AM
To: Wells, Roger
Subject: Meeting with investment banker and also with you and your colleague?

2

**DR001274.2**

Note: This information has been created for my attorney and is privileged client/attorney communication.

Good morning Roger,

Have you had any luck reaching your investment banker friend? We hope that this meeting is a possibility soon and that we can do it on a day in the near future in which we can also meet with you and your colleague who handles situations such as ours. I am forwarding my most current email communication with Jim Pillen. Last Friday he had promised to pay the outstanding distributions after we met with our tax accountant to clear up an S Corp related issue. We met with Rick yesterday and upon leaving the meeting he would not commit to paying the distribution. He said "maybe we'll pay them annually". I followed up with an email reminding him of his promise on Friday. I will also forward another email to you that I sent him this morning.

Deb Rasby


From: Deb Rasby [mailto:debrasby@gmail.com]
Sent: Tuesday, October 11, 2011 8:42 AM
To: Doug Rasby
Subject: Fwd: Your word?



---------- Forwarded message ----------
From: <debrasby@gmail.com>
Date: Tue, Oct 11, 2011 at 7:17 AM
Subject: Re: Your word?
To: Jim Pillen <jimdp@pstdanbred.com>

Well, are you or aren't you Jim? Isn't it time to let go of the anger?

Sent from my BlackBerry Smartphone provided by Alltel

_____

From: "Jim D. Pillen" <jimdp@pstdanbred.com>

Date: Tue, 11 Oct 2011 11:59:07 +0000

To: Deb Rasby<debrasby@gmail.com>

Subject: RE: Your word?


Deb

Please don't plan on coming by the office.

DR001275.2

Jim

From: Deb Rasby [mailto:debrasby@gmail.com]
Sent: Monday, October 10, 2011 6:39 PM
To: Jim D. Pillen
Subject: Your word?

Jim,

You told me on Friday that the PST distribution would be paid after we met with Rick today and took care of the receivable.  Per the discussion today we have agreed that the receivable will be taken care of by including this in my W-2 earnings.  If the PST distributions aren't paid this means that you are not a man of your word.

I will be in tomorrow to pick up the check.

Deb

_____

This message and any attachments are confidential, may contain privileged information, and are intended solely for the recipient named above. If you are not the intended recipient, or a person responsible for delivery to the named recipient, you are notified that any review, distribution, dissemination or copying is prohibited. If you have received this message in error, you should notify the sender by return email and delete the message from your computer system.

The following statement is provided pursuant to U.S. Treasury Department Regulations: Any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code, nor should such advice be used or referred to in the promoting, marketing or recommending of any entity, investment plan or arrangement.

DR001276.2

**Wells, Roger**

| | |
|---|---|
| **From:** | Doug Rasby <ddrasby@frontiernet.net> |
| **Sent:** | Monday, April 16, 2012 8:50 AM |
| **To:** | Hargens, William F. |
| **Subject:** | RE: More questions on Pillen offer |
| | |
| **Categories:** | Rasby |

I will wait for your letter. ███████████████████████████████████████████Doug is going
to Hastings tomorrow for a meeting at Hastings College and I could go with him.  Do you have an estimated time that we
can visit so that we can be sure to be home?
Thank you Bill,
Deb

---

**From:** Hargens, William F. [mailto:whargens@mcgrathnorth.com]
**Sent:** Monday, April 16, 2012 8:40 AM
**To:** 'Doug Rasby'
**Cc:** Wells, Roger
**Subject:** RE: More questions on Pillen offer

███████████████████████████████████████████████████████

---

**From:** Doug Rasby [mailto:ddrasby@frontiernet.net]
**Sent:** Sunday, April 15, 2012 2:34 PM
**To:** Hargens, William F.
**Subject:** RE: More questions on Pillen offer

Ok

---

**From:** Hargens, William F. [mailto:whargens@mcgrathnorth.com]
**Sent:** Sunday, April 15, 2012 2:21 PM
**To:** Doug Rasby
**Cc:** Wells, Roger
**Subject:** Re: More questions on Pillen offer

███████████████████████████████████████████████████████

William F. Hargens
McGrath, North, Mullin & Katz PC LLO


-----Original message-----
**From:** Doug Rasby <ddrasby@frontiernet.net>
**To:** "Wells, Roger" <rwells@mcgrathnorth.com>, "Hargens, William F." <whargens@mcgrathnorth.com>
**Sent:** Sun, Apr 15, 2012 19:04:17 GMT+00:00
**Subject:** More questions on Pillen offer

The following communication is subject to attorney/client confidentiality:

Here are a few more questions – one of which could affect a meeting with Ken Morrison if he will agree to meet:

1

**DR001289.2**

1)   What if I received a better offer on any or all of the businesses from someone else?  Could they purchase any of these business' interests?  I plan to call Ken Morrison Monday morning to see if he will meet with me.  I would like to ask him if he will purchase my interests but at the least he can be made aware of what Jim is capable.  His daughter and granddaughter will have to deal with Jim someday.

2)   With regard to PST's business objectives, I don't know where these are stated.

3)   I am not sure if a signed Buy Sell actually exists for PST – or for PST Gene Center or PST Milling.

4)   Pg 8, Section 13 of the N. Nance, N. Plains and Double D Operating Agreements states that a member shall not sell except as provided in the Buy Sell.  Since a Buy Sell doesn't exist for these businesses what is the status of this section?

This message and any attachments are confidential, may contain privileged information, and are intended solely for the recipient named above. If you are not the intended recipient, or a person responsible for delivery to the named recipient, you are notified that any review, distribution, dissemination or copying is prohibited. If you have received this message in error, you should notify the sender by return email and delete the message from your computer system.

The following statement is provided pursuant to U.S. Treasury Department Regulations: Any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code, nor should such advice be used or referred to in the promoting, marketing or recommending of any entity, investment plan or arrangement.

This message and any attachments are confidential, may contain privileged information, and are intended solely for the recipient named above. If you are not the intended recipient, or a person responsible for delivery to the named recipient, you are notified that any review, distribution, dissemination or copying is prohibited. If you have received this message in error, you should notify the sender by return email and delete the message from your computer system.

The following statement is provided pursuant to U.S. Treasury Department Regulations: Any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code, nor should such advice be used or referred to in the promoting, marketing or recommending of any entity, investment plan or arrangement.

DR001290.2

**Wells, Roger**

| | |
|---|---|
| **From:** | Doug Rasby <ddrasby@frontiernet.net> |
| **Sent:** | Friday, April 13, 2012 10:13 AM |
| **To:** | Wells, Roger; Hargens, William F. |
| **Subject:** | Offer of sale from Jim Pillen & notes to 2010 balance sheet showing note receivable |
| **Attachments:** | 04-13-2012 09;36;13AM.pdf; Annual EBITDA and Net Tangible Values.xlsx |

The following is subject to attorney/client confidentiality:

Good morning,

I received the attached letter from Jim Pillen this morning via UPS.  The offer totals $1,931,029. He plans on liquidating the company and discontinuing all the business' distributions.  Also attached are:

1)     A spreadsheet showing my annual EBITDA (based on 2/29/12 financials) of $1,597,307

2)     My share of net tangible assets, which we currently use for our cash flow assistance program with Tyson, of $3,207,008

3)     The notes to a 2010 balance sheet which shows my note receivable of $350,000  (we also have check stubs for interest payment receipts if needed)

I will be available today prior to 3:30 (we have a 4:00 wedding to attend - Friday the 13th - very unsuperstitious

██████████████████████████████████████████████████████████████

What can we do and how should we respond?  We do not want to accept this low ball offer if we don't have to - our after tax proceeds wouldn't be much more than $500,000.

Thank you for your help,

Deb and Doug

Home #: 402-563-2180

**DR001294.2**

April 9, 2012

Deb Rasby
3474 24th Avenue
Columbus, NE 68601
VIA OVERNIGHT MAIL

Dear Deb:

We have come to a place where you need to make a decision about your ownership interests. You are no longer an employee and there are clear differences of opinion regarding the companies and how they should operate.  I am writing to advise you of some changes we are implementing and to present you with a proposal for resolving all pending issues.

With respect to Progressive Swine Technologies, Inc. ("PST"), our plan is to liquidate the corporation since it no longer meets our business objectives. As part of an orderly liquidation, you will receive ten percent of the net assets available for distribution after payment of all outstanding liabilities.  Based on the March 31, 2012 balance sheet, we anticipate that total assets available for distribution will be just over $500,000.  That means your share of the final distribution would be just over $50,000.  Until PST is liquidated, there will no distributions paid to shareholders.  When everything has been concluded, there will be a final distribution.  If you are in agreement with this plan, we will proceed based on consent resolutions.  If you disagree, we will take steps to call a meeting of the shareholders to consider and vote on the plan of liquidation.

With respect to PST Milling, Inc, PST Gene Center, LLC, Double D Family Farms, LLC, Northern Nance, LLC, and Northern Plains, LLC, regular cash distributions from these entities will not be continued. Instead, cash from operations will be reinvested in the companies to fund future operations, provide a cushion against market fluctuations and unexpected economic events, and maintain acceptable debt levels.   In light of the losses sustained over the past several years in agriculture, our business model today is to ensure sustainability of our businesses.

With that being said, I am willing to buy your interests in all of the above-noted businesses.  The basic terms of the agreement would be as follows (all subject to being finalized in a written legal agreement between the parties):

> I would purchase your 10% interest in PST Milling for $276,465.  This value is based on total cash invested into PST Milling, Inc as of 3/31/12.

> I would purchase your 5% interest in Double D for $421,642.  This value is based on an agreed upon fair market value approach formulated by Steve Weiss and used in determining the 2012 sales price for the GGP, LLC buy-out.

> I would purchase your 10% interest in Northern Nance and your 10% interest in Northern Plains for a total purchase price of $1,114,142.  This value is based on a standard balance sheet approach formulated by Steve Weiss and used in determining sales price for the 2012 GGP, LLC buy-out.

DR001295.2

I would purchase your 10% interest in PST Gene Center $68,780.  This value is based on the value paid to Les Griess for his 10% interest in 2011.


If the proposed terms set forth above are agreeable to you, please respond in writing by Friday, April 20th, 2012, and we will arrange for a formal agreement and transfer documents to be prepared for the parties to review and sign.   If the proposed terms are not acceptable to you, I would also appreciate written confirmation from you to that effect by Friday, April 20th, 2012. In such event, we will continue business in accordance with the terms set forth in this letter.  If you choose not to honor our request to respond in writing by Friday, April 20th, 2012, the terms set forth in this letter is how we will do business from this point forward whether you remain a minority owner or sell your interests. Our communication has broken down through the years so I believe it is appropriate that such communications be done solely in writing.  Thank you for your consideration.

Sincerely,

Jim

DR001296.2

# September 2010
## Balance Sheet Analysis

1. Accounts Receivable includes $302,984.01 for slaughter hog sales to Tyson and $37,177.41 for cull sales to Pine Ridge and Heinold. Beaver Valley Pork, Imperial, and GGP owe $22,050 in payroll reimbursements and the remainder is made up of other miscellaneous reimbursements due to NN/NP.

2. Inventory includes $493,229 for month end feed on hand, which was not recorded in September 2009. Current 2010 nursery/finisher inventory valuations represent an approximate 8,200 head increase. Please see *Special Issues* tab page 13 for details.

3. Prepaid insurance increased from 2009 due to the inclusion of the prepaid commercial policies vs. only prepaying Workers' Comp. insurance. Prepaids also include $40,300 to Creston LP Gas for propane.

4. Please see *Special Issues* tab page 13 for details.

5. Buildings and equipment increased from prior year due to the installation of lay bars at NN & NP reproductive sites costing $56,313, and VE fire repairs totaling $69,795.

6. Wells and lagoon increased due to the Highline lagoon repairs totaling $12,946 and Anson well repairs totaling $5,646.

7. Transportation equipment includes the purchase of a 2003 Chevy Silverado for NP costing $11,094, it also reflects the sale of a 2007 Ford F-250 for $11,050 and the loss of $12,068 on the sale.

8. Construction in progress represents the following, most of which will be expensed:

| | 2010 | 2009 |
|---|---|---|
| #60503 NN Nursery Flooring | $174,631 | |
| #60502 NN Filtration | $209,164 | |
| #60607 Rogers, #60105 Anson, #60301 Jenkins, & #60504 NN Wet/Dry Feeders | $274,623 | |
| #60606 Rogers Nursery Fire | | $2,167 |
| #60707 VE Nursery Fire (netted with insurance proceeds) | | $86,368 |
| #90204 NP Filtration | | $6,978 |
| #90506 NN Lay Bars | | $28,234 |
| #90506 NP Lay Bars | | $28,237 |

9. Accounts Payable and the Line of Credit are slightly higher due to the current projects listed in #8 above.

10. Accrued expenses are lower than prior year due to lower real estate taxes and no longer accruing for earnings. Earnings are paid on a monthly vs. quarterly basis.

Page 4

DR001297.2

11. Note payable consists of:

<u>2009</u>

| | |
|---|---|
| PCW, LLC | $235,000 |
| Deb Rasby | $350,000 |
| Dan O'Conner | $800,000 |
| JDP, LLC | $1,450,000 |
| Jim Pillen | $2,600,000 |

<u>2010</u> (additions)

| | | |
|---|---|---|
| Swap | $1,148,241 | (FNBO) |
| Feeder Project | $379,313 | (FNBO-Matures 11/1/2011) |
| Total | $6,962,554 | |

12. NN/NP has paid down in full all monies due to Tyson from the CFA. NN/NP is currently building a reserve account with Tyson per the CFA agreement, which states NN/NP will build a reserve account up to $10/head of annual production, equal to $2,550,000. (When the market price is greater than $5.00/cwt above our breakeven, 7% of the market price is deposited into our reserve account which earns at the 3 month LIBOR rate plus 4%.)

13. NN has paid down $1,252,522 in term debt since September 2009.

14. Other Comprehensive Income/Loss reflects the $1,148,241 debt value on the Swap agreement, which is accounted for as a derivative (hedge). This will disappear in 2013 when the term note matures. Refinancing will be required to cover the $11 MM balloon payment due.

Page 5

DR001298.2

## Annualized EBITDA Based on 2/29/12 Finar

|  | N Nance/N Plains* | Double D* | PST Gene Center** |
|---|---|---|---|
| **Rasby Ownership %** | **10%** | **5%** | **10%** |
| Rasby share of EBITDA | 1,030,692 | 193,860 | 80,267 |

## Net Tangible Values Used for CFA w

|  | NN/NP | DD | PST Gene Center* |
|---|---|---|---|
| Net Tangible Value | 2,404,557 | 502,411 | 68,779 |

* Rasby equity per 2/29/2012 balance sheets, earnings is net of debt service, NN/NP & DD based on 2012 bi

Note: Net Tangible Values for NN/NP and Double D are based on appraisals from several years ago - I don't r
as a basis for the Cash Flow Assistance program with Tyson.

DR001299.2

## ncial Statements

| | PST Mill** | PST** | Total |
|---|---|---|---|
| | **10%** | **10%** | |
| | 72,460 | 220,028 | **1,597,307** |

## ith Tyson

| | <u>PST Mill*</u> | <u>PST*</u> | <u>Total</u> |
|---|---|---|---|
| | 179,084 | 52,176 | **3,207,008** |

udgets,

emember the year.  These values are currently being used

DR001300.2

**Wells, Roger**

| | |
|---|---|
| **From:** | Doug Rasby <ddrasby@frontiernet.net> |
| **Sent:** | Friday, April 13, 2012 10:13 AM |
| **To:** | Wells, Roger; Hargens, William F. |
| **Subject:** | Offer of sale from Jim Pillen & notes to 2010 balance sheet showing note receivable |
| **Attachments:** | 04-13-2012 09;36;13AM.pdf; Annual EBITDA and Net Tangible Values.xlsx |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |
| | |
| **Categories:** | Rasby |

The following is subject to attorney/client confidentiality:


Good morning,


I received the attached letter from Jim Pillen this morning via UPS.  The offer totals $1,931,029. He plans on liquidating the company and discontinuing all the business' distributions.  Also attached are:

1)     A spreadsheet showing my annual EBITDA (based on 2/29/12 financials) of $1,597,307

2)     My share of net tangible assets, which we currently use for our cash flow assistance program with Tyson, of $3,207,008

3)     The notes to a 2010 balance sheet which shows my note receivable of $350,000  (we also have check stubs for interest payment receipts if needed)

I will be available today prior to 3:30 (we have a 4:00 wedding to attend - Friday the 13th - very unsuperstitious

What can we do and how should we respond?  We do not want to accept this low ball offer if we don't have to - our after tax proceeds wouldn't be much more than $500,000.


Thank you for your help,


Deb and Doug

Home #: 402-563-2180

1

DR001301.2

April 9, 2012

Deb Rasby
3474 24th Avenue
Columbus, NE 68601
VIA OVERNIGHT MAIL

Dear Deb:

We have come to a place where you need to make a decision about your ownership interests. You are no longer an employee and there are clear differences of opinion regarding the companies and how they should operate.  I am writing to advise you of some changes we are implementing and to present you with a proposal for resolving all pending issues.

With respect to Progressive Swine Technologies, Inc. ("PST"), our plan is to liquidate the corporation since it no longer meets our business objectives. As part of an orderly liquidation, you will receive ten percent of the net assets available for distribution after payment of all outstanding liabilities.  Based on the March 31, 2012 balance sheet, we anticipate that total assets available for distribution will be just over $500,000.  That means your share of the final distribution would be just over $50,000.  Until PST is liquidated, there will no distributions paid to shareholders.  When everything has been concluded, there will be a final distribution.  If you are in agreement with this plan, we will proceed based on consent resolutions.  If you disagree, we will take steps to call a meeting of the shareholders to consider and vote on the plan of liquidation.

With respect to PST Milling, Inc, PST Gene Center, LLC, Double D Family Farms, LLC, Northern Nance, LLC, and Northern Plains, LLC, regular cash distributions from these entities will not be continued.  Instead, cash from operations will be reinvested in the companies to fund future operations, provide a cushion against market fluctuations and unexpected economic events, and maintain acceptable debt levels.   In light of the losses sustained over the past several years in agriculture, our business model today is to ensure sustainability of our businesses.

With that being said, I am willing to buy your interests in all of the above-noted businesses.  The basic terms of the agreement would be as follows (all subject to being finalized in a written legal agreement between the parties):

> I would purchase your 10% interest in PST Milling for $276,465.  This value is based on total cash invested into PST Milling, Inc as of 3/31/12.

> I would purchase your 5% interest in Double D for $421,642.  This value is based on an agreed upon fair market value approach formulated by Steve Weiss and used in determining the 2012 sales price for the GGP, LLC buy-out.

> I would purchase your 10% interest in Northern Nance and your 10% interest in Northern Plains for a total purchase price of $1,114,142.  This value is based on a standard balance sheet approach formulated by Steve Weiss and used in determining sales price for the 2012 GGP, LLC buy-out.

**DR001302.2**

I would purchase your 10% interest in PST Gene Center $68,780.  This value is based on the value paid to Les Griess for his 10% interest in 2011.

If the proposed terms set forth above are agreeable to you, please respond in writing by Friday, April 20th, 2012, and we will arrange for a formal agreement and transfer documents to be prepared for the parties to review and sign.   If the proposed terms are not acceptable to you, I would also appreciate written confirmation from you to that effect by Friday, April 20th, 2012. In such event, we will continue business in accordance with the terms set forth in this letter.  If you choose not to honor our request to respond in writing by Friday, April 20th, 2012, the terms set forth in this letter is how we will do business from this point forward whether you remain a minority owner or sell your interests. Our communication has broken down through the years so I believe it is appropriate that such communications be done solely in writing.  Thank you for your consideration.

Sincerely,

Jim

DR001303.2

# September 2010
## Balance Sheet Analysis

1. Accounts Receivable includes $302,984.01 for slaughter hog sales to Tyson and $37,177.41 for cull sales to Pine Ridge and Heinold. Beaver Valley Pork, Imperial, and GGP owe $22,050 in payroll reimbursements and the remainder is made up of other miscellaneous reimbursements due to NN/NP.

2. Inventory includes $493,229 for month end feed on hand, which was not recorded in September 2009. Current 2010 nursery/finisher inventory valuations represent an approximate 8,200 head increase. Please see *Special Issues* tab page 13 for details.

3. Prepaid insurance increased from 2009 due to the inclusion of the prepaid commercial policies vs. only prepaying Workers' Comp. insurance. Prepaids also include $40,300 to Creston LP Gas for propane.

4. Please see *Special Issues* tab page 13 for details.

5. Buildings and equipment increased from prior year due to the installation of lay bars at NN & NP reproductive sites costing $56,313, and VE fire repairs totaling $69,795.

6. Wells and lagoon increased due to the Highline lagoon repairs totaling $12,946 and Anson well repairs totaling $5,646.

7. Transportation equipment includes the purchase of a 2003 Chevy Silverado for NP costing $11,094, it also reflects the sale of a 2007 Ford F-250 for $11,050 and the loss of $12,068 on the sale.

8. Construction in progress represents the following, most of which will be expensed:

|  | 2010 | 2009 |
|---|---|---|
| #60503 NN Nursery Flooring | $174,631 | |
| #60502 NN Filtration | $209,164 | |
| #60607 Rogers, #60105 Anson, #60301 Jenkins, & #60504 NN Wet/Dry Feeders | $274,623 | |
| #60606 Rogers Nursery Fire | | $2,167 |
| #60707 VE Nursery Fire (netted with insurance proceeds) | | $86,368 |
| #90204 NP Filtration | | $6,978 |
| #90506 NN Lay Bars | | $28,234 |
| #90506 NP Lay Bars | | $28,237 |

9. Accounts Payable and the Line of Credit are slightly higher due to the current projects listed in #8 above.

10. Accrued expenses are lower than prior year due to lower real estate taxes and no longer accruing for earnings. Earnings are paid on a monthly vs. quarterly basis.

DR001304.2

11. Note payable consists of:
<u>2009</u>
| | |
|---|---|
| PCW, LLC | $235,000 |
| Deb Rasby | $350,000 |
| Dan O'Conner | $800,000 |
| JDP, LLC | $1,450,000 |
| Jim Pillen | $2,600,000 |

<u>2010</u> (additions)
| | | |
|---|---|---|
| Swap | $1,148,241 | (FNBO) |
| Feeder Project | $379,313 | (FNBO-Matures 11/1/2011) |
| Total | $6,962,554 | |

12. NN/NP has paid down in full all monies due to Tyson from the CFA. NN/NP is currently building a reserve account with Tyson per the CFA agreement, which states NN/NP will build a reserve account up to $10/head of annual production, equal to $2,550,000. (When the market price is greater than $5.00/cwt above our breakeven, 7% of the market price is deposited into our reserve account which earns at the 3 month LIBOR rate plus 4%.)

13. NN has paid down $1,252,522 in term debt since September 2009.

14. Other Comprehensive Income/Loss reflects the $1,148,241 debt value on the Swap agreement, which is accounted for as a derivative (hedge). This will disappear in 2013 when the term note matures. Refinancing will be required to cover the $11 MM balloon payment due.

DR001305.2

## Annualized EBITDA Based on 2/29/12 Finar

|  | N Nance/N Plains* | Double D* | PST Gene Center** |
|---|---|---|---|
| **Rasby Ownership %** | **10%** | **5%** | **10%** |
| Rasby share of EBITDA | 1,030,692 | 193,860 | 80,267 |

## Net Tangible Values Used for CFA w

|  | NN/NP | DD | PST Gene Center* |
|---|---|---|---|
| Net Tangible Value | 2,404,557 | 502,411 | 68,779 |

 * Rasby equity per 2/29/2012 balance sheets, earnings is net of debt service, NN/NP & DD based on 2012 b

Note: Net Tangible Values for NN/NP and Double D are based on appraisals from several years ago - I don't r
as a basis for the Cash Flow Assistance program with Tyson.

DR001306.2

## ncial Statements

| PST Mill** | PST** | Total |
|---|---|---|
| 10% | 10% | |
| 72,460 | 220,028 | **1,597,307** |

## ith Tyson

| PST Mill* | PST* | Total |
|---|---|---|
| 179,084 | 52,176 | **3,207,008** |

udgets,

emember the year.  These values are currently being used

**DR001307.2**

## Wells, Roger

| | |
|---|---|
| **From:** | Doug Rasby <ddrasby@frontiernet.net> |
| **Sent:** | Monday, June 11, 2012 9:49 AM |
| **To:** | Wells, Roger |
| **Subject:** | p.s. scratch the latest letter - I need to take out finger pointing Feeling that my direction was wrong and a new letter - Rasby/Pillen |
| **Attachments:** | Dear Jim letter for selling at a fair price.docx |

I need to again revise my proposed letter to take out the finger pointing and probably not send to his family. I am back to work on it.  (I believe that I may, indeed, be a crazy woman!)

---

**From:** Doug Rasby [mailto:ddrasby@frontiernet.net]
**Sent:** Sunday, June 10, 2012 11:20 PM
**To:** Wells, Roger
**Subject:** Feeling that my direction was wrong and a new letter - Rasby/Pillen

I don't know how many times I have changed direction but I am getting tired of myself.  I can only imagine how you must feel. I woke up this morning and thought ██████████████████████████████████████████████████████████████████ My only defense is desperation. When I take stock of who I might become it is not a pretty site.  Attached is yet another letter.  I wrote it partly to the Jim with whom I am dealing right now and partly to the Jim I used to know – his highest self who originally came up with our business principals.  I want to send it to the 2 kids who are involved in the business, Brock and Sarah, and to his wife – a social acquaintance of mine.  The reasons for my inclusion of these three people is to 1) get him to read it and 2) get all of this out into the light of day.  The people who thought that the $4.5MM price was a good one were found through my son Greg and through my brother-in-law, Scott (Scott was the one who actually communicated with his contacts).  I think that I will mail the letter to Suzanne tomorrow and drop the other 3 copies off at the office on Tuesday when Jim is not there.  If you see anything in there that looks harmful could you let me know?  I am sure that I will look at it a couple of times again tomorrow before it goes out.
Thank you for your patience,
Deb

---

**From:** Doug Rasby [mailto:ddrasby@frontiernet.net]
**Sent:** Saturday, June 09, 2012 12:23 PM
**To:** Wells, Roger
**Subject:** A letter - Rasby/Pillen

The following communication is subject to attorney/client confidentiality.

Hello Roger,

Doug does not want to fight this. But I do want to make one final attempt to appeal to the Jim Pillen I once knew. In order to make the most impact, w██████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████

We have already gotten feedback that the $4.5MM price would be an investment that several financially capable people would make if the majority owner was honest.  In case Jim would still want to visit with the 3rd party regarding their review of the financial information and website, they would have all of the knowledge needed to respond.  Jim knows

**DR001310.2**

that it is a good price though. Putting myself in Jim's shoes, and his knowing the real value, I am wondering why he would present himself in any kind of threatening way by doing anything more than calling them to check out their offer. ███████████████████████████████████████████████████████████████ I am placing Jim in a god-like seat: complete control and me praying for mercy.

Thank you Roger,

Deb

**From:** Doug Rasby [mailto:ddrasby@frontiernet.net]
**Sent:** Friday, June 08, 2012 7:31 PM
**To:** Wells, Roger
**Subject:** The written offer - Rasby/Pillen

The following communication is subject to attorney/client confidentiality.

I do not think that there is a signed Buy/Sell document anywhere to be found. None has materialized and the appraisal process has not followed its guidelines. (I think Sarah Pillen accidentally discarded all of these when the others were revised but were never signed.)  Does LLC law address rights or restrictions on transfers of ownership?  There is only one paragraph on page 8 of the LLC operating agreements that addresses this and it refers to a nonexistent Buy/Sell.  Is it not unconscionable to not allow a member to find another buyer, given a low ball offer and intentions to hold cash hostage?



I believe that we can find a party who would be interested in this.

Thank you, Roger.

Deb

**From:** Doug Rasby [mailto:ddrasby@frontiernet.net]
**Sent:** Friday, June 08, 2012 3:52 PM
**To:** 'Wells, Roger'
**Subject:** RE: Rasby/Pillen

The following is subject to attorney/client confidentiality.
We have not heard back from Frankel Zacharia so that is the correct response – it may take some time.  Did you have any luck on the legality of the offer not including the loan?

**From:** Wells, Roger [mailto:rwells@mcgrathnorth.com]
**Sent:** Friday, June 08, 2012 3:29 PM
**To:** Doug and Deb Rasby

2

DR001311.2

**Cc:** Hargens, William F.
**Subject:** FW: Rasby/Pillen

My response to Moll will be that I have not received a response from you.

Roger W. Wells
McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska  68102
Phone (402) 341-3070
Fax (402) 952-1853
Cell (402) 681-5773
Home (402) 498-0941
rwells@mcgrathnorth.com
www.mcgrathnorth.com

**From:** Timothy L. Moll [mailto:TMoll@remboltlawfirm.com]
**Sent:** Friday, June 08, 2012 2:57 PM
**To:** Wells, Roger
**Subject:** Rasby/Pillen

Roger:

Any response yet from your client regarding my email of a few days ago?  Thanks.

Timothy L. Moll, Attorney
tmoll@remboltlawfirm.com

Rembolt Ludtke LLP
1201 Lincoln Mall, Suite 102
Lincoln, Nebraska 68508
P: (402) 475-5100 ext 125
F: (402) 475-5087
Web: www.remboltlawfirm.com

DISCLOSURE: In accordance with IRS Circular 230, please note the following with regard to any portion of the above message which involves federal tax issues: Unless expressly stated otherwise above, (1) nothing contained in this message is intended or written to be used or relied upon by any taxpayer for the purpose of avoiding penalties that may be imposed under the Internal Revenue Code; and (2) nothing contained in this message may be used to recommend, promote or market any federal tax transaction or matter.

WARNING/CAUTION: This e-mail and any files transmitted with it are strictly confidential and are intended solely for the use of the individual or entity to whom it is addressed. This communication may contain material protected by lawyer-client privilege. If you are not the intended recipient or the person responsible for delivering the e-mail to the intended recipient, be advised that you have received this e-mail in error and that any use, dissemination, forwarding, printing, or copying of this e-mail and any file attachments is strictly prohibited. If you have received this e-mail in error, please immediately notify us by a collect telephone call to (402) 475-5100 or by reply e-mail to the sender. You must destroy the original transmission and its contents.

This message and any attachments are confidential, may contain privileged information, and are intended solely for the recipient named above. If you are not the intended recipient, or a person responsible for delivery to the named recipient, you are notified that any review, distribution, dissemination or copying is prohibited. If you have received this message in error, you should notify the sender by return email and delete the message from your computer system.

DR001312.2

The following statement is provided pursuant to U.S. Treasury Department Regulations: Any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code, nor should such advice be used or referred to in the promoting, marketing or recommending of any entity, investment plan or arrangement.

DR001313.2

Dear Jim,

I am copying Brock and Sarah on this letter as I have heard they are aware of the situation and they are a part of this business. They, too, will have times in their careers in which they will have to make some important decisions that test their core values. That has been the good thing about this process – it has allowed a clarification of what is important and I have continued to have the sense that all will work out well.  If we, as Christians and leaders for whom good values are important can't resolve this in a good way, who can? I am also copying Suzanne as I respect her and don't want her to think that I have bad feelings toward her.  The aspect of this that makes me feel badly is that this is about money which smacks of greed.  At its heart however, it is about fairness – fair play and fair value.

Just to review, for the new eyes included in this communication, because you and I viewed situations differently the last few years, and because your reaction to these differences was so strong (although there were a couple of instances in which my reaction was strong also), I came to the realization that one of us had to go.  That person certainly couldn't be you so I retired much earlier than I had planned - and gave up a lot to do it.  You said later that you were going to have a conversation with me about it the same day that I gave you my letter of retirement.

My intent was to keep all actions positive and I did this.  I wanted to leave with everything in good shape so that you would be fine, our people would be fine, and the business would be fine and I did this.  I also wanted to get out of your way, let you run the show with no interference from me and keep my investment as we had agreed on years ago and I did this too.  I did not take anything away from you.

After 20 years of putting all that I owned at risk, as well as legal documentation and personal promises from you I took you as a man of your word: that everything would be alright.  You have always held up good character and values as integral to our business. I have admired you greatly for doing so, as have many others.  Doing what's right and treating others as you want to be treated were values your parents instilled in you.  You believed so strongly in them that you put them on the walls of all of the businesses as well as your business cards.  It is the first thing that you see on the website. I always believed this to be who you *are* – a truly good man.  Bullying someone - especially someone who cares about you – seemed far beneath you.  It *is* far beneath you.  I still have a belief that you are the Jim Pillen I knew, a good man with whom I have been so thankful and proud over the years to be associated.

You said several things that saddened me when we last spoke in April.  When you said that I had an "entitlement" mentality I was speechless. I couldn't find the words at the time but I feel awful - I put everything I had at risk for 20 years, poured my heart into the business, and have a strong belief in it. If I could be involved, I would be.  *Fair treatment is the only thing to which I feel entitled.*  The second had to do with my emails to you – my intent was only to bring peace and reconciliation to our relationship. I still believe that this should be the goal.  So, with that in mind, I am sorry if I sounded preachy.  Please bear with me, though, because I will sound preachy again for a minute or two because you have said and done something that is *not* what you have ever wanted to be about:

You said that you were going to dissolve PST, thus eliminating profits to me, and were going to stop paying out the profits from all of the businesses that were debt free, knowing that taxes would need to

DR001314.2

be paid. When I stated that your plans were unethical, you said that ethics have nothing to do with this. You said that as the majority owner you could do anything that you wanted.  Well, you can.  We are all given free will.  We can kill, steal, commit adultery, lie, etc.  Without a sense of right and wrong, without good values, we humans *can* do *anything*. When it comes down to dollars and cents, treating someone the way that you would want to be treated may not *monetarily* serve you best (in the short term) but it serves you best in more important ways.  Doing right applies in church, at social gatherings, and certainly at home but in business deals - it can cost you money up front.  But that money purchases something of the greatest value – self-respect.  John Wooden said that "ability may get you to the top, but character keeps you there."

Well Jim, you have always been about character.  You have been tough, but still you have been fair.  You haven't been one to bully someone – you have been there to help others.  I hope that this is still the real Jim Pillen.  I have not shared this situation with any of our friends as I want it to be resolved amicably.  There is still an ember of hope alive in me.

I would have liked to have stayed invested in the business - agriculture is the best business there is.  If, however, my selling is the only way to have peace then that is what we will do.  You have given me a price that is 35.4% of the lowest value calculated by a certified appraiser. He was quick to point out that it was an extremely low ball offer and the true value of what I have lost will be significantly greater. But by the effective elimination of all income (paying out no cash), while continuing to incur the expense to Uncle Sam, the act becomes one of oppression. Fair value no longer holds any meaning, negotiation cannot occur when one's head is held under water. Your price was set by an accountant who used a method that would result in the lowest possible value - old, historic, depreciated costs, with no value given to income flows and verified by an appraiser as acceptable for a dire situation with little or no marketability.  But I am forced to either take it, legally fight it - as it constitutes minority shareholder oppression, or live under oppression.  There was also a fourth option.

In the past few days I have visited with several parties who have the financial capability to purchase my interests and to wait for cash distributions until the farms are debt free.  I shared my 7 year financial history on all of the businesses except PST and the occurrences in our industry in 2008 and 2009. The value for my asking price of $4.5MM was seen immediately as a good one. As we used to say: it was a no brainer. I had also directed them to the website and they liked what they saw. I told a little about your history and expertise and they were impressed.  Then I explained that I left the business because we differed on our approaches to a few things but I was in a position to retire early.  I said that the cash distributions on the debt free businesses had been discontinued, which I relied on to pay taxes. Just as quickly as they had seen tremendous value, you became the one drawback.  No one wanted to associate with the person who would take this action. The person who used to be the most important and valuable asset of this business and its greatest selling point was now the opposite.

You had a personal encounter one weekend with the One who said these words: What good is it for a man to gain the whole world, and yet lose or forfeit his very self.  If you are His follower fairness is required.  As followers we understand that saying "no" to what is wrong and saying "yes" to what is right are the right choices.

DR001315.2

The price you offered for the businesses, excluding PST, is 34% of the $4.5MM value seen by others as an exceptionally good price. It is 35.4% of a certified appraiser's lowest value.  Given its financial history and core values it would have a market. The after tax result of the purchase price you offered, due to the negative tax basis, will be very little. The largest part of my 20 year investment will be gone.  I have survived the risk of a lawsuit from angry neighbors, the watershed from sustained low prices due to a glut of Canadian pigs and the depressed market due to the misnomer of "swine flu".  I never dreamed that the business partner of whom I thought so highly might act against his principals and cause me harm.

But I am counting on you to be true to yourself. I am counting on you to live up to your core values of being honest and fair, "doing what's right" and "treating others as you want to be treated".  I am counting on you to be a man of your word, and that your word of a year ago that "everything will be alright" was the truth. I am at your mercy.

Although the $4.5MM price I am asking is low, at least it falls within what could be said is fair. If you were on the other side of this and you were offered this price for 10% of Nance/Plains, 5% of Double D, 10% of PST Milling and 10% of the PST Gene Center, would you agree with the people who thought this was a great price?

If you would like to meet, Brock and Sarah, and Suzanne if she would like, are welcome to join us.  An amicable resolution is the best for all of us. As I said at the beginning of this, if we as Christians and respected leaders can't resolve this in a good way, who can? I will give you a call.

Thank you Jim,

Deb


p.s. By the way, I will stand on my 20 year record.  I did keep copies of communications that reflect and document many of my contributions about which I feel very good, as well as those things on which we disagreed. They reflect, too, the fun that I had working with you – you could always make me laugh, and my admiration for you. You have been blessed with many gifts and I am thankful to have seen all of the great results from them. I think my communications also reflect my love for working through processes with our teams and seeing them improve on things that I did.  Continual improvements on these systems were exciting.  If you still have a Deb Rasby file I would be happy to give you copies to remind you of some of the good things.  I tried my best and stood by what I believed to be right.  I cared about treating people with respect. I enjoyed working in a friendly environment and did the best that I could to maintain one.  I loved the people, and still do.

DR001316.2

**Wells, Roger**

| | |
|---|---|
| **From:** | Doug Rasby <ddrasby@frontiernet.net> |
| **Sent:** | Tuesday, June 12, 2012 8:48 AM |
| **To:** | Wells, Roger |
| **Subject:** | Letter to Jim Pillen |
| **Attachments:** | Letter to Jim Pillen, June 12, 2012.docx |

The following communication is subject to attorney/client confidentiality.


Good morning Roger,


Attached is my letter to Jim Pillen.  There has been more interest in this.  The growth potential of this asset is good.  This would be an investment for an investor who would not require tax distributions but who would keep the investment for appreciation and future sale. Please let me know if you see anything that would need to be changed. The method of communication through you to Jim's attorney would still be the appropriate one.

If it passes your inspection you can send it on to Tim Moll.


Thank you Roger,


Deb

DR001317.2

June 12, 2012


Dear Jim,

I know that you would like to wrap this up and I appreciate the time for the further examination of the value.  Like Ken Morrison and Tom Osborne, you have a reputation for being tough yet fair. Fairness is the only entitlement I desire and I will make sure that this quality will be made known.

From the analyses of these investments by a certified appraiser, a low end but fair value of $4.5MM was the value used as a selling price when visiting with several parties in the past few days.  The potential investors in Nebraska, Texas, Missouri and Colorado each had the financial capability to handle my share of the businesses - sustaining it over time to capitalize on the growth. I shared the 7 year financial history on all of the businesses, except PST, and the occurrences in the industry in 2008 and 2009. A value of $4.5MM for 10% of Nance, Plains, PST Milling and the PST Gene Center and 5% of Double D was seen almost immediately as a very good value and one in which they would invest. I had also directed them to the website and they were impressed by what they saw as well as your history and expertise. As would be expected, associating with a reputable operator was as important as the price.

I am sure it was unintentional but the value set by an accountant using old, historic, depreciated costs and leaving out the income flows differed significantly from the certified appraiser's value as well as the current asset value and growth potential as viewed by 3rd parties.  Dave Dodgen's verification was that the accountant's value would work in a dire situation with very little marketability.

I know that you believe in saying "no" to what is wrong and "yes" to what is right.  You have been the champion of doing what's right and not running anyone over. I have hung in there through a lawsuit from angry neighbors, the watershed from sustained low prices due to a glut of Canadian pigs and the depressed market due to the misnomer of "swine flu".  I have put all that I owned at risk for 20 years. I had wanted to keep this investment. I do understand your desire to buy it, though. I am sure that you would agree that $4.5MM is a fair value.

You have been blessed with a great deal of talent and as I looked through our past communications I remembered the fun that I had working with you – you could always make me laugh. These are the memories I keep and we both have the capacity to resolve this in a good way. Pat Anderson and others have recently spoken so highly of you as a gentleman and your character exhibited in these dealings will exemplify that fact.

I would rather visit with you personally as I have enjoyed our relationship but I respect your desire to use 3rd parties for the sale.  I will look forward to the time in which we can be friends without the business aspect.

Thank you Jim,

Deb

DR001318.2

**Wells, Roger**

| | |
|---|---|
| **From:** | Doug Rasby <ddrasby@frontiernet.net> |
| **Sent:** | Saturday, April 14, 2012 8:53 AM |
| **To:** | Wells, Roger; Hargens, William F. |
| **Subject:** | Pillen offer |

The following is subject to attorney/client confidentiality:

I hope that you received my email containing Jim Pillen's offer which requires a response by Friday, April 20th. ████████████████████ Pillen will continue to operate in a way that will harm me, no matter how profitable an enterprise happens to be. As in this case, Pillen uses unscrupulous tactics.

With regard to PST no longer meeting the business objectives, the work that is performed will still need to be done for all of the business entities.  This includes production reporting and analysis, decision making on production practices, marketing strategies, financing needs, and personnel requirements; handling human resource functions, accounts payable, accounts receivable, preparation of financial statements, and all of the administrative work that is needed to operate a 50,000 sow operation.  The same staff will handle the work.

The only change has been in the ownership of one of the business entities from 1/3 Jim Pillen to 100% Jim Pillen.  One of our other pork production business entities, PC West, is also owned entirely by Jim Pillen.  PC West was our first farm and the original ownership was 50% Pillen and 50% Mike Wilke.  Management fees have always been paid.  Pillen and Wilke split in the late 90's, I believe.  The management fee structure did not change.

I don't know if the law looks at reasonable business practices when holding onto cash to reinvest in the business when there is no debt - not distributing even a minimum amount of net profit to cover income taxes.  We do know that Pillen could come up with schemes to use cash for the business, if only to squeeze me.  Two of the businesses named in the letter for which cash distributions of net profits will be discontinued, PST Gene Center and PST Milling, have no debt.  Net profits have been distributed for many years, as they have for PST.

From what I have learned a bottom line reasonable offer might have been 4 years EBITDA or even tangible net value.   As you know, this year we are experiencing the most profitable year in our business' history. The balance sheet values Jim is using for N. Nance, N. Plains and PST Gene Center are old and low. Dr. Griess was beaten down by the time he left and did not question the balance sheet value he was paid for PST Gene Center (I was not included in any of these discussions but Jim said there was little discussion).  Like me, Dr. Griess simply wanted out. In negotiating with Bob Gottsch's widow and Brett Gottsch (who is in the midst of a nasty divorce) on the purchase of GGP, LLC I don't know all of the dynamics that would possess them to use such a low value.  I do know that Bob Gottsch's widow is not a business woman and the death of her husband was recent.  I have also heard that Brett Gottsch was doing whatever he could to minimize the amount he would have to give his ex-wife.

Given the fact that Pillen will do whatever it takes, ethical or not, to get me out I don't seem to have any power to negotiate, unless a lawsuit would provide pressure.

I will need your help to respond by April 20th.

Thanks,

1

Deb Rasby

DR001330.2

**Wells, Roger**

| | |
|---|---|
| **From:** | Doug Rasby <ddrasby@frontiernet.net> |
| **Sent:** | Thursday, August 23, 2012 11:42 AM |
| **To:** | Wells, Roger |
| **Subject:** | p.s. The additional amount requested is $1.275MM re:Rasby/Pillen |
| **Attachments:** | Retraction of support of Pillen.docx; Reasons for Jim Pillen to make the final payment.docx; Email to Jim Pillen Aug 21 2012.docx |

Note: The additional amount that I am requesting is $1,275,000.  All of this information may be given to Jim Pillen's attorney.


From: Doug Rasby [mailto:ddrasby@frontiernet.net]
Sent: Thursday, August 23, 2012 11:07 AM
To: 'Wells, Roger'
Subject: RE: Rasby/Pillen


Good morning Roger,

The letter that I will share with people, personally and by mail, states only facts for which I have documentation. I have given Pillen the opportunity to erase it by making a fair payment (even the payment I have requested is extremely conservative) or by his withdrawal from the political race for Regent.  His actions have been unethical, if not downright unlawful and I will not hide them.  I plan to share the information with mutual friends who are helping with his campaign, with his opponent and perhaps a letter to the editor as well as to people that we know.  There was no confidentiality agreement signed in this transaction.  I believe that we still have freedom of speech in this country, do we not?? If you wish to share this with Tim Moll you have my permission.

Deb


From: Wells, Roger [mailto:rwells@mcgrathnorth.com]
Sent: Thursday, August 23, 2012 10:34 AM
To: Doug and Deb Rasby
Subject: FW: Rasby/Pillen


Please read Moll's email below. █████████████████████████████████████

Roger W. Wells
McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska  68102
Phone (402) 341-3070
Fax (402) 952-1853
Cell (402) 681-5773

DR001356.2

Home (402) 498-0941
rwells@mcgrathnorth.com <mailto:rwells@mcgrathnorth.com> www.mcgrathnorth.com
<http://www.mcgrathnorth.com/>


From: Timothy L. Moll [mailto:TMoll@remboltlawfirm.com]
Sent: Wednesday, August 22, 2012 9:59 AM
To: Wells, Roger
Subject: Rasby/Pillen


Roger:


I am writing to make you aware that since the transaction involving Jim Pillen and Deb Rasby was concluded back in July, Ms. Rasby has contacted my client multiple times per week (by phone and email and personal visits to his office) complaining that the price she received for her ownership interests was too low.  She is threatening to send a letter to the press "retracting" her support for Jim Pillen as a candidate for Regent at the University of Nebraska unless Mr. Pillen agrees to pay her another $1.75 million.  A copy of her proposed retraction letter is attached for your reference.


The transaction is concluded, Ms. Rasby has been paid, and per the agreement of the parties, all claims have been released.  Ms. Rasby is free to support or oppose whomever she pleases in the upcoming elections.  Mr. Pillen does not wish to discuss this matter further or receive emails, phone calls or correspondence from Ms. Rasby.  At your earliest convenience, please advise Ms. Rasby that communication with Jim Pillen or employees of Pillen Family Farms should stop immediately.  I do not see a need for Ms. Rasby to pursue this matter further, but if there is some need to contact Mr. Pillen, any such communications from Ms. Rasby should be directed to my office.  If you are no longer representing Ms. Rasby, please let me know and I will forward this information to her directly.  Thank you for your assistance.  If you have any questions, please contact me.


Timothy L. Moll, Attorney
tmoll@remboltlawfirm.com <mailto:tmoll@remboltlawfirm.com>


Rembolt Ludtke LLP

1201 Lincoln Mall, Suite 102
Lincoln, Nebraska 68508
P: (402) 475-5100 ext 125
F: (402) 475-5087
Web: www.remboltlawfirm.com <http://www.remboltlawfirm.com>


DISCLOSURE: In accordance with IRS Circular 230, please note the following with regard to any portion of the above message which involves federal tax issues: Unless expressly stated otherwise above, (1) nothing contained in this message is intended or written to be used or relied upon by any taxpayer for the purpose of

2

**DR001357.2**

avoiding penalties that may be imposed under the Internal Revenue Code; and (2) nothing contained in this message may be used to recommend, promote or market any federal tax transaction or matter.

WARNING/CAUTION: This e-mail and any files transmitted with it are strictly confidential and are intended solely for the use of the individual or entity to whom it is addressed. This communication may contain material protected by lawyer-client privilege. If you are not the intended recipient or the person responsible for delivering the e-mail to the intended recipient, be advised that you have received this e-mail in error and that any use, dissemination, forwarding, printing, or copying of this e-mail and any file attachments is strictly prohibited. If you have received this e-mail in error, please immediately notify us by a collect telephone call to (402) 475-5100 or by reply e-mail to the sender. You must destroy the original transmission and its contents.

_____

This message and any attachments are confidential, may contain privileged information, and are intended solely for the recipient named above. If you are not the intended recipient, or a person responsible for delivery to the named recipient, you are notified that any review, distribution, dissemination or copying is prohibited. If you have received this message in error, you should notify the sender by return email and delete the message from your computer system.

The following statement is provided pursuant to U.S. Treasury Department Regulations: Any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code, nor should such advice be used or referred to in the promoting, marketing or recommending of any entity, investment plan or arrangement.

DR001358.2

## Wells, Roger

| | |
|---|---|
| **From:** | Doug Rasby <ddrasby@frontiernet.net> |
| **Sent:** | Thursday, June 28, 2012 3:06 PM |
| **To:** | Wells, Roger |
| **Subject:** | RE: Rasby/Pillen |

If you are ok with this I am.  I do have a question though.  After all of this is done, could I express to Jim, Suzanne, Sarah and Brock the pain caused to me by the unilateral decisions that were made?  I don't think my soul can rest until I have the freedom from oppression to speak from my heart in a respectful way.

---

**From:** Wells, Roger [mailto:rwells@mcgrathnorth.com]
**Sent:** Thursday, June 28, 2012 2:50 PM
**To:** Doug and Deb Rasby
**Subject:** FW: Rasby/Pillen

Attached is a revised draft that I received from Moll.  Note that he has revised your release of Pillen and the entities. ███████████████████████████████████ Moll is right...I transposed the Northern numbers.  I intend to tell Moll that the changes are fine and that he should correct the transposition...if you disagree, please let me know.  Thanks.

Roger W. Wells
McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska  68102
Phone (402) 341-3070
Fax (402) 952-1853
Cell (402) 681-5773
Home (402) 498-0941
rwells@mcgrathnorth.com
www.mcgrathnorth.com

---

**From:** Timothy L. Moll [mailto:TMoll@remboltlawfirm.com]
**Sent:** Thursday, June 28, 2012 1:44 PM
**To:** Wells, Roger
**Subject:** Rasby/Pillen

Roger:

Your proposed changes to the Unit Purchase Agreement are fine in substance.  Please note the following:

1. I revised the release language to make it consistent for both parties.
2. I changed the reference to Jim Pillen as President to be "Authorized Signer".  He is president of some and member/manager of others.
3. The allocation is fine, except we believe the numbers for Northern Nance and Northern Plains are transposed.  I did not make any change pending your review.

A revised version of the agreement is attached for your review.  Please verify the allocation number and confirm that the attached form of the agreement is acceptable.  Once it is, we can make arrangements for signatures and transfer of funds.  Please provide wiring instructions for the account Ms. Rasby desires to receive the proceeds.  I am advised that Ms. Rasby is not holding any original certificates for her ownership interests.  Accordingly, I will forward an "Assignment

1

DR001386.2

Separate from Certificate" for the subject entities to be signed as part of the closing.   My hope is that we can have things finalized this afternoon and sign documents and transfer funds tomorrow.  Thank you.

**Timothy L. Moll, Attorney**
tmoll@remboltlawfirm.com

**Rembolt Ludtke LLP**
**1201 Lincoln Mall, Suite 102**
**Lincoln, Nebraska 68508**
**P: (402) 475-5100 ext 125**
**F: (402) 475-5087**
**Web:** www.remboltlawfirm.com

**DISCLOSURE: In accordance with IRS Circular 230, please note the following with regard to any portion of the above message which involves federal tax issues: Unless expressly stated otherwise above, (1) nothing contained in this message is intended or written to be used or relied upon by any taxpayer for the purpose of avoiding penalties that may be imposed under the Internal Revenue Code; and (2) nothing contained in this message may be used to recommend, promote or market any federal tax transaction or matter.**

**WARNING/CAUTION: This e-mail and any files transmitted with it are strictly confidential and are intended solely for the use of the individual or entity to whom it is addressed. This communication may contain material protected by lawyer-client privilege. If you are not the intended recipient or the person responsible for delivering the e-mail to the intended recipient, be advised that you have received this e-mail in error and that any use, dissemination, forwarding, printing, or copying of this e-mail and any file attachments is strictly prohibited. If you have received this e-mail in error, please immediately notify us by a collect telephone call to (402) 475-5100 or by reply e-mail to the sender. You must destroy the original transmission and its contents.**

This message and any attachments are confidential, may contain privileged information, and are intended solely for the recipient named above. If you are not the intended recipient, or a person responsible for delivery to the named recipient, you are notified that any review, distribution, dissemination or copying is prohibited. If you have received this message in error, you should notify the sender by return email and delete the message from your computer system.

The following statement is provided pursuant to U.S. Treasury Department Regulations: Any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code, nor should such advice be used or referred to in the promoting, marketing or recommending of any entity, investment plan or arrangement.

DR001387.2

## Wells, Roger

| | |
|---|---|
| **From:** | Doug Rasby <ddrasby@frontiernet.net> |
| **Sent:** | Thursday, August 23, 2012 11:07 AM |
| **To:** | Wells, Roger |
| **Subject:** | RE: Rasby/Pillen |
| **Attachments:** | Retraction of support of Pillen.docx; Reasons for Jim Pillen to make the final payment.docx; Email to Jim Pillen Aug 21 2012.docx |

Good morning Roger,

The letter that I will share with people, personally and by mail, states only facts for which I have documentation. I have given Pillen the opportunity to erase it by making a fair payment (even the payment I have requested is extremely conservative) or by his withdrawal from the political race for Regent.  His actions have been unethical, if not downright unlawful and I will not hide them.  I plan to share the information with mutual friends who are helping with his campaign, with his opponent and perhaps a letter to the editor as well as to people that we know.  There was no confidentiality agreement signed in this transaction.  I believe that we still have freedom of speech in this country, do we not?? If you wish to share this with Tim Moll you have my permission.

Deb

From: Wells, Roger [mailto:rwells@mcgrathnorth.com]
Sent: Thursday, August 23, 2012 10:34 AM
To: Doug and Deb Rasby
Subject: FW: Rasby/Pillen


Please read Moll's email below. █████████████████████


Roger W. Wells
McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska  68102
Phone (402) 341-3070
Fax (402) 952-1853
Cell (402) 681-5773

Home (402) 498-0941
rwells@mcgrathnorth.com <mailto:rwells@mcgrathnorth.com> www.mcgrathnorth.com
<http://www.mcgrathnorth.com/>


From: Timothy L. Moll [mailto:TMoll@remboltlawfirm.com]
Sent: Wednesday, August 22, 2012 9:59 AM
To: Wells, Roger
Subject: Rasby/Pillen

DR001400.2

Roger:

I am writing to make you aware that since the transaction involving Jim Pillen and Deb Rasby was concluded back in July, Ms. Rasby has contacted my client multiple times per week (by phone and email and personal visits to his office) complaining that the price she received for her ownership interests was too low.  She is threatening to send a letter to the press "retracting" her support for Jim Pillen as a candidate for Regent at the University of Nebraska unless Mr. Pillen agrees to pay her another $1.75 million.  A copy of her proposed retraction letter is attached for your reference.

The transaction is concluded, Ms. Rasby has been paid, and per the agreement of the parties, all claims have been released.  Ms. Rasby is free to support or oppose whomever she pleases in the upcoming elections.  Mr. Pillen does not wish to discuss this matter further or receive emails, phone calls or correspondence from Ms. Rasby.  At your earliest convenience, please advise Ms. Rasby that communication with Jim Pillen or employees of Pillen Family Farms should stop immediately.  I do not see a need for Ms. Rasby to pursue this matter further, but if there is some need to contact Mr. Pillen, any such communications from Ms. Rasby should be directed to my office.  If you are no longer representing Ms. Rasby, please let me know and I will forward this information to her directly.  Thank you for your assistance.  If you have any questions, please contact me.

Timothy L. Moll, Attorney
tmoll@remboltlawfirm.com <mailto:tmoll@remboltlawfirm.com>

Rembolt Ludtke LLP

1201 Lincoln Mall, Suite 102
Lincoln, Nebraska 68508
P: (402) 475-5100 ext 125
F: (402) 475-5087
Web: www.remboltlawfirm.com <http://www.remboltlawfirm.com>

DISCLOSURE: In accordance with IRS Circular 230, please note the following with regard to any portion of the above message which involves federal tax issues: Unless expressly stated otherwise above, (1) nothing contained in this message is intended or written to be used or relied upon by any taxpayer for the purpose of avoiding penalties that may be imposed under the Internal Revenue Code; and (2) nothing contained in this message may be used to recommend, promote or market any federal tax transaction or matter.

WARNING/CAUTION: This e-mail and any files transmitted with it are strictly confidential and are intended solely for the use of the individual or entity to whom it is addressed. This communication may contain material protected by lawyer-client privilege. If you are not the intended recipient or the person responsible for delivering the e-mail to the intended recipient, be advised that you have received this e-mail in error and that any use, dissemination, forwarding, printing, or copying of this e-mail and any file attachments is strictly prohibited. If you have received this e-mail in error, please immediately notify us by a collect telephone call to (402) 475-5100 or by reply e-mail to the sender. You must destroy the original transmission and its contents.

DR001401.2

_____

This message and any attachments are confidential, may contain privileged information, and are intended solely for the recipient named above. If you are not the intended recipient, or a person responsible for delivery to the named recipient, you are notified that any review, distribution, dissemination or copying is prohibited. If you have received this message in error, you should notify the sender by return email and delete the message from your computer system.

The following statement is provided pursuant to U.S. Treasury Department Regulations: Any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code, nor should such advice be used or referred to in the promoting, marketing or recommending of any entity, investment plan or arrangement.

**DR001402.2**

**RETRACTION OF MY SUPPORT OF JIM PILLEN FOR UNIVERSITY OF NEBRASKA REGENT**

**The University deserves to have leaders of high integrity, good values and upstanding character. Jim Pillen's actions that I have personally witnessed have not reflected these qualities. After 20 years of association with Jim Pillen I support David Copple for the University of Nebraska Regent position. The following explains why I am urging you _not_ to vote for Jim Pillen:**

- I have worked with Jim Pillen as a business partner and chief financial officer for 20 years.  I retired from our business in a positive way, acknowledged by Jim Pillen in an email communication to all of the people working in our business.

- I wished to keep my minority share business interests in retirement in accordance with contractual agreements and personal promises.

- Jim Pillen wanted to acquire my business interests.

- Jim Pillen ignored our buy-sell agreements.

- Jim Pillen ignored values determined by two certified appraisers.

- Jim Pillen notified me by certified mail that my most profitable business was being liquidated. (In fact, after the forced sale of my 10% interests, only the name was changed - to Pillen Family Farms. The same services continue to be performed in the same location.  Jim Pillen has attempted to rationalize that, because his ownership interests have increased in the entities for which these services are performed, the profitablility of our service business - in which I had a 10% share - should be eliminated. I will also note that Jim Pillen's ownership interests had increased in prior years with no change to the profit structure of our service business.)

- Jim Pillen discontinued paying out profits from my other businesses. (Jim Pillen had cash flow from other businesses which would cover his taxes and would give him disposable income, I would have no funds with which to pay income taxes or have disposable income. Also note that profits had always been distributed in the past from these businesses and the businesses are profitable.)

- Jim Pillen gave me a low ball offer (43% of the certified appraised values - these appraised values were also in line with the values accepted by our business' lenders).

- Jim Pillen would not allow a discussion of the values. (No negotiation was allowed – I could either take the low offer or continue ownership under the new policy – which would eventually bankrupt me).

- My retirement finances were decimated.

- The experience was terrifying and revealed characteristics that would not serve the University of Nebraska well.

*If Jim Pillen would do this to acquire money from a 10% minority business partner of 20 years who treated him respectfully, what else is he capable of doing?*

**DR001403.2**

The Pillen Family Farms website (which is exactly the same as the former Progressive Swine Technologies website) shows the following values as the principles of Jim Pillen's businesses: "Do the right thing" and "Treat others the way you want to be treated". Although I worked and retired in a respectful and good way, and Jim Pillen acknowledged to me that I did an exceptional job, *I experienced the opposite*. I pleaded numerous times for Jim Pillen to honor his business principles, some of which are documented in emails. My pleas were ignored.

I asked Jim Pillen only for the lowest, most conservative appraised values on the pork production facilities for which I had put all of my personal assets at risk for many years – I would give him my other business interests for no value. This was ignored.

My attorneys said that I could have my day in court, and that Nebraska law against minority shareholder oppression is being strengthened in 2013. Unfortunately, a lawsuit would have taken years and likely more than our family's savings to pursue. I didn't have pockets deep enough to fight this.

I urge you **_not_** to vote for Jim Pillen for Regent.

Deborah Rasby

**DR001404.2**

What is good about this situation?

1) You have a past business partner of 20 years who wants good for you, not harm.
2) You have the opportunity to correct the situation so that it does not damage you.
3) You have the ability and personal discipline to create a clean closure and move on in a good way.

Why should you make this payment?

1) It is a good purchase price for you
2) It is an investment in your name
3) It sets the stage for a good future
4) It gives you freedom from a past business partner
5) It shows responsibility to your family and your supporters by keeping your name clear

DR001405.2

**Deb Rasby**                                                                    Aug 21 (2
                                                                                 days ago)

to Jim

*I have left messages for you at work and on your cell phone so you may disregard those by your reply to this. If I hear no reply I will assume this didn't get through on your email and I will send it to you through Sarah:*

Jim,

To reiterate for the record, the value that I am asking in total for my business interests is 74.55% of a conservative valuation of these business' value. It uses:

- The appraisal for Double D calculated by Jim VanDerWerff, Certified General Appraiser
- The value calculated for N Nance/N Plains by Matt Stadler, CPA, ABV, CFF
- Subtracts the repayment of my subordinated loan from the calculated value
- Includes no value for PST, PST Gene Center or PST Milling (estimated by Matt Stadler at 25.45% of the total)
- The assumption for N Nance/N Plains uses an equivalent of $2,695,000 annual depreciation for capital improvement expenditures *each year*. This exceeds what we have done in the past but it does give full benefit of the doubt for upgrades and provides a highly conservative model. In the final calculation it should *more* than compensate for all of the subordinated debt, as do the zero values included for PST, PST Gene Center and PST Milling.

The value is calculated with fairness. This goes to the farthest end of the conservative scale and can stand up to scrutiny.

Most importantly, we will end this transaction on a note of respect for both of us. I feel good about the value that I have given to you.

When can we meet to close this?

**DR001406.2**

**Wells, Roger**

| | |
|---|---|
| **From:** | Doug Rasby <ddrasby@frontiernet.net> |
| **Sent:** | Friday, June 29, 2012 12:42 PM |
| **To:** | Wells, Roger |
| **Subject:** | RE: Rasby/Pillen |

Hi Roger, I left my copies of the signed documents at Jim's office – could you have Tim Moll send you a copy (I just can't bring myself to talk to Jim again).  The meeting was cordial and I asked once again for just the appraised values for Nance, Plains and DD, nothing for the rest.  I told him that the agreement just felt wrong – I looked at it many times and it gave me a stomach ache and a pain in my chest each time – it was just not fair and right, even in the eyes of objective 3rd parties.  He told me that I had done a fabulous job enhancing all that he did and that I worked my tail off every day but that these kind of sales just weren't valued at appraised values.  I left him by looking him in the eye and saying "Jim, you can do whatever you want, you have all of the power, but this is just not right.  What I have suggested to you is beyond fair to you."  At that I left and forgot my signed copies.  Since Sarah and Brock are involved in this business directly, and Suzanne to a point, I feel that what I have to say is to each of them. It will not make a dent to Jim only. (During our beginning conversation Jim made an interesting comment on his new grandson (his 1st and his namesake) – he said that it just wasn't a "wow" experience for him as he thought it would be.  He seems to be without much feeling of any kind.) This is not the way to do business and if they believe it to be ok, other people will suffer in the years to come. Maybe there is hope for them.  It has certainly been a lesson to my own family on the value of ethics in every aspect of life.

**From:** Wells, Roger [mailto:rwells@mcgrathnorth.com]
**Sent:** Friday, June 29, 2012 9:22 AM
**To:** 'Doug Rasby'
**Subject:** RE: Rasby/Pillen

If you want to send this to Jim, ok.  I would recommend that you not send it to others.

Roger W. Wells
McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska  68102
Phone (402) 341-3070
Fax (402) 952-1853
Cell (402) 681-5773
Home (402) 498-0941
rwells@mcgrathnorth.com
www.mcgrathnorth.com

**From:** Doug Rasby [mailto:ddrasby@frontiernet.net]
**Sent:** Thursday, June 28, 2012 3:32 PM
**To:** Wells, Roger
**Subject:** RE: Rasby/Pillen

Attached are my thoughts.  This sale quite simply feels wrong – in the method used to bring it about and in the value.  It is sick.  I did not do anything to deserve this treatment.  Attached are the thoughts that I would like to convey to those involved.  I would not involve myself in any business relationships or make false statements.  I hope that someday they make it right.

DR001407.2

**From:** Wells, Roger [mailto:rwells@mcgrathnorth.com]
**Sent:** Thursday, June 28, 2012 3:17 PM
**To:** 'Doug Rasby'
**Subject:** RE: Rasby/Pillen

I'm not sure why you would want to do this, but the agreement does not include any kind of mutual "non-disparagement" clause. ████████████████████████████████████████
████████████████████████

Roger W. Wells
McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska  68102
Phone (402) 341-3070
Fax (402) 952-1853
Cell (402) 681-5773
Home (402) 498-0941
rwells@mcgrathnorth.com
www.mcgrathnorth.com

**From:** Doug Rasby [mailto:ddrasby@frontiernet.net]
**Sent:** Thursday, June 28, 2012 3:06 PM
**To:** Wells, Roger
**Subject:** RE: Rasby/Pillen

If you are ok with this I am.  I do have a question though.  After all of this is done, could I express to Jim, Suzanne, Sarah and Brock the pain caused to me by the unilateral decisions that were made?  I don't think my soul can rest until I have the freedom from oppression to speak from my heart in a respectful way.

**From:** Wells, Roger [mailto:rwells@mcgrathnorth.com]
**Sent:** Thursday, June 28, 2012 2:50 PM
**To:** Doug and Deb Rasby
**Subject:** FW: Rasby/Pillen

Attached is a revised draft that I received from Moll.  Note that he has revised your release of Pillen and the entities.  I do not have a problem with this unless you think you have some kind of claim that you would assert in the future.  Moll is right...I transposed the Northern numbers.  I intend to tell Moll that the changes are fine and that he should correct the transposition...if you disagree, please let me know.  Thanks.

Roger W. Wells
McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska  68102
Phone (402) 341-3070
Fax (402) 952-1853
Cell (402) 681-5773
Home (402) 498-0941
rwells@mcgrathnorth.com
www.mcgrathnorth.com

**From:** Timothy L. Moll [mailto:TMoll@remboltlawfirm.com]
**Sent:** Thursday, June 28, 2012 1:44 PM

DR001408.2

**To:** Wells, Roger
**Subject:** Rasby/Pillen

Roger:

Your proposed changes to the Unit Purchase Agreement are fine in substance.  Please note the following:

1. I revised the release language to make it consistent for both parties.
2. I changed the reference to Jim Pillen as President to be "Authorized Signer".  He is president of some and member/manager of others.
3. The allocation is fine, except we believe the numbers for Northern Nance and Northern Plains are transposed.  I did not make any change pending your review.

A revised version of the agreement is attached for your review.  Please verify the allocation number and confirm that the attached form of the agreement is acceptable.  Once it is, we can make arrangements for signatures and transfer of funds.  Please provide wiring instructions for the account Ms. Rasby desires to receive the proceeds.  I am advised that Ms. Rasby is not holding any original certificates for her ownership interests.  Accordingly, I will forward an "Assignment Separate from Certificate" for the subject entities to be signed as part of the closing.   My hope is that we can have things finalized this afternoon and sign documents and transfer funds tomorrow.  Thank you.


**Timothy L. Moll, Attorney**
**tmoll@remboltlawfirm.com**

**Rembolt Ludtke LLP**
**1201 Lincoln Mall, Suite 102**
**Lincoln, Nebraska 68508**
**P: (402) 475-5100 ext 125**
**F: (402) 475-5087**
**Web:** www.remboltlawfirm.com

DISCLOSURE: In accordance with IRS Circular 230, please note the following with regard to any portion of the above message which involves federal tax issues: Unless expressly stated otherwise above, (1) nothing contained in this message is intended or written to be used or relied upon by any taxpayer for the purpose of avoiding penalties that may be imposed under the Internal Revenue Code; and (2) nothing contained in this message may be used to recommend, promote or market any federal tax transaction or matter.

WARNING/CAUTION: This e-mail and any files transmitted with it are strictly confidential and are intended solely for the use of the individual or entity to whom it is addressed. This communication may contain material protected by lawyer-client privilege. If you are not the intended recipient or the person responsible for delivering the e-mail to the intended recipient, be advised that you have received this e-mail in error and that any use, dissemination, forwarding, printing, or copying of this e-mail and any file attachments is strictly prohibited. If you have received this e-mail in error, please immediately notify us by a collect telephone call to (402) 475-5100 or by reply e-mail to the sender. You must destroy the original transmission and its contents.

This message and any attachments are confidential, may contain privileged information, and are intended solely for the recipient named above. If you are not the intended recipient, or a person responsible for delivery to the named recipient, you are notified that any review, distribution, dissemination or copying is prohibited. If you have received this message in error, you should notify the sender by return email and delete the message from your computer system.

The following statement is provided pursuant to U.S. Treasury Department Regulations: Any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code, nor should such advice be used or referred to in the promoting, marketing or recommending of any entity, investment plan or arrangement.

**DR001409.2**

This message and any attachments are confidential, may contain privileged information, and are intended solely for the recipient named above. If you are not the intended recipient, or a person responsible for delivery to the named recipient, you are notified that any review, distribution, dissemination or copying is prohibited. If you have received this message in error, you should notify the sender by return email and delete the message from your computer system.

The following statement is provided pursuant to U.S. Treasury Department Regulations: Any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code, nor should such advice be used or referred to in the promoting, marketing or recommending of any entity, investment plan or arrangement.

---

This message and any attachments are confidential, may contain privileged information, and are intended solely for the recipient named above. If you are not the intended recipient, or a person responsible for delivery to the named recipient, you are notified that any review, distribution, dissemination or copying is prohibited. If you have received this message in error, you should notify the sender by return email and delete the message from your computer system.

The following statement is provided pursuant to U.S. Treasury Department Regulations: Any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code, nor should such advice be used or referred to in the promoting, marketing or recommending of any entity, investment plan or arrangement.

DR001410.2

**Wells, Roger**

| | |
|---|---|
| **From:** | Doug Rasby <ddrasby@frontiernet.net> |
| **Sent:** | Wednesday, May 23, 2012 5:32 PM |
| **To:** | Wells, Roger; Hargens, William F. |
| **Subject:** | The situation as I see it |
| | |
| **Categories:** | Rasby |

The following communication is subject to attorney/client confidentiality.



There is only one aspect in which I see any hope: Pillen wants PST –

To clarify what a win would be for us:

1)     Stopping the dissolution of PST

2)     Stopping the manipulation of profits of PST, PST Milling and PST Gene Center that would benefit Jim Pillen disproportionately

a.     Changing the fees

b.     Moving any type of expenses from each of his businesses (including businesses in which he is the sole owner and businesses in which he has other partners) into these businesses that we jointly own

3)     Forcing a reasonable payment of distributions - enough to pay tax liabilities each year from each entity (just the payments of profits from PST, PST Milling and PST Gene Center would have covered this - but these bottom lines can be manipulated to move the profits to the entities in which we have debt - item #2 above)

We would like to cancel the call with the Kansas appraiser tomorrow.  We would use Frankel Zacharia if we proceed with this.  Could we use the time slot for the Kansas call to discuss these thoughts with both of you?

Thank you, both –

Deb

1

DR001431.2

**Wells, Roger**

| | |
|---|---|
| **From:** | Doug Rasby <ddrasby@frontiernet.net> |
| **Sent:** | Wednesday, May 23, 2012 5:32 PM |
| **To:** | Wells, Roger; Hargens, William F. |
| **Subject:** | The situation as I see it |

The following communication is subject to attorney/client confidentiality.

████████████████████████████████████████████████████████

████████ There is only one aspect in which I see any hope: Pillen wants PST - ████████████████████████████████████████

████████████████████████████████████████ on taken on ████████████████████████████████████████████████ esults in a

To clarify what a win would be for us:
1) Stopping the dissolution of PST
2) Stopping the manipulation of profits of PST, PST Milling and PST Gene Center that would benefit Jim Pillen disproportionately
   a. Changing the fees
   b. Moving any type of expenses from each of his businesses (including businesses in which he is the sole owner and businesses in which he has other partners) into these businesses that we jointly own
3) Forcing a reasonable payment of distributions - enough to pay tax liabilities each year from each entity (just the payments of profits from PST, PST Milling and PST Gene Center would have covered this – but these bottom lines can be manipulated to move the profits to the entities in which we have debt - item #2 above)

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

████████████████████████████████████████ We would like to cancel the call with the Kansas appraiser tomorrow.  We would use Frankel Zacharia if we proceed with this.  Could we use the time slot for the Kansas call to discuss these thoughts with both of you?
Thank you, both –
Deb

1

DR001432.2

## Wells, Roger

| | |
|---|---|
| **From:** | Doug Rasby <ddrasby@frontiernet.net> |
| **Sent:** | Friday, June 08, 2012 7:31 PM |
| **To:** | Wells, Roger |
| **Subject:** | The written offer - Rasby/Pillen |

The following communication is subject to attorney/client confidentiality.

I do not think that there is a signed Buy/Sell document anywhere to be found. None has materialized and the appraisal process has not followed its guidelines. (I think Sarah Pillen accidentally discarded all of these when the others were revised but were never signed.) Does LLC law address rights or restrictions on transfers of ownership? There is only one paragraph on page 8 of the LLC operating agreements that addresses this and it refers to a nonexistent Buy/Sell.



Thank you, Roger.

Deb

**From:** Doug Rasby [mailto:ddrasby@frontiernet.net]
**Sent:** Friday, June 08, 2012 3:52 PM
**To:** 'Wells, Roger'
**Subject:** RE: Rasby/Pillen

The following is subject to attorney/client confidentiality.
We have not heard back from Frankel Zacharia so that is the correct response – it may take some time.

**From:** Wells, Roger [mailto:rwells@mcgrathnorth.com]
**Sent:** Friday, June 08, 2012 3:29 PM
**To:** Doug and Deb Rasby
**Cc:** Hargens, William F.
**Subject:** FW: Rasby/Pillen

My response to Moll will be that I have not received a response from you.

1

DR00143342

Roger W. Wells
McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska  68102
Phone (402) 341-3070
Fax (402) 952-1853
Cell (402) 681-5773
Home (402) 498-0941
rwells@mcgrathnorth.com
www.mcgrathnorth.com

**From:** Timothy L. Moll [mailto:TMoll@remboltlawfirm.com]
**Sent:** Friday, June 08, 2012 2:57 PM
**To:** Wells, Roger
**Subject:** Rasby/Pillen

Roger:

Any response yet from your client regarding my email of a few days ago?  Thanks.

Timothy L. Moll, Attorney
tmoll@remboltlawfirm.com

Rembolt Ludtke LLP
1201 Lincoln Mall, Suite 102
Lincoln, Nebraska 68508
P: (402) 475-5100 ext 125
F: (402) 475-5087
Web: www.remboltlawfirm.com

DISCLOSURE: In accordance with IRS Circular 230, please note the following with regard to any portion of the above message which involves federal tax issues: Unless expressly stated otherwise above, (1) nothing contained in this message is intended or written to be used or relied upon by any taxpayer for the purpose of avoiding penalties that may be imposed under the Internal Revenue Code; and (2) nothing contained in this message may be used to recommend, promote or market any federal tax transaction or matter.

WARNING/CAUTION: This e-mail and any files transmitted with it are strictly confidential and are intended solely for the use of the individual or entity to whom it is addressed. This communication may contain material protected by lawyer-client privilege. If you are not the intended recipient or the person responsible for delivering the e-mail to the intended recipient, be advised that you have received this e-mail in error and that any use, dissemination, forwarding, printing, or copying of this e-mail and any file attachments is strictly prohibited. If you have received this e-mail in error, please immediately notify us by a collect telephone call to (402) 475-5100 or by reply e-mail to the sender. You must destroy the original transmission and its contents.

This message and any attachments are confidential, may contain privileged information, and are intended solely for the recipient named above. If you are not the intended recipient, or a person responsible for delivery to the named recipient, you are notified that any review, distribution, dissemination or copying is prohibited. If you have received this message in error, you should notify the sender by return email and delete the message from your computer system.

The following statement is provided pursuant to U.S. Treasury Department Regulations: Any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code, nor should such advice be used or referred to in the promoting, marketing or recommending of any entity, investment plan or arrangement.

DR00103348

**Wells, Roger**

| | |
|---|---|
| **From:** | Doug Rasby <ddrasby@frontiernet.net> |
| **Sent:** | Thursday, August 25, 2011 7:05 AM |
| **To:** | Wells, Roger |
| **Subject:** | Update |

Good morning Roger,

After receiving no reply to another request for information earlier in the day on Monday, I sent the email below to Jim Pillen on Monday evening (prompted by our meeting with you, a great deal of prayer and contemplation). I realize that the law can do only so much and I keep coming back to the one true and firm foundation in life – faith in God. I am quite thankful that we were directed to you – it is certainly one of the ways in which we have been taken care of through prayer.

I received the requested information on Wednesday.

From the information received I was able to discover what happened to the funds. There was inaccurate accounting after I left which I think I will be able to have corrected.

█████████████████████████████████████████████

Best regards,

Deb

**From:** Deb Rasby [mailto:debrasby@gmail.com]
**Sent:** Thursday, August 25, 2011 6:47 AM
**To:** Doug Rasby
**Subject:** Fwd: Current thoughts

---------- Forwarded message ----------
From: **Deb Rasby** <debrasby@gmail.com>
Date: Mon, Aug 22, 2011 at 5:50 PM
Subject: Current thoughts
To: "Jim D. Pillen" <jimdp@pstdanbred.com>

Jim,

When money disappears and requested financial information about it is not forthcoming the appearance is that something is wrong.

I may have been overly confidant to believe in the words that you have spoken - that "everything would be alright". I hope that I wasn't mistaken. I took you to be a man of integrity, a man of your word. I may have also

1

DR001435.2

been overly confidant that you appreciated what I have given up to allow you freedom from conflict with me. It is up to you alone to make decisions according to your principles. As Bob Dylan's lyrics say: "It may be the devil or it may be the Lord, but you're gonna have to serve somebody." Ultimately, the only thing that matters from either side of the fence is who we serve, who we are and the actions that reflect this. We are told that what we do to others is what we do to Jesus. I keep this in mind in my actions that involve you and believed the same would be true of you in your actions toward me. The highest and best vision for our future is to be the people God wants us to be. If good prevails we will both win, if not, we will both lose. The winning and losing pertains to tangible and intangible things.

I have given much thought to the possible sale of my ownership interests. I understand your feelings that run deep for PST. Mine have for 18 years as well. I had always viewed myself as a business partner, not an employee, but I understand from John that this was not your view. I don't understand this way of thinking, but I have contemplated it nevertheless. With respect for your feelings I told John that I would be open to visiting with you about it.

I believe that it would be the best if you and I meet but if you would like me to continue to meet with John I will. Let me know. I hope that my confidence in you has not been misplaced.


Deb

2

DR001436.2

Wells, Roger

| | |
|---|---|
| **From:** | Doug Rasby <ddrasby@frontiernet.net> |
| **Sent:** | Tuesday, September 13, 2011 7:09 PM |
| **To:** | Wells, Roger |
| **Subject:** | RE: Update |

PST does not get a management fee of any kind from the two businesses for which Jim has had PST begin paying office expenses.  It isn't a huge amount – it amounted to about $10,000 for the 1st half of 2011.   It makes me wonder what other expenses are now being paid by PST that I am unable to tell from lump sum figures on the income statement.  We did discuss the buy-out and Jim's negotiator said that Premium Standard sold using a multiplier of 6 ½ because of their packing plant operation.  (They were also involved in odor issues with neighbors though, which I would think would have an effect on selling price.)  Also, I found an article that addresses the minority shareholder squeeze that I forwarded to you.  I wondered if there was validity to its statement that starting a new company and taking customers from the existing one was illegal.
Thanks,
Deb

**From:** Wells, Roger [mailto:rwells@mcgrathnorth.com]
**Sent:** Tuesday, September 13, 2011 5:55 PM
**To:** 'Doug Rasby'
**Subject:** RE: Update

███████████████████████████████████████████████████

I will put together a letter for you to send to Jim based on all this.  The colleague that I mentioned is one of our litigators…ie the attorney that would file the lawsuit.  Was there any discussion on buy out or price?

Roger W. Wells
McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska  68102
Phone (402) 341-3070
Fax (402) 952-1853
Cell (402) 681-5773
Home (402) 498-0941
rwells@mcgrathnorth.com
www.mcgrathnorth.com

**From:** Doug Rasby [mailto:ddrasby@frontiernet.net]
**Sent:** Friday, September 09, 2011 4:11 PM
**To:** Wells, Roger
**Subject:** Update

Hello Roger,
I had a meeting this week with Jim Pillen and his negotiator, John Meyer.  Although no tempers flared Jim did mention the possibility of "blowing up" PST. I asked if the management fees for the farms in which I had an ownership would go away.  He said some new management company would take over.  I was thinking that with fiduciary responsibilities

1

**DR001437.2**

there was some right of the minority owner to go with the majority owner in the establishment of a new management company. (It was not stated but perhaps this would be owned by his children and I would be gone.) Also, he is not changing his stance on paying the distributions that he owes for June and July until the August financial statements are completed, even with the calculation error solved. He has also allocated office expenses such as internet, postage, copier, and office supplies from the businesses in which he is the sole owner to PST. Do you think that it would be a good idea for us to meet with the colleague who you mentioned had some dealings in similar situations? Are there any statements of rights that I can make to Jim?

Thank you, Roger.

Deb Rasby

Note: This information has been created for my attorney and is privileged client/attorney communication.

_____

This message and any attachments are confidential, may contain privileged information, and are intended solely for the recipient named above. If you are not the intended recipient, or a person responsible for delivery to the named recipient, you are notified that any review, distribution, dissemination or copying is prohibited. If you have received this message in error, you should notify the sender by return email and delete the message from your computer system.

The following statement is provided pursuant to U.S. Treasury Department Regulations: Any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code, nor should such advice be used or referred to in the promoting, marketing or recommending of any entity, investment plan or arrangement.

DR001438.2

**Wells, Roger**

| | |
|---|---|
| **From:** | Doug Rasby <ddrasby@frontiernet.net> |
| **Sent:** | Thursday, October 06, 2011 11:01 AM |
| **To:** | Wells, Roger |
| **Subject:** | Update and questions |
| **Attachments:** | 10-06-2011 10;13;40AM.pdf |

This information has been created for my attorney and is privileged client/attorney communication.

Good morning Roger:
All that you warned us of is transpiring: continued withholding of distributions and increasing salaries tenfold (by $1MM/year). I am still trying to smooth the waters with Jim but no success yet. It is probably time for a letter from you. Can we meet with both you and your colleague who would help handle litigation if it should come to that prior to sending your letter? If we could also meet with the investment banker on the same day that would work well. Doug and I left our last meeting feeling disheartened, thinking that the reality is that there was not much that we could legally do. Maybe we just need to come to terms with that but Doug continues to research via the internet and we want to assure ourselves that we have done all that we could to help ourselves and to protect others down the road. Jim has subtly and not so subtly bullied many people. In fact, he is doing this to our mutual tax accountant right now. I feel that if we can give him a bad experience maybe he will think twice about doing this to anyone else. It will cost us but if there is a chance of good prevailing we will consider pursuing it. Attached is an article that Doug found. Our questions are: ██████████████████████████████████████████████████████████████████

the majority shareholder? My expectation when signing the buy-sell in 2008 and changing the document to allow continued ownership upon retirement was that there might be some changes that we would discuss but that the operations that we had established and that provided good profitability would continue and not be manipulated to hurt me and benefit him. Increasing salaries tenfold and cutting off cash distributions would have seemed as unreasonable then as it does now.
Thank you Roger,
Deb Rasby

1

DR001441.2

EDITORIAL > by Matthew W. McCullough



# Legal Brief

## Recognizing Minority Shareholder Oppression

As the economy continues its struggles, minority shareholders in closely held corporations remain at risk of oppression at the hands of majority shareholders. Just as in good economic times when majority shareholders may desire to maximize their returns at the expense of minority shareholders, the current tough economic climate facing many businesses creates incentive on the part of majority shareholders to protect their own shrinking returns by using their power to take actions detrimental to minority shareholders.

Majority shareholders have a fiduciary obligation to minority shareholders of the utmost good faith and loyalty, and have a duty to protect the interests of the minority. Therefore, a policy of corporate governance, where the objective is the denial of benefits to the minority interest, runs afoul of this fairness standard and calls to question the majority's fulfillment of its fiduciary duty to the other shareholders. This is especially true in a closely held corporation where shares are not publicly held and a fair market is rarely available.

*Nebraska ?* ~~Pennsylvania~~ courts have held that majority shareholders' duty to the minority prevents them from using their power in such a way as to exclude the minority from their proper share of the benefits accruing from the enterprise. The failure of majority shareholders to fulfill their duty to minority shareholders often results in what is known as "oppression."

Oppressive actions refer to conduct that substantially defeats the <u>"reasonable expectations"</u> held by minority shareholders in committing their capital to the particular enterprise. A majority shareholder may not use the corporate process to deny minority shareholders the right to participate in the corporation or to exclude minority shareholders from their proper share of benefits accruing from the enterprise.

A "freeze-out" or "squeeze-out" occurs in a closely held corporation when a minority shareholder is removed from office or his power or compensation is substantially diminished, in an attempt to exclude the shareholder from any meaningful role in the corporation or deny him benefits from the corporation. Such an attempt by a majority shareholder to freeze-out or squeeze-out a minority shareholder constitutes a breach of this fiduciary duty. Tactics employed against a minority shareholder to achieve such a freeze-out include, but are not limited to:

* the withholding of dividends;
* terminating the employment or reducing compensation of the minority or their family members;
* paying excessive salaries to majority shareholders;
* withholding information relating to the operation of the corporation;
* appropriation of corporate assets to other interests benefiting the majority;
* refusing to enforce contracts that are beneficial to the corporation because the enforcement of those contracts would be personally detrimental to the majority;
* siphoning off corporate assets by entering into leases or loans with terms favorable to the majority while at the same time detrimental to the minority;
* denying minority shareholders appraisal rights; and
* failure to hold meetings and excluding the minority from a meaningful role in the corporate decision-making.

Recognizing minority shareholder oppression is one thing. Preventing or remedying oppression is another. Prevention is limited due to the inherent qualities of minority shareholder status — lack of controlling interest and illiquidity of minority shares. The most effective means to prevent minority oppression is careful negotiation of the shareholder agreement at the outset.

Unfortunately, litigation often results. In addition to derivative actions brought on behalf of the corporation, direct claims by minority shareholders against majority shareholders include breach of fiduciary duties/oppression, breach of a shareholder or stock purchase agreement, breach of an employment agreement and/or wrongful discharge. Remedies generally are designed to restore to the minority the benefits reasonably expected but not received. Depending upon the circumstances, remedies available to minority shareholders include inspection of corporate books, accountings, forced payment of dividends or other distributions, forced appraisal or buyout of minority shares, recovery of lost salary and other forms of compensation, and relief from a noncompete agreement. In extreme cases, the corporation may be forced to dissolve. ☆

*For more information, contact Matthew W. McCullough at MacDonald, Illig, Jones & Britton LLP at 814/870-7602 or mmcullough@ mijb.com*



Matthew W. McCullough is a senior partner at MacDonald, Illig, Jones & Britton LLP. His practice consists primarily of labor and employment advice and litigation for employers, as well as a commercial litigation practice involving a wide range of contract and other business disputes in state and federal courts.

DR001442.2

**Wells, Roger**

| | |
|---|---|
| **From:** | Priluck, Noah |
| **Sent:** | Monday, April 16, 2012 10:55 AM |
| **To:** | Hargens, William F. |
| **Subject:** | RE: Rasby / dividends in a close corporation |
| **Categories:** | Rasby |

O'Neal & Thompson's Close Corporations & LLC: Law & Practice (3d ed.); see also O'Neal & Thompson's Oppression of Minority Shareholder & LLC Members (2d ed.) (largely the same).

Noah Priluck
McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska 68102
Phone: 402-341-3070
Fax: 402-341-0216
npriluck@mcgrathnorth.com
www.mcgrathnorth.com

---

**From:** Hargens, William F.
**Sent:** Monday, April 16, 2012 10:53 AM
**To:** Priluck, Noah
**Subject:** Re: Rasby / dividends in a close corporation

What's your support for the "in general" summary?

William F. Hargens
McGrath, North, Mullin & Katz PC LLO

-----Original message-----
**From:** "Priluck, Noah" <NPriluck@mcgrathnorth.com>
**To:** "Hargens, William F." <whargens@mcgrathnorth.com>
**Sent:** Mon, Apr 16, 2012 15:45:50 GMT+00:00
**Subject:** Rasby / dividends in a close corporation

Bill,

An update on the close corporation dividend issue:

1. ████████████████████████████████████████ Courts will compel payment of dividends  against arbitrary refusal to pay.  If the directors act fraudulently or in bad faith in withholding dividends, courts will grant equitable relief to force payment.  Where fraud or bad faith is absent but directors unreasonably or arbitrarily refuse to pay, the decisions are in conflict.

2. **In Nebraska**: There is somewhat helpful precedent in Nebraska.

    a. Upah v. Ancona Bros. Co., 246 Neb. 585; 521 N.W.2d 895 (1994), disapproved on other grounds by Welsch v. Graves, 255 Neb. 62; 582 N.W.2d 312 (1998).

1

**DR001467.2**

Plaintiff, a minority shareholder, sued the majority shareholders in a close corporation under various causes of action including failure to pay dividends.  The dividend issue was largely unaddressed by the court, but the court noted in passing that a proceeding to compel payment of dividends is equitable in nature.  In other words, it seems plaintiffs can bring such actions in Nebraska.  However, on the whole, the court did not address the dividend issue.  [[The court reversed and remanded after finding the plaintiff failed to state a claim for civil conspiracy and that the applicable statutes of limitations barred all causes of action against individual defendants except for a conversion claim.]]

b.  <u>Allen v. White</u>, 103 Neb. 256; 171 N.W. 52 (1919).

The articles were amended so the original method of dividing profits by dividends on stock was changed to make the amount of a stockholder's business transactions with the corporation a basis for distribution of profits.  Although the court's decision may have been based in part on an indication that the amendment was never presented, considered, or passed at a stockholder's meeting, the amendment was void because it changed vested rights in the articles and by-laws of the corporation.

c.  <u>Hueftle v. Farmers Elevator</u>, 145 Neb. 424; 16 N.W.2d 855 (1944).

In a case similar to <u>Allen</u>, the court determined that a majority of the stockholders could not amend the articles of a general corporation to change it into a co-operative corporation and therefore could not change the distribution of dividends from being based on stock ownership to being based on patronage.

Noah Priluck
McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska 68102
Phone: 402-341-3070
Fax: 402-341-0216
npriluck@mcgrathnorth.com
www.mcgrathnorth.com

DR001468.2

**Wells, Roger**

| | |
|---|---|
| **From:** | Priluck, Noah |
| **Sent:** | Monday, April 16, 2012 10:46 AM |
| **To:** | Hargens, William F. |
| **Subject:** | Rasby / dividends in a close corporation |
| **Attachments:** | Hueftle.pdf; Upah.pdf; Allen.pdf |
| | |
| **Categories:** | Rasby |

Bill,

An update on the close corporation dividend issue:

1. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Courts will compel payment of dividends against arbitrary refusal to pay. If the directors act fraudulently or in bad faith in withholding dividends, courts will grant equitable relief to force payment. Where fraud or bad faith is absent but directors unreasonably or arbitrarily refuse to pay, the decisions are in conflict.

2. <u>In Nebraska</u>: There is somewhat helpful precedent in Nebraska.

    a. <u>Upah v. Ancona Bros. Co.</u>, 246 Neb. 585; 521 N.W.2d 895 (1994), <u>disapproved on other grounds by Welsch v. Graves</u>, 255 Neb. 62; 582 N.W.2d 312 (1998).

       Plaintiff, a minority shareholder, sued the majority shareholders in a close corporation under various causes of action including failure to pay dividends. The dividend issue was largely unaddressed by the court, but the court noted in passing that a proceeding to compel payment of dividends is equitable in nature. In other words, it seems plaintiffs can bring such actions in Nebraska. However, on the whole, the court did not address the dividend issue. [[The court reversed and remanded after finding the plaintiff failed to state a claim for civil conspiracy and that the applicable statutes of limitations barred all causes of action against individual defendants except for a conversion claim.]]

    b. <u>Allen v. White</u>, 103 Neb. 256; 171 N.W. 52 (1919).

       The articles were amended so the original method of dividing profits by dividends on stock was changed to make the amount of a stockholder's business transactions with the corporation a basis for distribution of profits. Although the court's decision may have been based in part on an indication that the amendment was never presented, considered, or passed at a stockholder's meeting, the amendment was void because it changed vested rights in the articles and by-laws of the corporation.

    c. <u>Hueftle v. Farmers Elevator</u>, 145 Neb. 424; 16 N.W.2d 855 (1944).

       In a case similar to <u>Allen</u>, the court determined that a majority of the stockholders could not amend the articles of a general corporation to change it into a co-operative corporation and therefore could not change the distribution of dividends from being based on stock ownership to being based on patronage.

Noah Priluck
McGrath North Mullin & Kratz, PC LLO

DR001551.2

**Wells, Roger**

| | |
|---|---|
| **From:** | Wells, Roger |
| **Sent:** | Tuesday, October 11, 2011 5:20 PM |
| **To:** | 'Doug Rasby' |
| **Subject:** | RE: Meeting with investment banker and also with you and your colleague? |

I have not heard back yet from Eastwood, and Bill Hargens (one of our senior litigators) is looking at the information...and I will brief him in detail before we meet.

I read your email from last week and the attached article.  The article doesn't say anything new that we haven't discussed...maybe I haven't been clear. ████████████████████████████████████

████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████

Roger W. Wells
McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska  68102
Phone (402) 341-3070
Fax (402) 952-1853
Cell (402) 681-5773
Home (402) 498-0941
rwells@mcgrathnorth.com
www.mcgrathnorth.com

**From:** Doug Rasby [mailto:ddrasby@frontiernet.net]
**Sent:** Tuesday, October 11, 2011 8:53 AM
**To:** Wells, Roger
**Subject:** Meeting with investment banker and also with you and your colleague?

Note: This information has been created for my attorney and is privileged client/attorney communication.

Good morning Roger,
Have you had any luck reaching your investment banker friend?  We hope that this meeting is a possibility soon and that we can do it on a day in the near future in which we can also meet with you and your colleague who handles situations such as ours.  I am forwarding my most current email communication with Jim Pillen.  Last Friday he had promised to pay the outstanding distributions after we met with our tax accountant to clear up an S Corp related issue.  We met with Rick yesterday and upon leaving the meeting he would not commit to paying the distribution.  He said "maybe we'll pay them annually".  I followed up with an email reminding him of his promise on Friday.  I will also forward another email to you that I sent him this morning.
Deb Rasby

**From:** Deb Rasby [mailto:debrasby@gmail.com]
**Sent:** Tuesday, October 11, 2011 8:42 AM
**To:** Doug Rasby
**Subject:** Fwd: Your word?

DR001629.2

---------- Forwarded message ----------
From: <debrasby@gmail.com>
Date: Tue, Oct 11, 2011 at 7:17 AM
Subject: Re: Your word?
To: Jim Pillen <jimdp@pstdanbred.com>

Well, are you or aren't you Jim? Isn't it time to let go of the anger?

Sent from my BlackBerry Smartphone provided by Alltel

==================================================================

**From:** "Jim D. Pillen" <jimdp@pstdanbred.com>
**Date:** Tue, 11 Oct 2011 11:59:07 +0000
**To:** Deb Rasby<debrasby@gmail.com>
**Subject:** RE: Your word?


Deb

Please don't plan on coming by the office.

Jim


**From:** Deb Rasby [mailto:debrasby@gmail.com]
**Sent:** Monday, October 10, 2011 6:39 PM
**To:** Jim D. Pillen
**Subject:** Your word?


Jim,


You told me on Friday that the PST distribution would be paid after we met with Rick today and took care of the receivable.  Per the discussion today we have agreed that the receivable will be taken care of by including this in my W-2 earnings.  If the PST distributions aren't paid this means that you are not a man of your word.


I will be in tomorrow to pick up the check.


Deb

DR001630.2

**Wells, Roger**

| | |
|---|---|
| **From:** | Wells, Roger |
| **Sent:** | Saturday, April 14, 2012 10:00 AM |
| **To:** | 'Doug Rasby'; Hargens, William F. |
| **Subject:** | RE: Pillen offer |
| | |
| **Categories:** | Rasby |

We did receive it, and will go through the material this weekend

Roger W. Wells
McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska  68102
Phone (402) 341-3070
Fax (402) 952-1853
Cell (402) 681-5773
Home (402) 498-0941
rwells@mcgrathnorth.com
www.mcgrathnorth.com

---

**From:** Doug Rasby [mailto:ddrasby@frontiernet.net]
**Sent:** Saturday, April 14, 2012 8:53 AM
**To:** Wells, Roger; Hargens, William F.
**Subject:** Pillen offer

The following is subject to attorney/client confidentiality:

I hope that you received my email containing Jim Pillen's offer which requires a response by Friday, April 20th. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮Pillen will continue to operate in a way that will harm me, no matter how profitable an enterprise happens to be. As in this case, Pillen uses unscrupulous tactics.

With regard to PST no longer meeting the business objectives, the work that is performed will still need to be done for all of the business entities.  This includes production reporting and analysis, decision making on production practices, marketing strategies, financing needs, and personnel requirements; handling human resource functions, accounts payable, accounts receivable, preparation of financial statements, and all of the administrative work that is needed to operate a 50,000 sow operation.  The same staff will handle the work.

The only change has been in the ownership of one of the business entities from 1/3 Jim Pillen to 100% Jim Pillen.  One of our other pork production business entities, PC West, is also owned entirely by Jim Pillen.  PC West was our first farm and the original ownership was 50% Pillen and 50% Mike Wilke.  Management fees have always been paid.  Pillen and Wilke split in the late 90's, I believe.  The management fee structure did not change.

I don't know if the law looks at reasonable business practices when holding onto cash to reinvest in the business when there is no debt - not distributing even a minimum amount of net profit to cover income taxes.  We do know that Pillen could come up with schemes to use cash for the business, if only to squeeze me.  Two of the

1

**DR001637.2**

businesses named in the letter for which cash distributions of net profits will be discontinued, PST Gene Center and PST Milling, have no debt.  Net profits have been distributed for many years, as they have for PST.

From what I have learned a bottom line reasonable offer might have been 4 years EBITDA or even tangible net value.   As you know, this year we are experiencing the most profitable year in our business' history. The balance sheet values Jim is using for N. Nance, N. Plains and PST Gene Center are old and low. Dr. Griess was beaten down by the time he left and did not question the balance sheet value he was paid for PST Gene Center (I was not included in any of these discussions but Jim said there was little discussion).  Like me, Dr. Griess simply wanted out. In negotiating with Bob Gottsch's widow and Brett Gottsch (who is in the midst of a nasty divorce) on the purchase of GGP, LLC I don't know all of the dynamics that would possess them to use such a low value.  I do know that Bob Gottsch's widow is not a business woman and the death of her husband was recent.  I have also heard that Brett Gottsch was doing whatever he could to minimize the amount he would have to give his ex-wife.

I will need your help to respond by April 20th.

Thanks,

Deb Rasby

DR001638.2

**Wells, Roger**

| | |
|---|---|
| **From:** | Wells, Roger |
| **Sent:** | Tuesday, January 13, 2015 8:41 AM |
| **To:** | 'Deb Rasby' |
| **Cc:** | Hargens, William F. |
| **Subject:** | RE: Question concerning possible legal services |

Deb, it is good to hear from you, and I hope all is well with you and Doug. ████████████████

████████████████████████████████████████████████████████████

-Roger

Roger W. Wells
Attorney

Phone: 402.633.1453
Mobile: 402.681.5773
Fax: 402.952.1853
Email address: rwells@mcgrathnorth.com

McGrath | North First National Tower | Suite 3700 | 1601 Dodge St. | Omaha, NE 68102 | www.mcgrathnorth.com

**From:** Deb Rasby [mailto:debrasby@gmail.com]
**Sent:** Wednesday, January 07, 2015 3:34 PM
**To:** Wells, Roger; Hargens, William F.
**Subject:** Question concerning possible legal services

Dear Roger and Bill,

In 2011/2012 I consulted with you concerning the forced sale of my business interests to Jim Pillen. I was appreciative of your expertise. To refresh your memory, I ended up selling my interests under duress at values much lower than those calculated by several certified independent appraisers. Two of the certified appraisals had been based on pretty conservative figures and a third had been contracted directly by Pillen a year earlier.

I sold for low ball values calculated by an accountant with whom Pillen was associated and who was not an appraiser. I did this because of intimidation by Pillen - from email communications and conversations with him and because of the fear caused by his discontinuation of profit distributions from the businesses in which I had ownership interests. (Several of the businesses had been debt free and distributing profits for over a decade. The other businesses were profitable as well and distributions to cover our tax liability had also been made in prior years.)

DR001689.2

███████████████████████████████████████████████████

███████████████████████████████████████████████████

In a conversation with Ken Morrison, who just passed away, I learned that within a few months of Pillen's purchase of my shares at a discounted value he also purchased Morrison's daughter's shares in similar businesses for either 3 times the annual revenues or 3 times the annual income.

███████████████████████████████████████████████████

Thank you very much for your help and I look forward to hearing from you at your earliest convenience.


Sincerely,


Deb Rasby

727-207-0221

debrasby@gmail.com

DR001690.2

**Wells, Roger**

| | |
|---|---|
| **From:** | Wells, Roger |
| **Sent:** | Thursday, June 28, 2012 3:17 PM |
| **To:** | 'Doug Rasby' |
| **Subject:** | RE: Rasby/Pillen |

I'm not sure why you would want to do this, but the agreement does not include any kind of mutual "non-disparagement" clause. ████████████████████████████████████████████████
███████████████████

Roger W. Wells
McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska  68102
Phone (402) 341-3070
Fax (402) 952-1853
Cell (402) 681-5773
Home (402) 498-0941
rwells@mcgrathnorth.com
www.mcgrathnorth.com

**From:** Doug Rasby [mailto:ddrasby@frontiernet.net]
**Sent:** Thursday, June 28, 2012 3:06 PM
**To:** Wells, Roger
**Subject:** RE: Rasby/Pillen

If you are ok with this I am.  I do have a question though.  After all of this is done, could I express to Jim, Suzanne, Sarah and Brock the pain caused to me by the unilateral decisions that were made?  I don't think my soul can rest until I have the freedom from oppression to speak from my heart in a respectful way.

**From:** Wells, Roger [mailto:rwells@mcgrathnorth.com]
**Sent:** Thursday, June 28, 2012 2:50 PM
**To:** Doug and Deb Rasby
**Subject:** FW: Rasby/Pillen

Attached is a revised draft that I received from Moll.  Note that he has revised your release of Pillen and the entities. ████████████████████████████████████████████████
█████████  Moll is right...I transposed the Northern numbers.  I intend to tell Moll that the changes are fine and that he should correct the transposition...if you disagree, please let me know.  Thanks.

Roger W. Wells
McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska  68102
Phone (402) 341-3070
Fax (402) 952-1853
Cell (402) 681-5773
Home (402) 498-0941
rwells@mcgrathnorth.com
www.mcgrathnorth.com

1

**DR001736.2**

**From:** Timothy L. Moll [mailto:TMoll@remboltlawfirm.com]
**Sent:** Thursday, June 28, 2012 1:44 PM
**To:** Wells, Roger
**Subject:** Rasby/Pillen

Roger:

Your proposed changes to the Unit Purchase Agreement are fine in substance.  Please note the following:

1. I revised the release language to make it consistent for both parties.
2. I changed the reference to Jim Pillen as President to be "Authorized Signer".  He is president of some and member/manager of others.
3. The allocation is fine, except we believe the numbers for Northern Nance and Northern Plains are transposed.  I did not make any change pending your review.

A revised version of the agreement is attached for your review.  Please verify the allocation number and confirm that the attached form of the agreement is acceptable.  Once it is, we can make arrangements for signatures and transfer of funds.  Please provide wiring instructions for the account Ms. Rasby desires to receive the proceeds.  I am advised that Ms. Rasby is not holding any original certificates for her ownership interests.  Accordingly, I will forward an "Assignment Separate from Certificate" for the subject entities to be signed as part of the closing.   My hope is that we can have things finalized this afternoon and sign documents and transfer funds tomorrow.  Thank you.


**Timothy L. Moll, Attorney**
tmoll@remboltlawfirm.com

**Rembolt Ludtke LLP**
**1201 Lincoln Mall, Suite 102**
**Lincoln, Nebraska 68508**
**P: (402) 475-5100 ext 125**
**F: (402) 475-5087**
**Web:** www.remboltlawfirm.com

DISCLOSURE: In accordance with IRS Circular 230, please note the following with regard to any portion of the above message which involves federal tax issues: Unless expressly stated otherwise above, (1) nothing contained in this message is intended or written to be used or relied upon by any taxpayer for the purpose of avoiding penalties that may be imposed under the Internal Revenue Code; and (2) nothing contained in this message may be used to recommend, promote or market any federal tax transaction or matter.

WARNING/CAUTION: This e-mail and any files transmitted with it are strictly confidential and are intended solely for the use of the individual or entity to whom it is addressed. This communication may contain material protected by lawyer-client privilege. If you are not the intended recipient or the person responsible for delivering the e-mail to the intended recipient, be advised that you have received this e-mail in error and that any use, dissemination, forwarding, printing, or copying of this e-mail and any file attachments is strictly prohibited. If you have received this e-mail in error, please immediately notify us by a collect telephone call to (402) 475-5100 or by reply e-mail to the sender. You must destroy the original transmission and its contents.


This message and any attachments are confidential, may contain privileged information, and are intended solely for the recipient named above. If you are not the intended recipient, or a person responsible for delivery to the named recipient, you are notified that any review, distribution, dissemination or copying is prohibited. If you have received this message in error, you should notify the sender by return email and delete the message from your computer system.

The following statement is provided pursuant to U.S. Treasury Department Regulations: Any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot

DR001737.2

be used, for the purpose of avoiding penalties under the Internal Revenue Code, nor should such advice be used or referred to in the promoting, marketing or recommending of any entity, investment plan or arrangement.

DR001738.2

**Wells, Roger**

| | |
|---|---|
| **From:** | Wells, Roger |
| **Sent:** | Friday, June 29, 2012 9:22 AM |
| **To:** | 'Doug Rasby' |
| **Subject:** | RE: Rasby/Pillen |

If you want to send this to Jim, ok.  I would recommend that you not send it to others.

Roger W. Wells
McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska  68102
Phone (402) 341-3070
Fax (402) 952-1853
Cell (402) 681-5773
Home (402) 498-0941
rwells@mcgrathnorth.com
www.mcgrathnorth.com

**From:** Doug Rasby [mailto:ddrasby@frontiernet.net]
**Sent:** Thursday, June 28, 2012 3:32 PM
**To:** Wells, Roger
**Subject:** RE: Rasby/Pillen

Attached are my thoughts.  This sale quite simply feels wrong – in the method used to bring it about and in the value.  It is sick.  I did not do anything to deserve this treatment.  Attached are the thoughts that I would like to convey to those involved.  I would not involve myself in any business relationships or make false statements.  I hope that someday they make it right.

**From:** Wells, Roger [mailto:rwells@mcgrathnorth.com]
**Sent:** Thursday, June 28, 2012 3:17 PM
**To:** 'Doug Rasby'
**Subject:** RE: Rasby/Pillen

I'm not sure why you would want to do this, but the agreement does not include any kind of mutual "non-disparagement" clause.

Roger W. Wells
McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska  68102
Phone (402) 341-3070
Fax (402) 952-1853
Cell (402) 681-5773
Home (402) 498-0941
rwells@mcgrathnorth.com
www.mcgrathnorth.com

1

**From:** Doug Rasby [mailto:ddrasby@frontiernet.net]
**Sent:** Thursday, June 28, 2012 3:06 PM
**To:** Wells, Roger
**Subject:** RE: Rasby/Pillen

If you are ok with this I am.  I do have a question though.  After all of this is done, could I express to Jim, Suzanne, Sarah and Brock the pain caused to me by the unilateral decisions that were made?  I don't think my soul can rest until I have the freedom from oppression to speak from my heart in a respectful way.

**From:** Wells, Roger [mailto:rwells@mcgrathnorth.com]
**Sent:** Thursday, June 28, 2012 2:50 PM
**To:** Doug and Deb Rasby
**Subject:** FW: Rasby/Pillen

Attached is a revised draft that I received from Moll.  Note that he has revised your release of Pillen and the entities.  I do not have a problem with this unless you think you have some kind of claim that you would assert in the future.  Moll is right…I transposed the Northern numbers.  I intend to tell Moll that the changes are fine and that he should correct the transposition…if you disagree, please let me know.  Thanks.

Roger W. Wells
McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska  68102
Phone (402) 341-3070
Fax (402) 952-1853
Cell (402) 681-5773
Home (402) 498-0941
rwells@mcgrathnorth.com
www.mcgrathnorth.com

**From:** Timothy L. Moll [mailto:TMoll@remboltlawfirm.com]
**Sent:** Thursday, June 28, 2012 1:44 PM
**To:** Wells, Roger
**Subject:** Rasby/Pillen

Roger:

Your proposed changes to the Unit Purchase Agreement are fine in substance.  Please note the following:

1. I revised the release language to make it consistent for both parties.
2. I changed the reference to Jim Pillen as President to be "Authorized Signer".  He is president of some and member/manager of others.
3. The allocation is fine, except we believe the numbers for Northern Nance and Northern Plains are transposed.  I did not make any change pending your review.

A revised version of the agreement is attached for your review.  Please verify the allocation number and confirm that the attached form of the agreement is acceptable.  Once it is, we can make arrangements for signatures and transfer of funds.  Please provide wiring instructions for the account Ms. Rasby desires to receive the proceeds.  I am advised that Ms. Rasby is not holding any original certificates for her ownership interests.  Accordingly, I will forward an "Assignment Separate from Certificate" for the subject entities to be signed as part of the closing.  My hope is that we can have things finalized this afternoon and sign documents and transfer funds tomorrow.  Thank you.

DR001740.2

Timothy L. Moll, Attorney
tmoll@remboltlawfirm.com

**Rembolt Ludtke LLP**
**1201 Lincoln Mall, Suite 102**
**Lincoln, Nebraska 68508**
**P: (402) 475-5100 ext 125**
**F: (402) 475-5087**
**Web:** www.remboltlawfirm.com

DISCLOSURE: In accordance with IRS Circular 230, please note the following with regard to any portion of the above message which involves federal tax issues: Unless expressly stated otherwise above, (1) nothing contained in this message is intended or written to be used or relied upon by any taxpayer for the purpose of avoiding penalties that may be imposed under the Internal Revenue Code; and (2) nothing contained in this message may be used to recommend, promote or market any federal tax transaction or matter.

WARNING/CAUTION: This e-mail and any files transmitted with it are strictly confidential and are intended solely for the use of the individual or entity to whom it is addressed. This communication may contain material protected by lawyer-client privilege. If you are not the intended recipient or the person responsible for delivering the e-mail to the intended recipient, be advised that you have received this e-mail in error and that any use, dissemination, forwarding, printing, or copying of this e-mail and any file attachments is strictly prohibited. If you have received this e-mail in error, please immediately notify us by a collect telephone call to (402) 475-5100 or by reply e-mail to the sender. You must destroy the original transmission and its contents.

---

This message and any attachments are confidential, may contain privileged information, and are intended solely for the recipient named above. If you are not the intended recipient, or a person responsible for delivery to the named recipient, you are notified that any review, distribution, dissemination or copying is prohibited. If you have received this message in error, you should notify the sender by return email and delete the message from your computer system.

The following statement is provided pursuant to U.S. Treasury Department Regulations: Any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code, nor should such advice be used or referred to in the promoting, marketing or recommending of any entity, investment plan or arrangement.

---

This message and any attachments are confidential, may contain privileged information, and are intended solely for the recipient named above. If you are not the intended recipient, or a person responsible for delivery to the named recipient, you are notified that any review, distribution, dissemination or copying is prohibited. If you have received this message in error, you should notify the sender by return email and delete the message from your computer system.

The following statement is provided pursuant to U.S. Treasury Department Regulations: Any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code, nor should such advice be used or referred to in the promoting, marketing or recommending of any entity, investment plan or arrangement.

DR001741.2

**Wells, Roger**

| | |
|---|---|
| **From:** | Wells, Roger |
| **Sent:** | Thursday, August 23, 2012 10:34 AM |
| **To:** | Doug and Deb Rasby |
| **Subject:** | FW: Rasby/Pillen |
| **Attachments:** | 20120814122154974.pdf |

Please read Moll's email below.

Roger W. Wells
McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska  68102
Phone (402) 341-3070
Fax (402) 952-1853
Cell (402) 681-5773

Home (402) 498-0941
rwells@mcgrathnorth.com <mailto:rwells@mcgrathnorth.com> www.mcgrathnorth.com
<http://www.mcgrathnorth.com/>


From: Timothy L. Moll [mailto:TMoll@remboltlawfirm.com]
Sent: Wednesday, August 22, 2012 9:59 AM
To: Wells, Roger
Subject: Rasby/Pillen


Roger:


I am writing to make you aware that since the transaction involving Jim Pillen and Deb Rasby was concluded back in July, Ms. Rasby has contacted my client multiple times per week (by phone and email and personal visits to his office) complaining that the price she received for her ownership interests was too low.  She is threatening to send a letter to the press "retracting" her support for Jim Pillen as a candidate for Regent at the University of Nebraska unless Mr. Pillen agrees to pay her another $1.75 million.  A copy of her proposed retraction letter is attached for your reference.


The transaction is concluded, Ms. Rasby has been paid, and per the agreement of the parties, all claims have been released.  Ms. Rasby is free to support or oppose whomever she pleases in the upcoming elections.  Mr. Pillen does not wish to discuss this matter further or receive emails, phone calls or correspondence from Ms. Rasby.  At your earliest convenience, please advise Ms. Rasby that communication with Jim Pillen or employees of Pillen Family Farms should stop immediately.  I do not see a need for Ms. Rasby to pursue this matter further, but if there is some need to contact Mr. Pillen, any such communications from Ms. Rasby should

1

**DR001747.2**

be directed to my office. If you are no longer representing Ms. Rasby, please let me know and I will forward this information to her directly. Thank you for your assistance. If you have any questions, please contact me.

Timothy L. Moll, Attorney
tmoll@remboltlawfirm.com <mailto:tmoll@remboltlawfirm.com>

Rembolt Ludtke LLP

1201 Lincoln Mall, Suite 102
Lincoln, Nebraska 68508
P: (402) 475-5100 ext 125
F: (402) 475-5087
Web: www.remboltlawfirm.com <http://www.remboltlawfirm.com>

DISCLOSURE: In accordance with IRS Circular 230, please note the following with regard to any portion of the above message which involves federal tax issues: Unless expressly stated otherwise above, (1) nothing contained in this message is intended or written to be used or relied upon by any taxpayer for the purpose of avoiding penalties that may be imposed under the Internal Revenue Code; and (2) nothing contained in this message may be used to recommend, promote or market any federal tax transaction or matter.

WARNING/CAUTION: This e-mail and any files transmitted with it are strictly confidential and are intended solely for the use of the individual or entity to whom it is addressed. This communication may contain material protected by lawyer-client privilege. If you are not the intended recipient or the person responsible for delivering the e-mail to the intended recipient, be advised that you have received this e-mail in error and that any use, dissemination, forwarding, printing, or copying of this e-mail and any file attachments is strictly prohibited. If you have received this e-mail in error, please immediately notify us by a collect telephone call to (402) 475-5100 or by reply e-mail to the sender. You must destroy the original transmission and its contents.

DR001748.2

### RETRACTION OF MY SUPPORT OF JIM PILLEN FOR UNIVERSITY OF NEBRASKA REGENT

**The University deserves to have leaders of high integrity, good values and upstanding character. Jim Pillen's actions that I have personally witnessed have not reflected these qualities. After 20 years of association with Jim Pillen I support David Copple for the University of Nebraska Regent position. The following explains why I am urging you _not_ to vote for Jim Pillen:**

- I have worked with Jim Pillen as a business partner and chief financial officer for 20 years. I retired from our business in a positive way, acknowledged by Jim Pillen in an email communication to all of the people working in our business.

- I wished to keep my minority share business interests in retirement in accordance with contractual agreements and personal promises.

- Jim Pillen wanted to acquire my business interests.

- Jim Pillen ignored our buy-sell agreements.

- Jim Pillen ignored values determined by two certified appraisers.

- Jim Pillen notified me by certified mail that my most profitable business was being liquidated. (In fact, after the forced sale of my 10% interests, only the name was changed - to Pillen Family Farms. The same services continue to be performed in the same location. Jim Pillen has attempted to rationalize that, because his ownership interests have increased in the entities for which these services are performed, the profitability of our service business - in which I had a 10% share - should be eliminated. I will also note that Jim Pillen's ownership interests had increased in prior years with no change to the profit structure of our service business.)

- Jim Pillen discontinued paying out profits from my other businesses. (Jim Pillen had cash flow from other businesses which would cover his taxes and would give him disposable income, I would have no funds with which to pay income taxes or have disposable income. Also note that profits had always been distributed in the past from these businesses and the businesses are profitable.)

- Jim Pillen gave me a low ball offer (43% of the certified appraised values - these appraised values were also in line with the values accepted by our business' lenders).

- Jim Pillen would not allow a discussion of the values. (No negotiation was allowed – I could either take the low offer or continue ownership under the new policy – which would eventually bankrupt me).

- My retirement finances were decimated.

- The experience was terrifying and revealed characteristics that would not serve the University of Nebraska well.

*If Jim Pillen would do this to acquire money from a 10% minority business partner of 20 years who treated him respectfully, what else he is capable of doing?*

DR001749.2

The Pillen Family Farms website (which is exactly the same as the former Progressive Swine Technologies website) shows the following values as the principles of Jim Pillen's businesses: "Do the right thing" and "Treat others the way you want to be treated". Although I worked and retired in a respectful and good way, and Jim Pillen acknowledged to me that I did an exceptional job, *I experienced the opposite*. I pleaded numerous times for Jim Pillen to honor his business principles, some of which are documented in emails. My pleas were ignored.

I asked Jim Pillen only for the lowest, most conservative appraised values on the pork production facilities for which I had put all of my personal assets at risk for many years – I would give him my other business interests for no value. This was ignored.

My attorneys said that I could have my day in court, and that Nebraska law against minority shareholder oppression is being strengthened in 2013. Unfortunately, a lawsuit would have taken years and likely more than our family's savings to pursue. I didn't have pockets deep enough to fight this.

I urge you _**not**_ to vote for Jim Pillen for Regent.

Deborah Rasby

DR001750.2

**Wells, Roger**

| | |
|---|---|
| **From:** | Wells, Roger |
| **Sent:** | Tuesday, September 13, 2011 5:55 PM |
| **To:** | 'Doug Rasby' |
| **Subject:** | RE: Update |

Deb. ████████████████████████████████████████████████████████████
████ You may have rights against Jim if he misappropriates assets from PST or otherwise breaches his duties
████████████████████████████████████████████████████ Help me understand
the allocation...Does PST manage these businesses?

I will put together a letter for you to send to Jim based on all this.  The colleague that I mentioned is one of our litigators...ie the attorney that would file the lawsuit.  Was there any discussion on buy out or price?

Roger W. Wells
McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska  68102
Phone (402) 341-3070
Fax (402) 952-1853
Cell (402) 681-5773
Home (402) 498-0941
rwells@mcgrathnorth.com
www.mcgrathnorth.com

**From:** Doug Rasby [mailto:ddrasby@frontiernet.net]
**Sent:** Friday, September 09, 2011 4:11 PM
**To:** Wells, Roger
**Subject:** Update

Hello Roger,
I had a meeting this week with Jim Pillen and his negotiator, John Meyer.  Although no tempers flared Jim did mention the possibility of "blowing up" PST.  I asked if the management fees for the farms in which I had an ownership would go away.  He said some new management company would take over.  I was thinking that with fiduciary responsibilities there was some right of the minority owner to go with the majority owner in the establishment of a new management company.  (It was not stated but perhaps this would be owned by his children and I would be gone.)  Also, he is not changing his stance on paying the distributions that he owes for June and July until the August financial statements are completed, even with the calculation error solved.  He has also allocated office expenses such as internet, postage, copier, and office supplies from the businesses in which he is the sole owner to PST. Do you think that it would be a good idea for us to meet with the colleague who you mentioned had some dealings in similar situations?  Are there any statements of rights that I can make to Jim?

Thank you, Roger.

Deb Rasby

Note: This information has been created for my attorney and is privileged client/attorney communication.

1

DR001792.2

**Wells, Roger**

| | |
|---|---|
| **From:** | Wells, Roger |
| **Sent:** | Thursday, March 15, 2012 4:05 PM |
| **To:** | 'Doug Rasby' |
| **Subject:** | RE: Update and a request for you opinion |

Roger W. Wells
McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska  68102
Phone (402) 341-3070
Fax (402) 952-1853
Cell (402) 681-5773

Home (402) 498-0941
rwells@mcgrathnorth.com
www.mcgrathnorth.com <http://www.mcgrathnorth.com/>

From: Doug Rasby [mailto:ddrasby@frontiernet.net]
Sent: Thursday, March 15, 2012 1:34 PM
To: Wells, Roger
Subject: Update and a request for you opinion

The following communication is subject to attorney/client confidentiality:

Hi Roger,

I have an update and a question for you.

Update:

I should know within the next few weeks what Jim's stance will be regarding paying distributions to cover taxes on our farms' taxable income. I have asked him about them and Dan O'Connor, the other minority owner of Northern Nance/Northern Plains, plans to visit with him about them in a few days. (We have a history of paying tax distributions for farms with a taxable income.) If a tax distribution does not materialize the time may be right for a letter from you.

1

If you will recall, our last conversation was concentrated around Jim's statement that he was going to dissolve PST right away.  To the best of my knowledge the company is still operating as PST – the January income statement showed a projected 12/31/2012 year end profit of $2,147,783, the same people are doing the same work, there is the same automated PST phone greeting and the same PST sign on the building, etc.  I received a distribution for January from PST but have not yet received January distributions for PST Gene Center or PST Milling.  PST Milling's income statement included a calculation of the amount to be distributed. PST Gene Center's statement typically doesn't show this but the distributions have been made each month.  I emailed Jim asking about these and got a response that didn't answer my question and sounded defensive.

I don't know if you are aware of this but Jim has announced that he is a candidate seeking the vacant UNL Board of Regents spot for our area. Actually, I think that he would serve UNL well. I also think that he would want to avoid any hint of wrong doing on his part or a lawsuit from a business partner so I am glad to see him in the spotlight.

Request for opinion:

██████████████████████████████████████████████████████████████  I hope that this will help protect me from future harmful actions by him and perhaps bring about some forward progress on a buy out (I have heard nothing on it). ███████████████████████████████████████████████████████████████ ███████████████████████  I won't go into detail but he was angry with me on both of these.  I communicated both verbally and in writing since he had reversed himself in the past or said he never said certain things - I had lost trust in him.  Here is the proposed email to him:

Jim,

Although you have said in the past that peace of mind is overrated in your opinion, there is something that has been on my mind that I plan to destroy when we reach financial closure. I would think that this would be something on which you would like to have some assurance. As you know from my last day in the office I have kept our communications - emails and written notes - over the years. You can probably remember back to the time that I told you that I would communicate in writing in order to be clear and to ensure that we were on the same page. I also kept copies when it looked as if I needed to maintain clarity of my position on various issues or, possibly, to defend myself. I addressed sensitive subjects in some of them as you may recall - actions that, were you to take, could have had terrible consequences. There are others that reflected harshness and there are some responses that made little sense.  I have not shown them to anyone and I want you to know that I will destroy them when our financial ties have come to an end. My desire is to not cause harm to you and to wipe the slate clean.

Deb

DR001794.2

**Wells, Roger**

| | |
|---|---|
| **From:** | Hargens, William F. |
| **Sent:** | Wednesday, May 23, 2012 6:00 PM |
| **To:** | ddrasby@frontiernet.net; Wells, Roger |
| **Subject:** | Re: The situation as I see it |
| | |
| **Categories:** | Rasby |

Roger is on vacation but I will cancel the call with the Kansas folks and we can talk then.

William F. Hargens
McGrath, North, Mullin & Katz PC LLO


-----Original message-----


      From: Doug Rasby <ddrasby@frontiernet.net>
      To: "Wells, Roger" <rwells@mcgrathnorth.com>, "Hargens, William F."
<whargens@mcgrathnorth.com>
      Sent: Wed, May 23, 2012 22:31:49 GMT+00:00
      Subject: The situation as I see it



      The following communication is subject to attorney/client confidentiality.


      To clarify what a win would be for us:

      1)    Stopping the dissolution of PST

      2)    Stopping the manipulation of profits of PST, PST Milling and PST Gene Center that would benefit Jim Pillen disproportionately

      a.    Changing the fees

      b.    Moving any type of expenses from each of his businesses (including businesses in which he is the sole owner and businesses in which he has other partners) into these businesses that we jointly own

      3)    Forcing a reasonable payment of distributions - enough to pay tax liabilities each year from each entity (just the payments of profits from PST, PST Milling and PST Gene Center would have covered this - but these bottom lines can be manipulated to move the profits to the entities in which we have debt - item #2 above)

1

**DR001886.2**

████████████

██████████ We would like to cancel the call with the Kansas appraiser tomorrow.  We would use Frankel Zacharia if we proceed with this.  Could we use the time slot for the Kansas call to discuss these thoughts with both of you?

Thank you, both –

Deb

2

**DR001887.2**

**Wells, Roger**

| | |
|---|---|
| **From:** | Hargens, William F. |
| **Sent:** | Sunday, April 15, 2012 2:21 PM |
| **To:** | Doug Rasby |
| **Cc:** | Wells, Roger |
| **Subject:** | Re: More questions on Pillen offer |

William F. Hargens
McGrath, North, Mullin & Katz PC LLO

-----Original message-----
**From:** Doug Rasby <ddrasby@frontiernet.net>
**To:** "Wells, Roger" <rwells@mcgrathnorth.com>, "Hargens, William F." <whargens@mcgrathnorth.com>
**Sent:** Sun, Apr 15, 2012 19:04:17 GMT+00:00
**Subject:** More questions on Pillen offer

The following communication is subject to attorney/client confidentiality:

Here are a few more questions – one of which could affect a meeting with Ken Morrison if he will agree to meet:

1)    █████████████████████████████████████████████████ I would like to ask him if he will purchase my interests but at the least he can be made aware of what Jim is capable.  His daughter and granddaughter will have to deal with Jim someday.

2)   With regard to PST's business objectives, I don't know where these are stated.

3)   I am not sure if a signed Buy Sell actually exists for PST – or for PST Gene Center or PST Milling.

4)   Pg 8, Section 13 of the N. Nance, N. Plains and Double D Operating Agreements states that a member shall not sell except as provided in the Buy Sell.  Since a Buy Sell doesn't exist for these businesses what is the status of this section?

1

**Wells, Roger**

| | |
|---|---|
| **From:** | Hargens, William F. |
| **Sent:** | Monday, April 16, 2012 9:18 AM |
| **To:** | 'Doug Rasby' |
| **Subject:** | RE: More questions on Pillen offer |
| | |
| **Categories:** | Rasby |

We need to research a couple of issues before we start drafting the letter so it might be a day or two before we are ready to talk. Unless Roger has them already, please send me your cell phone numbers so we can reach you if you are away from home.

If you'd like to talk about Ken Morrison, please give me a call. 402-633-1474.

**From:** Doug Rasby [mailto:ddrasby@frontiernet.net]
**Sent:** Monday, April 16, 2012 8:50 AM
**To:** Hargens, William F.
**Subject:** RE: More questions on Pillen offer

I will wait for your letter. Is there a reason that I can't visit with Ken Morrison about buying my interests?  Doug is going to Hastings tomorrow for a meeting at Hastings College and I could go with him.  Do you have an estimated time that we can visit so that we can be sure to be home?
Thank you Bill,
Deb

**From:** Hargens, William F. [mailto:whargens@mcgrathnorth.com]
**Sent:** Monday, April 16, 2012 8:40 AM
**To:** 'Doug Rasby'
**Cc:** Wells, Roger
**Subject:** RE: More questions on Pillen offer

Roger and I will work on a letter to send in response to Jim Pillen's letter. In the meantime, we suggest you not discuss this with anyone other than Roger and me.

**From:** Doug Rasby [mailto:ddrasby@frontiernet.net]
**Sent:** Sunday, April 15, 2012 2:34 PM
**To:** Hargens, William F.
**Subject:** RE: More questions on Pillen offer

Ok

**From:** Hargens, William F. [mailto:whargens@mcgrathnorth.com]
**Sent:** Sunday, April 15, 2012 2:21 PM
**To:** Doug Rasby
**Cc:** Wells, Roger
**Subject:** Re: More questions on Pillen offer

I suggest that you hold off meeting with Morrison until we have a chance to talk.

William F. Hargens
McGrath, North, Mullin & Katz PC LLO

1

DR001902.2

-----Original message-----
**From:** Doug Rasby <ddrasby@frontiernet.net>
**To:** "Wells, Roger" <rwells@mcgrathnorth.com>, "Hargens, William F." <whargens@mcgrathnorth.com>
**Sent:** Sun, Apr 15, 2012 19:04:17 GMT+00:00
**Subject:** More questions on Pillen offer

The following communication is subject to attorney/client confidentiality:

Here are a few more questions – ████████████████████████████████████████████████

1) ████████████████████████████████████████████████████████████████████████
~~these business interests?  I plan to call Ken Morrison Monday morning~~
like to ask him if he will purchase my interests but at the least he can be made aware of what Jim is
capable.  His daughter and granddaughter will have to deal with Jim someday.

2) With regard to PST's business objectives, I don't know where these are stated.

3) I am not sure if a signed Buy Sell actually exists for PST – or for PST Gene Center or PST Milling.

4) Pg 8, Section 13 of the N. Nance, N. Plains and Double D Operating Agreements states that a member shall not
sell except as provided in the Buy Sell.  Since a Buy Sell doesn't exist for these businesses what is the status of
this section?

---

This message and any attachments are confidential, may contain privileged information, and are intended solely
for the recipient named above. If you are not the intended recipient, or a person responsible for delivery to the
named recipient, you are notified that any review, distribution, dissemination or copying is prohibited. If you
have received this message in error, you should notify the sender by return email and delete the message from
your computer system.

The following statement is provided pursuant to U.S. Treasury Department Regulations: Any U.S. tax advice
contained in this communication (including any attachments) is not intended or written to be used, and cannot
be used, for the purpose of avoiding penalties under the Internal Revenue Code, nor should such advice be used
or referred to in the promoting, marketing or recommending of any entity, investment plan or arrangement.

---

This message and any attachments are confidential, may contain privileged information, and are intended solely
for the recipient named above. If you are not the intended recipient, or a person responsible for delivery to the
named recipient, you are notified that any review, distribution, dissemination or copying is prohibited. If you
have received this message in error, you should notify the sender by return email and delete the message from
your computer system.

The following statement is provided pursuant to U.S. Treasury Department Regulations: Any U.S. tax advice
contained in this communication (including any attachments) is not intended or written to be used, and cannot
be used, for the purpose of avoiding penalties under the Internal Revenue Code, nor should such advice be used
or referred to in the promoting, marketing or recommending of any entity, investment plan or arrangement.

DR001903.2

**Roger**

| | |
|---|---|
| **From:** | Hargens, William F. |
| **Sent:** | Monday, April 16, 2012 8:40 AM |
| **To:** | 'Doug Rasby' |
| **Cc:** | Wells, Roger |
| **Subject:** | RE: More questions on Pillen offer |
| | |
| **Categories:** | Rasby |

Roger and I will work on a letter to send in response to Jim Pillen's letter. In the meantime, we suggest you not discuss this with anyone other than Roger and me.

---

**From:** Doug Rasby [mailto:ddrasby@frontiernet.net]
**Sent:** Sunday, April 15, 2012 2:34 PM
**To:** Hargens, William F.
**Subject:** RE: More questions on Pillen offer

Ok

---

**From:** Hargens, William F. [mailto:whargens@mcgrathnorth.com]
**Sent:** Sunday, April 15, 2012 2:21 PM
**To:** Doug Rasby
**Cc:** Wells, Roger
**Subject:** Re: More questions on Pillen offer

████████████████████████████████████

William F. Hargens
McGrath, North, Mullin & Katz PC LLO

-----Original message-----
**From:** Doug Rasby <ddrasby@frontiernet.net>
**To:** "Wells, Roger" <rwells@mcgrathnorth.com>, "Hargens, William F." <whargens@mcgrathnorth.com>
**Sent:** Sun, Apr 15, 2012 19:04:17 GMT+00:00
**Subject:** More questions on Pillen offer

The following communication is subject to attorney/client confidentiality:

Here are a few more questions – ████████████████████████████

1) ████████████████████████████████████████████████
   t████████████████████████████████████████████████
   like to ask him if he will purchase my interests but at the least he can be made aware of what Jim is capable. His daughter and granddaughter will have to deal with Jim someday.

2) With regard to PST's business objectives, I don't know where these are stated.

3) I am not sure if a signed Buy Sell actually exists for PST – or for PST Gene Center or PST Milling.

**DR001904.2**

Section 13 of the N. Nance, N. Plains and Double D Operating Agreements states that a member shall not except as provided in the Buy Sell.  Since a Buy Sell doesn't exist for these businesses what is the status of this section?

_____

This message and any attachments are confidential, may contain privileged information, and are intended solely for the recipient named above. If you are not the intended recipient, or a person responsible for delivery to the named recipient, you are notified that any review, distribution, dissemination or copying is prohibited. If you have received this message in error, you should notify the sender by return email and delete the message from your computer system.

The following statement is provided pursuant to U.S. Treasury Department Regulations: Any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code, nor should such advice be used or referred to in the promoting, marketing or recommending of any entity, investment plan or arrangement.

**DR001905.2**

July 3, 2012

Dear Jim, Suzanne, Sarah and Brock,

I have enjoyed time spent with all of you in this family business. I feel gratitude for all of the good that I have experienced with you. I knew that I was being led to take a different path though, and I planned an exit that would not cause a ripple. As I promised you Jim, I worked to leave the business in the most positive way possible. But the sadness from what transpired after I left has been awful. The passage of time takes care of many things but sometimes a situation needs to be addressed directly to bring reconciliation and put us on a good path for the future.

I had an option that I chose not to take – and I am glad that I didn't take it, as it would have been a terrible thing for everyone. The path was a minority shareholder oppression lawsuit. I was severely affected financially when the unilateral decision was made to withhold the payment of our business' profits while my expense to Uncle Sam continued to be incurred. It can lead a person to financial ruin unless they have knowingly agreed to such action before being subject to it and have the ability to sustain the tax liability requirement. Our past policies and agreements were to pay out profits. Also the decision to dissolve PST, in which I still had a 10% interest according to our agreement from years ago, caused great financial harm to me. My attorneys said that the facts would allow me to have my day in court and that the laws against this are going to be strengthened in 2013. From this it's not hard to see that the action was wrong.

I had no power to negotiate and I was forced to either sell my investment, the investment that required me to put everything that I owned at risk over the years and for which I had been willing to invest my own funds, or move toward personal financial disaster. Under duress I gave up PST, PST Gene Center and PST Milling for no value and sold N. Plains, N. Nance and Double D for 56% of the most conservative value determined by two independent certified appraisers – one who was hired by Jim in 2011 and one who I hired on my own after receiving your offer. Both of the appraiser's values were in line with those currently accepted by Tyson Foods for the CFA and appraisers use current comparative sales and cost values and income to arrive at a balanced and fair value.

I also visited with a few possible investors after receiving your offer but, although financially capable and believing it to be an exceptional value, each of these people wanted to associate only with owners who respected and watched out for a minority shareholder's interests along with their own in a fair way. This is another strong indicator that actions didn't line up with the business principles.

You are under no legal obligation to do so, but I hope that you consider making right just the difference between the price paid on Friday and the professional opinion of the most conservative value for Northern Plains, Northern Nance and Double D. The other values can remain at zero. A value placed on these businesses by an associated accountant who used old costs and disregarded a current income stream, with a nod from an appraiser who said that these values would work in distressed conditions, doesn't hold up in comparison to that of two non-associated certified appraisers, arm's length investors and Tyson Foods. I would be at peace with this proposal and I believe that you would agree that this is more than fair to you. This would reflect what we say that we stand for on the website and on the walls

of each of the businesses.  Those words are powerful and good words and I don't think any of us take them lightly.  When we do what is right and good in every aspect of our lives it attracts joy to us. I think it is safe to say that we all want this.  Opposite actions deaden us and makes us less in the ways that are truly important. What good is it if we gain the whole world but lose our very selves?

I ask you to take this step in the spirit of fair play and good business dealings. We are all deserving of right action. We can go forward in a positive way, and that goodness will ripple out into all parts of our lives. It will make a difference for us and those around us.  I think it is also safe to say that the following applies to each of us:
*God has restored our relationship with him through Christ, and has given us this ministry of restoring relationships. 2 Corinthians 5:18*

I thank each of you for this consideration and I wish you continued success.

Sincerely,

| | Most Conservative Appraised Value |
|---|---|
| PST | No Value Applied |
| PST Gene Center | No Value Applied |
| PST Milling | No Value Applied |
| N Nance/N Plains | $2,900,000 |
| Double D | $725,000 |
| Total | $3,625,000 |
| Price Paid 6/29/2012 | $2,000,000 |
| Difference | $1,625,000 |

DR 000467.1

**Wells, Roger**

| | |
|---|---|
| **From:** | Wells, Roger |
| **Sent:** | Wednesday, September 14, 2011 12:09 PM |
| **To:** | 'Deb Rasby' |
| **Subject:** | RE: Follow up on Wednesday's meeting |

Thank Deb.  I am a bit concerned about some of the statements that Pillen is making, which is why I think a stern reply is warranted.  Jim may be playing the game that…"if I tell her in advance, and she doesn't object, then I can take the action."  His argument would be that he told you, you didn't say no, there for you waived your right to complain.

Roger W. Wells
McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska  68102
Phone (402) 341-3070
Fax (402) 952-1853
Cell (402) 681-5773
Home (402) 498-0941
rwells@mcgrathnorth.com
www.mcgrathnorth.com

**From:** Deb Rasby [mailto:debrasby@gmail.com]
**Sent:** Tuesday, September 13, 2011 6:31 PM
**To:** Wells, Roger
**Subject:** Fwd: Follow up on Wednesday's meeting

This information has been created for my attorney and is privileged client/attorney communication.

Hi Roger,
I sent this message to Jim on Sunday.  Since there was some politeness at Wednesday's meeting (although speaking of "blowing up" PST certainly didn't fall into that category) I played on the one string there seems to be - the pure goodness of taking the high road.  I spoke of wanting peace and he agreed with that.  ████████ ████████████ if our relationship could be reconciled I would have some comfort level with staying in and waiting for cash to flow from the businesses after debt is paid.  I haven't yet heard anything back from him.
Deb

---------- Forwarded message ----------
From: **Deb Rasby** <debrasby@gmail.com>
Date: Sun, Sep 11, 2011 at 8:46 PM
Subject: Follow up on Wednesday's meeting
To: "Jim D. Pillen" <jimdp@pstdanbred.com>

Jim,

After our meeting last Wednesday, I came away with a question in my mind of whether this is a time in which a buy-out of my interests is viable for you with your possible pursuit of bigger fish e.g. Bartlett Foods.  Because you are not in a situation in which you have a requirement to buy me out we do not need to proceed any further if you do not want to.  I will keep my offer open to share in any increase in risk, but I do understand your desire to keep your picture simple and take this on by yourself.

1

DR001606.2

If you feel that your position enables you to do this I have come up with a revised figure. I adjusted the cash flows - keeping 4 years in the multiplier according to my retirement planning, which I began in earnest after our conversation last year - but reducing the multiplier after that from 6 to 5 years. However, upon consultation our business, in which the financial rewards are probably not too far off and distributions have not yet been paid from N Nance & Double D, a 5 year multiplier is on the low side.  The reduction to 9 years causes me hesitation and for you, this still might not be feasible.  Again, perhaps this isn't the time to do this.

I do know that, with anger dissipated and goodwill at work in both of us, we will be fine whether this results in the buy-out or not.  My understanding from what you said in our meeting (and what you said before I made the decision to retire) was that you believed that I didn't listen to you and that we weren't on the same page.  I, on the other hand, felt persecuted for the decisions that I made that differed from your point of view. My retirement seemed to be the only way to bring resolution.  Our mutual commitment to being of good character and striving for the best and highest moral and ethical values will create a good future.

So that I don't rely on assumptions, these have been my basic expectations:

From myself I expected:
   To leave PST in a positive and respectful way, reflecting well on you, me and PST, with nothing left undone, and with a system in place that would operate well without me.
   To leave a legacy of living life and working with everyone in our PST business in good and right ways.
   To help going forward in a partner capacity in any way that I could.

From you I expected:
   To have our 2008 agreement on retirement honored which included having our structure, operations and fiscal responsibilities maintained in the good operating order we have established.
   To visit with me about aspects of our business that you feel need to be adjusted and to do it fairly for both of us - in keeping with the structure and agreements of our business.
   To be treated respectfully.
Just a note -  you are right that there are many service businesses that are sold upon retirement.  There are also those that aren't.  Our PST buy-sell is one of the latter after we discussed it at the December 2008 meeting - adjusting the document to allow ownership to continue after retirement.  You said in our meeting Wednesday that you forgot, and I forgive that as well as any comments or actions that have reflected forgetting the agreement.  We have a clean slate in my book going forward.

These expectations are based on the thoughts and ideals on which we both agree.  They assume we are of good character and live according to the moral and ethical values we support and have held up as our personal and our business's guiding principles.  Many people - our colleagues and our community, even our families - are watching us to see if we act in accordance with these characteristics. Doug and I have been getting a lot of inquiring comments, maybe you have too. We are the leaders - the models - for the way in which we expect our families and our business associates to behave and for how we want the larger world to operate.  We both know that we can only lead effectively in any realm if we are true to our beliefs.

With peaceful intent and mutual respect, we will live up to these high standards.  Good things will come from it and we will be able to hold our heads up and look anyone in the eye, knowing that we acted in an honorable way. PST will be strengthened in the process.

If, after thinking it over, you would still like to pursue this and want to see the revised offer let me know.

Deb

DR001607.2

3

**DR001608.2**