**EXHIBIT**

**1**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DEBORAH RASBY and DOUGLAS RASBY, husband and wife, )<br><br>Plaintiff, )<br><br>v. )<br><br>JAMES D. PILLEN, an individual, )<br><br>Defendant. ) | Civil Action No. 8:15-cv-226<br><br>**SECOND AFFIDAVIT OF TIMOTHY R. ENGLER IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL** |

STATE OF NEBRASKA   )
               )ss.
COUNTY OF LANCASTER )

I, Timothy R. Engler, being first duly sworn under oath, state and affirm as follows:

1.     My name is Timothy R. Engler and I am an attorney in the law firm of Rembolt Ludtke LLP, 3 Landmark Centre, 1128 Lincoln Mall, Suite 300, Lincoln, NE 68508.

2.     I am over the age of 18 and have personal knowledge of the facts contained in this affidavit.

3.     Rembolt Ludtke represents Defendant, James D. Pillen, in the above-captioned case.

4.     This Affidavit is submitted in connection with the introduction of evidence in support of Defendant's Motion to Compel.

5.     On or about December 22, 2015, Plaintiff served her Initial Disclosures upon Defendant which included the documents attached hereto and identified as "Attachment A".

6.     On or about March 7, 2016, Plaintiff produced the McGrath North documents which included the documents attached hereto and identified as "Attachment B" to Defendant.

1

DATED: July 15, 2016

Timothy R. Engler #15940

SUBSCRIBED AND SWORN to before me, a Notary Public, on this ___15___ day of

July, 2016, by Timothy R. Engler



GENERAL NOTARY - State of Nebraska
BARB LEVOS
My Comm. Exp. July 30, 2018

Notary Public

4824-7118-2389, v. 1

2

**ATTACHMENT A**

**Doug Rasby**

| | |
|---|---|
| **From:** | Doug Rasby <ddrasby@frontiernet.net> |
| **Sent:** | Friday, August 12, 2011 3:50 PM |
| **To:** | 'debrasby@gmail.com' |
| **Subject:** | FW: Past email communications with Jim Pillen re: expense allocations (reference my other email today for details) |
| **Attachments:** | 08-11-2011 08;56;03PM.pdf |

**From:** Doug Rasby [mailto:ddrasby@frontiernet.net]
**Sent:** Thursday, August 11, 2011 9:23 PM
**To:** Wells, Roger
**Subject:** Past email communications with Jim Pillen re: expense allocations (reference my other email today for details)

Note: This information has been created for my attorney and is privileged client/attorney communication.

Per my other email today, I believe that the attached emails serve to document the fact that I have included Jim in the expense allocation process – asking for his guidance.  What is your opinion on sharing these with John Meyer to avoid using the allocation process against me?

These emails need to be read from the bottom of each of the two sets in order to read them from the first to the last (as numbered).

A note of explanation on these allocations:
They all have to do with organizing our process on allocating new types of expenses that we didn't have when we began operations.  Note that our management fee of $.0125/lb of pork sold has remained unchanged.  Therefore, we have passed most new expenses along to the farms at cost.

Best regards,

Deb Rasby

1

ᵧ7⅊

**DR 000066.1**

**Doug Rasby**

| | |
|---|---|
| **From:** | Doug Rasby <ddrasby@frontiernet.net> |
| **Sent:** | Thursday, August 18, 2011 12:09 PM |
| **To:** | Wells, Roger |
| **Subject:** | Strategic planning needed? |

Note: This information has been created for my attorney and is privileged client/attorney communication.
Hello Roger,
I have had two communications from Jim Pillen this week – the following is one of them and I will also forward to you the other one. Funds in the amount of approximately $725,000 that should have been distributed for June and July have disappeared. My share would have been ~ $72,000. I have asked for specifics on policy changes that would create this situation but in answer received a copy of our N. Nance/N. Plains borrowing base with the note: "This should answer your questions". I will forward my reply to that email to you as well. Do you think that we need to meet to plan a strategy in my future dealings with Jim?
Thank you, Roger.
Deb Rasby

**From:** Deb Rasby [mailto:debrasby@gmail.com]
**Sent:** Thursday, August 18, 2011 11:58 AM
**To:** Doug Rasby
**Subject:** Fwd: A few questions

# Forwarded conversation
**Subject: A few questions**
------------------------

From: **Deb Rasby** <debrasby@gmail.com>
Date: Tue, Aug 16, 2011 at 2:42 PM
To: jimdp@pstdanbred.com

Jim,

Could you let me know:
1) When distributions will be mailed for PST?
2) When June financials will be emailed for
  PST
  PST Milling
  Double D
  N. Nance/N. Plains

Also, would it be possible to have Paul restore my PST email account and walk me through the process of transferring the wedding and family files? If you would not like to keep the account open we can close it again afterward, although I do miss Bacon Bits and the pork industry information. Would there be any problem in keeping this account open?

186

DR 000077.1

Please let me know if I can be of any help.

Thanks,

Deb

p.s. Doug spoke with a Hastings College colleague who said that you did a nice job with the eulogy for Bob.

----------
From: **Jim D. Pillen** <jimdp@pstdanbred.com>
Date: Tue, Aug 16, 2011 at 4:00 PM
To: Deb Rasby <debrasby@gmail.com>

Deb


PST is just finished and I am looking at it. Per our discussions I have reviewed all allocations and made changes where needed. It appears there won't be cash available as we will do distributions going forward based on financial statements not cash on hand so we can improve internal controls. With distributions made to date and changes made there won't be a distribution made until after Aug statement is done.

I will have Paul send you the files. He is out today. What info beside Bacon Bits would you like to have we will put you on the mailing list.  Other financials will be in mail today.


Jim



----------
**From:** Deb Rasby [mailto:debrasby@gmail.com]
**Sent:** Tuesday, August 16, 2011 2:43 PM
**To:** Jim D. Pillen
**Subject:** A few questions


----------
From: **Deb Rasby** <debrasby@gmail.com>
Date: Tue, Aug 16, 2011 at 4:21 PM
To: "Jim D. Pillen" <jimdp@pstdanbred.com>


Thank you Jim.  What specific policy changes were made that would cause such a material difference?  Also, with complete access to all check and invoice information, account reconciliations and monthly financial statements what internal controls were not in place?  With regard to the financial statements, could these be emailed to me for ease of record keeping?  The Daily Livestock Report and NPPC information came to my PST account as well as Bacon Bits.  It would be nice to keep this information coming to the PST account.
Thank you for your help,
Deb

18 c.

DR 000078.1

**Doug Rasby**

| | |
|---|---|
| **From:** | Wells, Roger <rwells@mcgrathnorth.com> |
| **Sent:** | Thursday, June 09, 2011 5:33 PM |
| **To:** | Doug and Deb Rasby |
| **Subject:** | FW: Hog operations |

Deb and Doug...I asked an old investment banking friend about current multiples applicable to integrated hog operations (obviously, I did this on a "no name" basis). His response is below. As you know, there are many variables that go into this, and the person that I talked to has no details...so you have to take this range with a grain of salt. Gene Arnold would be a good resource on this question...let me know if you want me to talk to him. Thanks.

Roger W. Wells
McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska 68102
Phone (402) 341-3070
Fax (402) 952-1853
Cell (402) 681-5773
Home (402) 498-0941
rwells@mcgrathnorth.com
www.mcgrathnorth.com

Dear Roger,

As you are aware, lots of factors go into valuing an integrated hog operation. I'll give you a rough ballpark of 5-7x EBITDA is what an operation with average profitability, investments, and other components would bring. I would be happy to sign an NDA and give you a more informed opinion on a no cost basis, if that would be helpful. Below is a rough outline of items needed to be reviewed:

Important Factors:
1. Prior financial performance – What has been their record? Have they made above industry average profitability? Do they have better efficiencies, better locations, etc., than the industry standard? Because of wild fluctuations in earnings, purchase price for these businesses are generally valued on a 3 year average basis, obviously taking into account what the future looks like because that's what the buyer is purchasing. While EBITDA is the common valuation metric, cash flow and profit before tax (particularly for public buyers) are very important. Working capital and capital expenditure history are also factors.
2. Management – quality, depth, and age.
3. Purchase contracts from financially solid major processor. Do they have a purchase contract from a major hog processor? What Formula purchasing. Percent of capacity contracted.
4. Facilities
   a. Do they have excess real estate used for growing crops that would be included? If so, either exclude them from the sale or add fair market value for the real estate.
   b. Operating equipment
      i. Feed mill
      ii. Farrowing operating
      iii. Feed out facilities
      iv. Other operating facilities

1

DR 000093.1

## Doug Rasby

**From:** Doug Rasby <ddrasby@frontiernet.net>
**Sent:** Thursday, August 11, 2011 9:26 PM
**To:** Wells, Roger
**Subject:** FYI's and questions: Rasby potential sale to Jim Pillen

Note: This information has been created for my attorney and is privileged client/attorney communication.

Hello Roger,

I have an update and a few questions:

<u>FYI's:</u>

I have received no distributions since retiring (PST and PST Gene Center should have been paid around July 22nd for June transactions – we have distributions from these businesses each month since there is no debt). Jim has told me that he wants to review the expenses allocated from business to business but has not responded to my 2nd email regarding a time to meet to go through this. I don't expect a response (reference his email that I forwarded to you the end of July). I have learned that Jim has made statements that he thinks I have mis-allocated expenses from PST to the farms. However, he sees the allocations when he signs checks. I have summarized the allocation process for him and asked him if he had any changes to it. The same allocation method has been used throughout the life of our business. I will scan to you in a separate email the copies of the correspondence to and from Jim earlier in the year related to allocations. I believe the desire in the last month to review the allocation process is a means to hold the distributions "hostage" in order to intimidate me in our negotiation process.

I have been working on the possible valuation of a buy out with John Meyer, a representative of Jim's. John was the past CEO of Premium Standard Pork who took them through the sale to Smithfield. I met with John this morning - our 2nd meeting in three weeks. Per John, Jim is extremely emotional and hostile to me, which he believes is due to the value that I placed on the business.

*Note on my "walk through" of the valuation with Jim:*
- *I began with the value of the fixed assets based on a prior appraisal that we had used for other purposes, net of current liabilities.*
- *To this I added annual cash flows, net of term debt service, based on forecasts and used a 4% annual growth factor based on improvements that we have recently made.*
- *I went strong - using a 10 year multiplier after visiting with couple of sources (including a banker).*

Per a comment from John today, and from remarks Jim has made to me in the past, Jim had planned on buying me out at current appraised value only. He viewed the distributions from the PST management company as part of my compensation, to disappear when I did. This disregards my comment in our 2008 meeting in which I said that I planned on using the cash flows in retirement, which prompted the revision of the PST buy-sell to allow continued ownership upon retirement. It also disregards legal ownership of course.

I told John that Jim does not have to purchase my interest. I also said that I either want to maintain all of my current ownership or sell it all together. (My current holdings maintain a balance of sorts so that manipulation would be a bit more difficult.) John said that if I don't sell, I won't like the next few years very much. He said that a lot can happen in these businesses and, quite frankly, Jim will "f___" with them. He felt that both Jim

1

DR 000135.1

and I will have to give up something and that, for me, giving up something on PST would probably be the best way to make progress. (Of course this is the lion's share of the current cash flow.) He said that Jim has "dug in" and gets particularly emotional about PST being a family business.

During our visit this morning I presented my view on the buy-out values that I proposed:
I would have the cash flows/equity increases from the various businesses whether I sell or continue to own. The "principal" payouts from Jim to me would, therefore, basically be a wash for Jim – the value comes into the business and then my share goes back out to me. But at the end of 10 years he would have ownership. My extra income would come from the interest income that I would receive over the 10 years (similar to payments to a bank). I used a 7% interest rate in the amortization of the buy-out value (1st National of Omaha's last quote for a 10 year note).

I ended by saying that I would give some thought to reducing the PST valuation but that my 10 year time frame is fair. I mentioned to John a conversation that Jim had with Brett Bonwell, a partner in some of our other businesses, and me last year. Jim asked what we thought about letting the next generation (his kids) take over in 5 years. I told him that I would agree to retiring in 5 years when he does. Brett is a few years younger and said that "he had a few good years left in him". I told John that because of hostility toward me from Jim, I retired 4 years earlier than our "gentleman's agreement". If we took this process down the road to the agreed upon 4 years, the multiplier would be 6 years.

From the meeting with John, the strong message that I took away was:
1) Jim is very emotion/hostile toward me
2) Jim thinks that I try to tell him how to run his business (he has alluded to this in his emails and conversations with me as well as to John)
3) Jim thinks that my expectation of a multiple of earnings is out of line, as he didn't pay this when he bought out our veterinarian (he used the balance sheet equity) or when he bought out the widow of another partner (he used the original amount invested)
4) Jim will make my life miserable and manipulate these businesses if I don't sell

Questions:

1) Can he withhold my monthly distributions of cash balances? If 'no', what specific statement of legal rights can I make (without pulling you into the picture) to prompt the payment of the distributions? I am assuming that he has not paid himself either, but I have no way of knowing.
2) At this point can I request the current checking account balances for the businesses? Is there anything specific that I should reference as to my rights when asking for the balance?
3) Do I have legal rights to see policy changes that Jim makes in the expense allocations between businesses?
4) Given the withholding of distributions, unanswered emails, and no receipt of monthly financial statements (which are standard reports in our business), does this give me the right to look at invoices, checks, journal entries, and account reconciliations in order to keep Jim accountable? If so, how frequently?
5) Do you have any advice on how to keep Jim accountable so that we can avoid manipulation and litigation?

I will send separate emails of the scanned communications regarding expense allocations. Let me know if they do not come through. You can probably tell that the insinuation that I mis-allocated expenses is bothering me. I am wondering if I should also scan these documents to John Meyer as a possible way to stop Jim from using the allocation process against me. What is your opinion? I am sure this is a bit confusing. Give me a call if you need further explanation in answering these questions (402-910-0598).

2

DR 000136.1

Best regards,

Deb Rasby

4/4c

DR 000137.1

**ATTACHMENT B**

| | |
|---|---|
| From: | Wells, Roger |
| To: | Doug and Deb Rasby |
| Sent: | 6/28/2012 3:50:02 PM |
| Subject: | FW: Rasby/Pillen |
| Attachments: | Unit Purchase Agreement (Redline showing TLM changes to Wells) (00500729).DOCX; Unit Purchase Agreement (TLM Revisions to Wells version) (00500664).DOCX |

Attached is a revised draft that I received from Moll.  Note that he has revised your release of Pillen and the entities.  I do not have a problem with this unless you think you have some kind of claim that you would assert in the future.  Moll is right...I transposed the Northern numbers.  I intend to tell Moll that the changes are fine and that he should correct the transposition...if you disagree, please let me know.  Thanks.

Roger W. Wells
McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska  68102
Phone (402) 341-3070
Fax (402) 952-1853
Cell (402) 681-5773
Home (402) 498-0941
rwells@mcgrathnorth.com
www.mcgrathnorth.com

**From:** Timothy L. Moll [mailto:TMoll@remboltlawfirm.com]
**Sent:** Thursday, June 28, 2012 1:44 PM
**To:** Wells, Roger
**Subject:** Rasby/Pillen

Roger:

Your proposed changes to the Unit Purchase Agreement are fine in substance.  Please note the following:

1. I revised the release language to make it consistent for both parties.
2. I changed the reference to Jim Pillen as President to be "Authorized Signer".  He is president of some and member/manager of others.
3. The allocation is fine, except we believe the numbers for Northern Nance and Northern Plains are transposed.  I did not make any change pending your review.

A revised version of the agreement is attached for your review.  Please verify the allocation number and confirm that the attached form of the agreement is acceptable.  Once it is, we can make arrangements for signatures and transfer of funds.  Please provide wiring instructions for the account Ms. Rasby desires to receive the proceeds.  I am advised that Ms. Rasby is not holding any original certificates for her ownership interests.  Accordingly, I will forward an "Assignment Separate from Certificate" for the subject entities to be signed as part of the closing.   My hope is that we can have things finalized this afternoon and sign documents and transfer funds tomorrow.  Thank you.

**Timothy L. Moll, Attorney**
tmoll@remboltlawfirm.com

**Rembolt Ludtke LLP**
**1201 Lincoln Mall, Suite 102**
**Lincoln, Nebraska 68508**
**P: (402) 475-5100 ext 125**
**F: (402) 475-5087**
**Web: www.remboltlawfirm.com**

MNMK000039

| | |
|---|---|
| **From:** | Wells, Roger |
| **To:** | 'Doug Rasby' |
| **Sent:** | 6/28/2012 4:16:52 PM |
| **Subject:** | RE: Rasby/Pillen |

I'm not sure why you would want to do this, but the agreement does not include any kind of mutual "non-disparagement" clause.  Don't make any false or slanderous statements, and don't  tortuously interfere with his business relationships.

Roger W. Wells
McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska  68102
Phone (402) 341-3070
Fax (402) 952-1853
Cell (402) 681-5773
Home (402) 498-0941
rwells@mcgrathnorth.com
www.mcgrathnorth.com

**From:** Doug Rasby [mailto:ddrasby@frontiernet.net]
**Sent:** Thursday, June 28, 2012 3:06 PM
**To:** Wells, Roger
**Subject:** RE: Rasby/Pillen

If you are ok with this I am.  I do have a question though.  After all of this is done, could I express to Jim, Suzanne, Sarah and Brock the pain caused to me by the unilateral decisions that were made?  I don't think my soul can rest until I have the freedom from oppression to speak from my heart in a respectful way.

**From:** Wells, Roger [mailto:rwells@mcgrathnorth.com]
**Sent:** Thursday, June 28, 2012 2:50 PM
**To:** Doug and Deb Rasby
**Subject:** FW: Rasby/Pillen

Attached is a revised draft that I received from Moll.  Note that he has revised your release of Pillen and the entities.  I do not have a problem with this unless you think you have some kind of claim that you would assert in the future.  Moll is right...I transposed the Northern numbers.  I intend to tell Moll that the changes are fine and that he should correct the transposition...if you disagree, please let me know.  Thanks.

Roger W. Wells
McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska  68102
Phone (402) 341-3070
Fax (402) 952-1853
Cell (402) 681-5773
Home (402) 498-0941
rwells@mcgrathnorth.com
www.mcgrathnorth.com

**From:** Timothy L. Moll [mailto:TMoll@remboltlawfirm.com]
**Sent:** Thursday, June 28, 2012 1:44 PM
**To:** Wells, Roger
**Subject:** Rasby/Pillen

MNMK000055

Roger:

Your proposed changes to the Unit Purchase Agreement are fine in substance.  Please note the following:

1.   I revised the release language to make it consistent for both parties.
2.   I changed the reference to Jim Pillen as President to be "Authorized Signer".  He is president of some and member/manager of others.
3.   The allocation is fine, except we believe the numbers for Northern Nance and Northern Plains are transposed.  I did not make any change pending your review.

A revised version of the agreement is attached for your review.  Please verify the allocation number and confirm that the attached form of the agreement is acceptable.  Once it is, we can make arrangements for signatures and transfer of funds.  Please provide wiring instructions for the account Ms. Rasby desires to receive the proceeds.  I am advised that Ms. Rasby is not holding any original certificates for her ownership interests.  Accordingly, I will forward an "Assignment Separate from Certificate" for the subject entities to be signed as part of the closing.   My hope is that we can have things finalized this afternoon and sign documents and transfer funds tomorrow.  Thank you.


**Timothy L. Moll, Attorney**
**tmoll@remboltlawfirm.com**

**Rembolt Ludtke LLP**
**1201 Lincoln Mall, Suite 102**
**Lincoln, Nebraska 68508**
**P: (402) 475-5100 ext 125**
**F: (402) 475-5087**
**Web: www.remboltlawfirm.com**

**DISCLOSURE: In accordance with IRS Circular 230, please note the following with regard to any portion of the above message which involves federal tax issues: Unless expressly stated otherwise above, (1) nothing contained in this message is intended or written to be used or relied upon by any taxpayer for the purpose of avoiding penalties that may be imposed under the Internal Revenue Code; and (2) nothing contained in this message may be used to recommend, promote or market any federal tax transaction or matter.**

**WARNING/CAUTION: This e-mail and any files transmitted with it are strictly confidential and are intended solely for the use of the individual or entity to whom it is addressed. This communication may contain material protected by lawyer-client privilege. If you are not the intended recipient or the person responsible for delivering the e-mail to the intended recipient, be advised that you have received this e-mail in error and that any use, dissemination, forwarding, printing, or copying of this e-mail and any file attachments is strictly prohibited. If you have received this e-mail in error, please immediately notify us by a collect telephone call to (402) 475-5100 or by reply e-mail to the sender. You must destroy the original transmission and its contents.**

---

This message and any attachments are confidential, may contain privileged information, and are intended solely for the recipient named above. If you are not the intended recipient, or a person responsible for delivery to the named recipient, you are notified that any review, distribution, dissemination or copying is prohibited. If you have received this message in error, you should notify the sender by return email and delete the message from your computer system.

The following statement is provided pursuant to U.S. Treasury Department Regulations: Any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code, nor should such advice be used or referred to in the promoting, marketing or recommending of any entity, investment plan or arrangement.

| | |
|---|---|
| **From:** | Wells, Roger |
| **To:** | 'Doug Rasby' |
| **Sent:** | 6/29/2012 10:22:02 AM |
| **Subject:** | RE: Rasby/Pillen |

If you want to send this to Jim, ok. I would recommend that you not send it to others.

Roger W. Wells
McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska 68102
Phone (402) 341-3070
Fax (402) 952-1853
Cell (402) 681-5773
Home (402) 498-0941
rwells@mcgrathnorth.com
www.mcgrathnorth.com

---

**From:** Doug Rasby [mailto:ddrasby@frontiernet.net]
**Sent:** Thursday, June 28, 2012 3:32 PM
**To:** Wells, Roger
**Subject:** RE: Rasby/Pillen

Attached are my thoughts. This sale quite simply feels wrong – in the method used to bring it about and in the value. It is sick. I did not do anything to deserve this treatment. Attached are the thoughts that I would like to convey to those involved. I would not involve myself in any business relationships or make false statements. I hope that someday they make it right.

---

**From:** Wells, Roger [mailto:rwells@mcgrathnorth.com]
**Sent:** Thursday, June 28, 2012 3:17 PM
**To:** 'Doug Rasby'
**Subject:** RE: Rasby/Pillen

I'm not sure why you would want to do this, but the agreement does not include any kind of mutual "non-disparagement" clause. Don't make any false or slanderous statements, and don't tortuously interfere with his business relationships.

Roger W. Wells
McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska 68102
Phone (402) 341-3070
Fax (402) 952-1853
Cell (402) 681-5773
Home (402) 498-0941
rwells@mcgrathnorth.com
www.mcgrathnorth.com

---

**From:** Doug Rasby [mailto:ddrasby@frontiernet.net]
**Sent:** Thursday, June 28, 2012 3:06 PM
**To:** Wells, Roger
**Subject:** RE: Rasby/Pillen

MNMK000134

If you are ok with this I am. I do have a question though. After all of this is done, could I express to Jim, Suzanne, Sarah and Brock the pain caused to me by the unilateral decisions that were made? I don't think my soul can rest until I have the freedom from oppression to speak from my heart in a respectful way.

---

**From:** Wells, Roger [mailto:rwells@mcgrathnorth.com]
**Sent:** Thursday, June 28, 2012 2:50 PM
**To:** Doug and Deb Rasby
**Subject:** FW: Rasby/Pillen

Attached is a revised draft that I received from Moll. Note that he has revised your release of Pillen and the entities. I do not have a problem with this unless you think you have some kind of claim that you would assert in the future. Moll is right...I transposed the Northern numbers. I intend to tell Moll that the changes are fine and that he should correct the transposition..if you disagree, please let me know. Thanks.

Roger W. Wells
McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska 68102
Phone (402) 341-3070
Fax (402) 952-1853
Cell (402) 681-5773
Home (402) 498-0941
rwells@mcgrathnorth.com
www.mcgrathnorth.com

---

**From:** Timothy L. Moll [mailto:TMoll@remboltlawfirm.com]
**Sent:** Thursday, June 28, 2012 1:44 PM
**To:** Wells, Roger
**Subject:** Rasby/Pillen

Roger:

Your proposed changes to the Unit Purchase Agreement are fine in substance. Please note the following:

1. I revised the release language to make it consistent for both parties.
2. I changed the reference to Jim Pillen as President to be "Authorized Signer". He is president of some and member/manager of others.
3. The allocation is fine, except we believe the numbers for Northern Nance and Northern Plains are transposed. I did not make any change pending your review.

A revised version of the agreement is attached for your review. Please verify the allocation number and confirm that the attached form of the agreement is acceptable. Once it is, we can make arrangements for signatures and transfer of funds. Please provide wiring instructions for the account Ms. Rasby desires to receive the proceeds. I am advised that Ms. Rasby is not holding any original certificates for her ownership interests. Accordingly, I will forward an "Assignment Separate from Certificate" for the subject entities to be signed as part of the closing. My hope is that we can have things finalized this afternoon and sign documents and transfer funds tomorrow. Thank you.

**Timothy L. Moll, Attorney**
**tmoll@remboltlawfirm.com**

**Rembolt Ludtke LLP**
**1201 Lincoln Mall, Suite 102**
**Lincoln, Nebraska 68508**
**P: (402) 475-5100 ext 125**
**F: (402) 475-5087**
**Web: www.remboltlawfirm.com**

MNMK000135