IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DEBORAH RASBY,<br><br>          Plaintiff,<br><br>    vs.<br><br>JAMES D. PILLEN,<br><br>          Defendant. | 8:15CV226<br><br>ORDER |

This matter is before the court on James D. Pillen's (Pillen) Motion to Compel Production of Documents (Filing No. 60). Pillen seeks production of documents requested from the third-party attorneys who previously represented Deborah Rasby (Rasby) during the transaction forming the basis of this lawsuit. Pillen filed a brief (Filing No. 61) and an index of evidence (Filing No. 62) in support of the motion. Rasby filed a brief (Filing No. 65) and an index of evidence (Filing No. 64) opposing production. Pillen filed a brief (Filing No. 70) and an index of evidence (Filing No. 71) in reply.

## BACKGROUND

This cases arises from the parties' business relationship, which culminated in an agreement between them for Pillen to purchase Rasby's business ownership interest in associated companies such as Progressive Swine Technologies, Inc. (PST), a management company for various entities dealing with pork production including farms, feed mills, and swine genetics. **See** Filing No. 5 - Amended Complaint ¶¶ 7-8, 11. PST began operations on January 1, 1994, when Pillen held a 90% interest and Rasby held the remaining 10%. *Id.* ¶ 8. The parties each received a salary from 2001 to 2011. *Id.* ¶ 9. Since 1994 PST paid distributions to the parties based on their ownership interests, with Rasby receiving approximately $2,250,471 between the years 2000 through 2011. *Id.* ¶ 10. Rasby alleges she learned Pillen was using their company assets to benefit himself and his personal companies to her disadvantage. *Id.* ¶¶ 12-16. Rasby states she confronted Pillen with her information, but he became hostile and refused to discuss it. *Id.* ¶ 16. In May of 2011, Rasby decided to retire from PST with the understanding she would still receive monthly distributions. *Id.* ¶ 17. After Rasby's

retirement, Pillen increased his salary from $110,000 to $1,000,000 and stopped making distribution payments.  *Id.* ¶¶ 19-21.  On April 13, 2012, Pillen offered to purchase Rasby's interest in the companies at less than market value and warned her he planned to liquidate PST and stop cash distributions from her other companies.  *Id.* ¶¶ 23-24, 26.  Rasby understood if she retained her business interests she would have substantial tax liability exposure without the income or distributions to pay it.  *Id.* ¶¶ 22, 24, 27.  Rasby alleges Pillen's agent told her Pillen "was going to 'F' with her" and he threatened to "blow up PST" so she "would be looking for work again."  *Id.* ¶ 28.  Rasby searched for investors to buy her interest but, due to Pillen's actions, investors refused.  *Id.* ¶ 29.  Pillen gave Rasby two weeks to agree to sell to him or he would close PST.  *Id.* ¶ 30.  On June 29, 2012, Rasby executed the Unit Purchase Agreement, selling her interests in the companies to Pillen.  *Id.* ¶ 31.

Based on these facts, Rasby alleges Pillen forced her to enter into the Purchase Agreement by virtue of his threats and actions, which destroyed her ability to make a voluntary choice and affected her actions and state of mind.  *Id.* ¶¶ 35-37.  In addition to claiming duress and undue influence (Count I), Rasby claims fraudulent misrepresentation (Count II), securities fraud (Count III), loss of corporate opportunities (Count IV), and breach of fiduciary duty (Count V) against Pillen.  *Id.* ¶¶ 35-65.

Pillen generally denies liability on Rasby's claims.  **See** Filing No. 15 - Answer.  Additionally, Pillen alleges Rasby engaged in "wrongdoings in how [she] accounted for PST expenses" while working as an accountant.  *Id.* at 10-11.  Moreover, Pillen asserts claims for breach of contract for filing this lawsuit in violation of the express terms of the Purchase Agreement (First Counterclaim), breach of fiduciary duty (Second Counterclaim), breach of duty of loyalty (Third Counterclaim), unjust enrichment (Fourth Counterclaim), fraud (Fifth Counterclaim), conversion (Sixth Counterclaim), and civil extortion (Seventh Counterclaim).  *Id.* at 13-17.  Rasby generally denies liability on Pillen's counterclaims.  **See** Filing No. 18.

The parties' current discovery dispute arose when Pillen requested production of documents from Rasby and her former attorneys, McGrath North Mullin & Kratz PC LLO (McGrath), related to Rasby's representation by McGrath in connection with the negotiation, drafting, and execution of the Purchase Agreement.  **See** Filing No. 61 -

Brief p. 1-2. Initially, Pillen requested the documents directly from Rasby on December 22, 2015. **See** Filing No. 23 - Certificate of Service. In addition, the next day, Pillen filed notice of his intent to serve a subpoena upon McGrath for the same documents. **See** Filing No. 24. Rasby resisted disclosure, arguing the "materials contained in the requested file are subject to the attorney-client privilege and/or are protected work product." **See** Filing No. 25 - Motion to Quash. Subsequently, the parties agreed McGrath would produce all responsive documents to Rasby for review and preparation of a detailed privilege log. **See** Filing No. 28. Rasby produced responsive documents to Pillen in February, March, and May. **See** Filing No. 61 - Brief p. 2. The May 2, 2016, production contained redacted emails exchanged between Rasby and McGrath, which redacted content was not listed on the privilege log. *Id.* at 2-3; **see** Filing No. 62 - Ex. 1 Engler Aff. ¶ 11. Counsel for the parties conferred but were unable to agree on the scope and applicability of the attorney-client privilege for the redacted emails (collected as Attach. C to Ex. 1) in the context of Rasby's claims. **See** Filing No. 62 - Ex. 1 Engler Aff. ¶¶ 12-14.

Pillen argues Rasby waived the attorney-client privilege with regard to the redacted emails either by placing her attorney communications at issue or partially disclosing the communications. **See** Filing No. 61 - Brief p. 1. Specifically, Pillen contends the communications are necessary for him to establish Rasby's state of mind when she entered the into the Purchase Agreement and may reveal whether Rasby was motivated by legal advice rather than Pillen's alleged actions. *Id.* at 5. In the alternative, Pillen asserts Rasby partially disclosed a significant portion of the communications, requiring complete disclosure for fairness. *Id.* at 6-7. Pillen suggests the court may conduct an in camera review of the unredacted documents prior to disclosure. **See** Filing No. 60 - Motion.

Rasby denies she waived the attorney-client privilege. **See** Filing No. 65 - Response. Rasby disagrees she placed her former counsel's advice at issue, even though the communications may be relevant. *Id.* at 2-3. Rasby contends she placed only Pillen's conduct at issue because she was well aware of the tax implications of his threats "[t]herefore, the duress [she] was experiencing was caused exclusively [by Pillen's] actions," and "no legal advice whatsoever . . . could change the outcome of that

3

scenario." *Id.* at 3-4. Additionally, Rasby denies her disclosure of redacted communications constitutes partial disclosure of confidential communications. *Id.* at 4-5. Specifically, Rasby states she disclosed only those portions of the emails containing unprivileged communications and redacted only requests for legal advice and actual legal advice. *Id.* at 5. Rasby asserts observing the privilege in this case will not deny Pillen access to evidence vital to his defense because the fundamental facts surround Pillen's own conduct. *Id.* at 6.

## ANALYSIS

In this diversity jurisdiction action, Nebraska law governs the question of attorney-client privilege. **See** ***Pamida, Inc. v. E.S. Originals, Inc.***, 281 F.3d 726, 731 (8th Cir. 2002) (**citing** Fed. R. Evid. 501). The Nebraska statute related to attorney-client privilege is Neb. Rev. Stat. § 27-503, which provides:

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (a) between himself or his representative and his lawyer . . . .

Neb. Rev. Stat. § 27-503(2).

"A communication is confidential if not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." Neb. Rev. Stat. § 27-503(1)(d). Accordingly, the privilege is subject to waiver where the communications are made in the presence of, or to, third persons. **See** ***Kansas-Nebraska Natural Gas Co., Inc. v. Marathon Oil Co.***, 109 F.R.D. 12, 20 (D. Neb. 1985). "Fairness is an important and fundamental consideration in assessing the issue of whether there has been a waiver of the lawyer-client privilege." ***League v. Vanice***, 374 N.W.2d 849, 856 (Neb. 1985). The party asserting a privilege has the burden of proving its existence, which includes showing waiver did not occur. ***Nebraska ex rel. Stivrins v. Flowers***, 29 N.W.2d 311, 316 (Neb. 2007); ***Greenwalt v. Wal-Mart Stores, Inc.***, 567 N.W.2d 560, 566 (Neb. 1997); **see Kansas-Nebraska Natural Gas**, 109 F.R.D. at 20.

4

Procedurally, the Federal Rule of Civil Procedure applies. With regard to claiming privilege, Rule 26(b)(5) states:

> When a party withholds information otherwise discoverable by claiming that the information is privileged . . ., the party must:
> (i) expressly make the claim; and
> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5). Such rule is similar to the showing required under state law. **See** *Greenwalt*, 560 N.W.2d at 566-67 (holding "the asserting party must make out a prima facie claim that the privilege . . . applies"); **see also** *Schropp Indus., Inc. v. Washington Cnty. Attorney's Office*, 794 N.W.2d 685, 697 (Neb. 2011).

Although Pillen mentions Rasby failed to list the disputed redacted emails in a privilege log, Pillen does not raise the issue, explicitly, for the court's consideration. Still, the court finds Rasby supplied Pillen with sufficient information to comply with Rule 26(b)(5) and enabled Pillen to access the claim. Accordingly, the court will evaluate the waiver issues below.

**A.    At Issue**

A party may impliedly waive the attorney-client privilege by placing communications between the lawyer and the client at issue. *Nebraska v. Roeder*, 636 N.W.2d 870, 876 (Neb. 2001). A party places the communications at issue by: (1) engaging in some affirmative act for her own benefit; (2) making the protected information relevant to the case; and (3) applying the privilege denies the opposing party access to information vital to a defense. *Id.* (**citing** *League v. Vanice*, 374 N.W.2d 849, 856 (Neb. 1985)). These factors demonstrate "[f]airness is an important and fundamental consideration in assessing the issue of whether there has been a waiver of the lawyer-client privilege." *Id.* (**quoting** *League*, 374 N.W.2d at 856). Nonetheless, "[a]s the privilege serves the interests of justice, it is worthy of maximum legal protection." *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 862 (3d Cir. 1994).

5

Pillen argues Rasby placed the attorney-client communications at issue when she "thrust her state of mind in issue as a condition necessary to sustain" fraud and duress claims. **See** Filing No. 61 - Brief p. 5. Pillen relies on **League** where the court concluded the plaintiff placed attorney-client communications bearing on his knowledge at issue when he "injected his knowledge, or lack of knowledge, into the litigation as a crucial issue relevant to disposition of the claims" by arguing his claims survived the statute of limitations because the defendant concealed triggering events. **League**, 374 N.W.2d at 856. In the same manner, Pillen contends Rasby's communications with counsel, who she employed throughout the contract negotiation period, could establish Rasby's state of mind and whether Pillen's actions or counsel's legal advice motivated Rasby to execute the Purchase Agreement. **See** Filing No. 61 - Brief p. 5. Absent full disclosure, Pillen contends he cannot properly defend against the claims by showing Rasby's decision to execute the Purchase Agreement was actually "an informed choice made after considering careful legal analysis and counsel." **Id.**

Rasby denies her fraud and duress claims place counsel's advice at issue. **See** Filing No. 65 - Response p. 3. She has not offered or disclosed such communications intending to prove any of her causes of action. **Id.** Rasby contends an assertion of duress waives the attorney-client privilege only when the duress was caused by the advice of counsel. **Id.** (**citing Roeder**, 636 N.W.2d at 876) (seeking to withdraw entry of a plea waived attorney-client privilege to certain communications because counsel allegedly subjected the defendant to duress in manner of advising plea). Moreover, even if the advice is relevant, relevance alone is insufficient to imply waiver. **Id.** at 2-3.

"Relevance is not the standard for determining whether or not evidence should be protected from disclosure as privileged, and that remains the case even if one might conclude the facts to be disclosed are vital, highly probative, directly relevant or even go to the heart of an issue." **Rhone-Poulenc**, 32 F.3d at 864. Significantly, "[p]rivileges forbid the admission of otherwise relevant evidence when certain interests the privileges are thought to protect are regarded as more important than the interests served by the resolution of litigation based on full disclosure of all relevant facts." **Id.** at 862. Nevertheless, implying waiver when a client's decision places the attorney's advice in

6

issue corresponds with the essential elements of the privilege. *Id.* at 863. Additionally, because privilege extends only to a portion of the communications, a court will treat an attorney's advice distinct from facts previously known by a client, then incorporated in the communications. **See** *id.* at 864; **see also** ***Upjohn Co. v. United States***, 449 U.S. 383, 395-96 (1981). More specifically,

> [a]dvice is not in issue merely because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant manner. The advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication.

***Rhone-Poulenc***, 32 F.3d at 863 (noting waiver in cases alleging advice of counsel as an affirmative defense or reliance on counsel's advice).

The federal court's line of cases are not inconsistent with Nebraska's privilege doctrine. The ***League*** court required production of only "those communications bearing upon League's knowledge of events or transactions relevant to his claims" because his claims were barred by the statute of limitations unless he showed, as he alleged, the defendant concealed the questioned events or transactions. ***League***, 374 N.W.2d at 856. The communications became necessary to avoid frustrating proof of League's prior factual knowledge. *Id.*; **see** ***Unland v. City of Lincoln***, 530 N.W.2d 624, 629 (1995) (lack of knowledge); **compare** ***Rhone-Poulenc***, 32 F.3d at 863 ("In summary, we emphasize that our holding is not meant to preclude disclosure of the knowledge the insureds possessed at the time they obtained coverage. Facts are discoverable, the legal conclusions regarding those facts are not.").

Here, Rasby placed only Pillen's conduct at issue when she alleged fraud and duress. Rasby did not engage in an affirmative act which placed her confidential attorney-client communications at issue. Although she consulted with counsel, counsel's advice is not at issue. Neither is counsel's advice, about Pillen's conduct or the Purchase Agreement's soundness, relevant. The facts associated with Rasby's claims, including Pillen's alleged conduct, whether Rasby sought and received the advice of counsel, and other influences on Rasby's state of mind, may be relevant. Pillen has means to access such facts, for example by asking Rasby what alternatives

7

she considered.  Rasby's confidential attorney-client communications extend beyond the facts to encompass matters sheltered in the interests of justice by an important privilege and the ultimate issues for resolution by the jury.

**B.     Partial Disclosure**

Pillen contends Rasby waived her entitlement to attorney-client privilege as to her redacted emails when she disclosed some full and some redacted emails.  **See** Filing No. 61 - Brief p. 6-7.  Pillen argues the partial disclosure unfairly reveals only "those communications that please her but has withheld all other communications, including, one may surmise, those that do not support Rasby's contentions." *Id.* at 7.  Pillen asserts he cannot fairly defend this case without those unredacted communications.  *Id.*

"Generally, an evidentiary privilege is waived when the holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the matter or communication."  **Stetson v. Silverman**, 770 N.W.2d 632, 641 (Neb. 2009).  Plainly, disclosure of privileged information unambiguously diverges from the primary tenets and reasoning for the protection.  **See Lutheran Med. Ctr. of Omaha, Neb. v. Contractors**, 25 F.3d 616, 622 (8th Cir. 1994).  Nebraska statute codifies this common-sense principle: "A person upon whom these rules confer a privilege against disclosure of a confidential matter or communication waives the privilege if he . . . voluntarily discloses or consents to disclosure of any significant part of the matter or communication."  Neb. Rev. Stat. § 27-511.

Here, Rasby concealed the confidential communications--that is those containing communications made for the purpose of facilitating the rendition of professional legal services.  Rather, Rasby provided emails and parts of emails containing unprivileged facts and communications intended to be sent to outside parties.  Rasby sustained her burden of establishing the privilege applies and no voluntary or involuntary waiver occurred.  Likewise, Pillen fails to show how the documents taken together or any particular document reveals confidential communications in a manner partially waiving privileged communications or creating unfairness.  Accordingly,

8

**IT IS ORDERED**:

James D. Pillen's Motion to Compel Production of Documents (Filing No. 60) is denied.

Dated this 19th day of September, 2016.

                                                BY THE COURT:

                                                s/ Thomas D. Thalken
                                              United States Magistrate Judge