## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **DEBORAH RASBY,** | |
| **Plaintiff,** | **8:15CV226** |
| **vs.** | |
| **JAMES D. PILLEN,** | **ORDER** |
| **Defendant.** | |

This matter is before the court on Deborah Rasby's (Rasby) Motion to Compel (Filing No. 77).  Rasby seeks further answers to interrogatories, production of documents, and leave to serve subpoenas on non-party accountants to obtain information about the financial condition of Progressive Swine Technologies, Inc. (PST) and other companies owned or controlled by James D. Pillen (Pillen).  Rasby filed a brief (Filing No. 79) and an index of evidence (Filing No. 78) in support of the motion.  Pillen filed a brief (Filing No. 83) and an index of evidence (Filing No. 82) opposing additional discovery.  Rasby did not file a reply.


## BACKGROUND

This case arises from the parties' business relationship, which culminated in an agreement between them for Pillen to purchase Rasby's business ownership interest in associated companies such as PST, a management company for various entities dealing with pork production including farms, feed mills, and swine genetics.  **See** Filing No. 5 - Amended Complaint ¶¶ 7-8, 11.  PST began operations on January 1, 1994, when Pillen held a 90% interest and Rasby held the remaining 10%.  *Id.* ¶ 8.  Each party received a salary from 2001 to 2011.  *Id.* ¶ 9.  Since 1994 PST paid distributions to the parties based on their ownership interests, with Rasby receiving approximately $2,250,471 between the years 2000 through 2011.  *Id.* ¶ 10.  Rasby alleges she learned Pillen was using their company assets to benefit himself and his personal companies to her disadvantage.  *Id.* ¶¶ 12-16.  Rasby states she confronted Pillen with her information, but he became hostile and refused to discuss it.  *Id.* ¶ 16.  In May of 2011, Rasby decided to retire from PST with the understanding she would still receive monthly

distributions.  *Id.* ¶ 17.   After Rasby's retirement, Pillen increased his salary from $110,000 to $1,000,000 and stopped making distribution payments.  *Id.* ¶¶ 19-21.  On April 13, 2012, Pillen offered to purchase Rasby's interest in the companies at less than market value and warned her he planned to liquidate PST and stop cash distributions from her other companies.  *Id.* ¶¶ 23-24, 26.  Rasby understood if she retained her business interests she would have substantial tax liability exposure without the income or distributions to pay it.  *Id.* ¶¶ 22, 24, 27.  Rasby alleges Pillen's agent told her Pillen "was going to 'F' with her" and he threatened to "blow up PST" so she "would be looking for work again."  *Id.* ¶ 28.  Rasby searched for investors to buy her interest but, due to Pillen's actions, investors refused.  *Id.* ¶ 29.  Pillen gave Rasby two weeks to agree to sell to him or he would close PST.  *Id.* ¶ 30.  On June 29, 2012, Rasby executed the Unit Purchase Agreement, selling her interests in the companies to Pillen.  *Id.* ¶ 31.

Based on these facts, Rasby alleges Pillen forced her to enter into the Purchase Agreement by virtue of his threats and actions, which destroyed her ability to make a voluntary choice and affected her actions and state of mind.  *Id.* ¶¶ 35-37.  In addition to claiming duress and undue influence (Count I), Rasby claims fraudulent misrepresentation (Count II), securities fraud (Count III), loss of corporate opportunities (Count IV), and breach of fiduciary duty (Count V) against Pillen.  *Id.* ¶¶ 35-65.

Pillen generally denies liability on Rasby's claims.  **See** Filing No. 15 - Answer. Additionally, Pillen alleges Rasby engaged in "wrongdoings in how [she] accounted for PST expenses" while working as an accountant.  *Id.* at 10-11.  Moreover, Pillen asserts claims for breach of contract for filing this lawsuit in violation of the express terms of the Purchase Agreement (First Counterclaim), breach of fiduciary duty (Second Counterclaim), breach of duty of loyalty (Third Counterclaim), unjust enrichment (Fourth Counterclaim), fraud (Fifth Counterclaim), conversion (Sixth Counterclaim), and civil extortion (Seventh Counterclaim).  *Id.* at 13-17.  Rasby generally denies liability on Pillen's counterclaims.  **See** Filing No. 18.

The parties' current discovery dispute arose when Rasby requested production of documents from Pillen and the accounting firm of Kruse, Schumacher & Smejkal (Kruse).  **See** Filing No. 79 - Brief p. 2.  Initially, on March 10, 2016, Rasby served a notice of her intent to subpoena financial information from Kruse.  **See** Filing No. 50 -

Notice & Ex. 1 Proposed Subpoena.  Pillen filed a timely objection.  **See** Filing No. 52 - Certificate of Service.  Subsequently, the parties agreed Rasby would seek additional information and documents from Pillen prior to proceeding with the subpoena.  **See** Filing No. 78 - Vogt Aff. ¶ 5.  The parties exchanged requests and responses from June through August, 2016.  **See** Filing No. 79 - Brief p. 2 (**citing** correspondence).  Counsel for the parties conferred but were unable to agree on the scope of relevant financial information responsive to the discovery requests, in the context of Rasby's claims.  **See** *id.*

Rasby argues the discovery sought is relevant to this lawsuit, which is "an action to set aside a release and obtain the fair value for the interest [she] formerly owned in business entities in which [Pillen] retains his interest."  **See** Filing No. 79 - Brief p. 1. Specifically, Rasby contends the financial information is relevant to "damages for [Pillen's] breach of the corporate opportunity doctrine in establishing multiple businesses in addition to PST . . . which were engaged in businesses related to the business of PST without offering to [Rasby] and PST the opportunity to participate in ownership of those businesses."  *Id.*  Therefore, Rasby asserts, this lawsuit, "relates entirely to the financial condition of PST and other companies owned or controlled by [Pillen] and [his] actions which divested Ms. Rasby of her interest in those companies." *Id.* at 4.  Rasby contends the proposed subpoena seeks records to establish Pillen "made intentional misrepresentations regarding his plans to furnish money to related entities and to demonstrate the value of those entities for which Ms. Rasby should have been given the opportunity for ownership."  *Id.*  Finally, Rasby states Pillen's expert witness criticized Rasby's expert witness for failure to consider certain of this requested documentation.  *Id.*

Pillen argues the requests are neither relevant nor proportional to the needs of the case.  **See** Filing No. 83 - Response p. 3.  Pillen contends the requests are overly broad by virtue of seeking records covering the period after Rasby's buyout and beyond those entities she had an interest in, such as Pillen's personal financial records and the records of companies with which only he has been affiliated.  *Id.* at 3-4. Pillen suggests the relevant time period ends on the effective date of the buyout because Rasby alleges damages suffered based on the difference between the amount of her payout and "the

actual value of her shares on or about June 29, 2012." *Id.* at 4 (**quoting** Filing No. 82 - Ex. 3 Plaintiff's Initial Disclosures p. 6-7).   Further, Pillen contends Rasby's claims are based on alleged conduct, events, and opportunities occurring prior to January 1, 2012. *Id.* at 4-6.   Next, Pillen argues the outside companies about which Rasby seeks financial information were unrelated to the policies and purposes of PST and Rasby's other business interests, even though they were managed by PST, and thus do not bear on the corporate opportunity claims. *Id.* at 6-7.   Finally, Pillen attempts to shield his own personal financial information from discovery because Rasby alleges claims associated with the financial condition of PST. *Id.* at 8.

## ANALYSIS

"Broad discovery is an important tool for the litigant, and so '[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.'" ***WWP, Inc. v. Wounded Warriors Family Support, Inc.***, 628 F.3d 1032, 1039 (8th Cir. 2011) (alteration in original) (**quoting** Fed. R. Civ. P. 26(b)(1)).   The federal rules provide for broad, but not unlimited, discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).   Accordingly, relevant information includes "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." ***Oppenheimer Fund, Inc. v. Sanders***, 437 U.S. 340, 351 (1978); **see** Fed. R. Civ. P. 26(c)(1).   Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity the information they hope to obtain and its importance to their case. **See *Cervantes v. Time, Inc.***, 464 F.2d 986, 994 (8th Cir. 1972).   Once the requesting party meets the threshold relevance burden, generally "[a]ll discovery

requests are a burden on the party who must respond thereto.  Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden." ***Continental Ill. Nat'l Bank & Trust Co. of Chicago v. Caton***, 136 F.R.D. 682, 684-85 (D. Kan. 1991) (citation omitted).  The court has authority to limit the scope of discovery.  ***Roberts v. Shawnee Mission Ford, Inc.***, 352 F.3d 358, 361 (8th Cir. 2003).

Rasby has met her burden of demonstrating the relevance of the discovery sought.  The requests and proposed subpoenas seek information bearing on her claims about the value of PST and Pillen's conduct with respect to PST.  Rasby's allegations also encompass the value and financial information from Pillen and companies he owned or controlled.  Pillen's arguments about the precise relative importance or connection of the outside companies to PST and Rasby or the merits of Rasby's claims need not be resolved at this stage.  Rasby has shown the requested information bears on her claims and are appropriate even when considering the pertinent factors indicative of the proportional needs of the case.  Nevertheless, Rasby fails to sustain her burden for the time period listed in the requests as "through the present."  However, a reasonable period of time would incorporate the period shortly after her buyout.  Accordingly, the court finds the requests should be limited to two years after her buyout, which is the period ending December 31, 2013.  For these reasons, Rasby's motion will be granted in part.  Upon consideration,

**IT IS ORDERED**:

1.      Deborah Rasby's Motion to Compel (Filing No. 77) is granted, except the discovery sought shall be limited to the period ending December 31, 2013.

2.      James D. Pillen shall have until **November 1, 2016**, to supplement his discovery responses in accordance with this order.  Deborah Rasby may issue a subpoena, consistent with this order, for responsive discovery not produced by him.

Dated this 17th day of October, 2016.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge

5